# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**THE DIAL CORPORATION,**
**H. J. HEINZ COMPANY, H. J.**
**HEINZ COMPANY, L.P., and**
**FOSTER POULTRY FARMS,**
a California Corporation, on behalf
of itself and similarly situated
companies,

          **Plaintiffs,**                    **CIVIL ACTION NO. 12-CV-15613**

         **vs.**                          **DISTRICT JUDGE ARTHUR J. TARNOW**

                                        **MAGISTRATE JUDGE MONA K. MAJZOUB**

**NEWS CORPORATION, NEWS**
**AMERICA, INC., NEWS MARKETING**
**FSI, LLC, and NEWS AMERICA**
**IN-STORE SERVICES, LLC,**

          **Defendants.**
_____/

## REPORT AND RECOMMENDATION

On December 21, 2012, Plaintiff Dial Corporation ("Dial") filed this action alleging that

Defendants have "suppressed competitive promotion of a massive number of consumer goods . . .

to acquire and maintain two unlawful monopolies" in violation of the Sherman Act, 15 U.S.C. §§

1 and 2, the Clayton Act, 15 U.S.C. § 14, and the Michigan Antitrust Reform Act, Mich. Comp.

Laws §§ 445.772-445.773.  (*See* docket no. 1.)  One week later, on December 27, 2012, Plaintiff H.

J. Heinz Company ("Heinz") joined the action by way of an Amended Complaint.  (*See* docket no.

3.)  Plaintiffs H. J. Heinz, L.P. ("Heinz LP") and Foster Poultry Farms ("Foster") joined by way of

a Second Amended Complaint filed on May 5, 2013.  (*See* docket no. 24.)

Before the Court is Defendants' Motion to Transfer Venue or Dismiss, in which Defendants ask the Court to transfer this matter to the District Court for the Southern District of New York under 28 U.S.C. § 1404(a) or, in the alternative, to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) with leave to re-file in that same district.[1]   (Docket no. 11.)   Plaintiffs filed a Response (docket no. 15), and Defendants filed a Reply (docket no. 17).   Plaintiffs then filed a Supplemental Opposition to Defendants' Motion (docket no. 18), and Defendants filed a Supplemental Response (docket no. 19).   Plaintiff then filed a Second Supplemental Opposition (docket no. 22),[2] and Defendants filed a Second Supplemental Response (docket no. 25).   This matter has been referred to the undersigned for consideration under 28 U.S.C. 636 (b) (1) (B) (docket no. 13) and therefore the undersigned will issue this Report and Recommendation.   Additionally, this matter is, arguably, a companion case to another matter in this Court.[3]   The Court has reviewed the pleadings, dispenses

---

[1]On the same day that they filed their instant Motion, Defendants filed a Complaint against Plaintiffs in the Southern District of New York "seeking a declaratory judgment that Defendants have not violated federal or state antitrust laws" and that Heinz breached the exclusive-jurisdiction clause in its agreement with Defendants; the case has been docketed as *News Am. Marketing In-Store Services L.L.C., et al. v. The Dial Corporation, et al.*, No. 13-00550, docket no. 1 (S.D.N.Y.).   (Docket no. 11 at 14.)   On March 6, 2013, the New York court scheduled the matter for an initial conference to be held on May 10, 2013, where the court has indicated that it will address Dial's and Heinz's proposed Motion to Dismiss or Transfer (presumably) to this Court.   *Id.*, docket no. 9.

[2]Plaintiffs filed their Second Supplemental Opposition to Plaintiffs Motion concurrently with their Second Amended Complaint, contending that the Second Amended Complaint supported their argument against transfer of this action under 28 U.S.C. § 1404(a).   (*See* docket nos. 22 and 24.)

[3]Plaintiffs allege that "[p]ursuant to L.R.83.11(b)(7) this matter is a companion case to *Valassis Communications, Inc. v. News America Marketing, Inc.*, No. 06-10240 (E.D. Mich.) (Tarnow, J.)."   (Docket no. 1 at 4; *see also* docket no. 24 ¶23.)   Defendants contend that "[t]he claims in *Valassis* . . . were largely inconsistent with the claims asserted here."   (Docket no. 11 at 10 (arguing against Plaintiffs contention that the Court's handling of *Valassis* provides a basis to keep the case in this Court).)

with a hearing, and issues this report and recommendation.[4]

## I.      Recommendation

For the reasons that follow, the Court recommends granting Defendants' Motions to Transfer Venue (docket no. 11); transferring this case to the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1404; and denying as moot Defendants' alternative Motion to Dismiss (docket no. 11).

## II.     Report

### A.      Facts

#### 1.      The Parties' Contracts

Dial "is a consumer packaged goods company organized under the laws of Delaware and headquartered in Scottsdale, Arizona," Heinz "is a consumer packaged goods company organized under the laws of Pennsylvania and headquartered in Pittsburgh, Pennsylvania," and Foster is "a California corporation . . . headquartered in Livingston, California." (Docket no. 24 ¶¶ 28-30.) Defendants are all Delaware corporations with their principal places of business in New York. (*See* docket no. 11 at 9.) Plaintiffs and Defendants do not dispute that they all conduct substantial business in the Eastern District of Michigan.

Defendants provide nationwide advertising and coupon services to consumer-packaged-goods manufacturers whereby Defendants will provide said manufacturers with free-standing-insert[5]

_____

[4]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

[5]FSI products include coupon booklets inserted into newspapers and magazines. (*See* docket no. 11 at 11.)

("FSI") coupons and in-store-marketing[4] ("ISM") displays for their products.  (*See id.* at 11.)
Beginning in 2002, Dial entered in to agreements with Defendants for FSI and ISM services from
January 1, 2003, through December 31, 2009.  (*Id.* at 12.)  In 2010, Dial began purchasing FSI
services from one of Defendants' competitors.  (*Id.*)  Likewise, Heinz began purchasing FSI and
ISM services through Defendants in 2005; these relationships continue through May 31, 2013. (*Id.*.)

> Dial's various contracts with Defendants included the following provision:
>
> [11(a)] This Agreement shall be governed by and construed and enforced in
> accordance with, the laws of the State of New York, . . . The parties consent to
> jurisdiction in the State and Federal Courts in the State of New York, County of New
> York, with respect to any claim arising out of or related to this Agreement.

(Docket no. 11-5 at 6.)  Thus, the parties agree that Dial and Defendants consented to the Southern
District of New York as a proper forum for actions arising out of their agreements, but the consent
was permissive, not mandatory.  (Docket no. 11 at 12-13; docket no. 15 at 12.)  Foster's contracts
with Defendants appear to contain similar clauses.  (*See generally* docket no. 22 at 6-7.)

Heinz's contracts with Defendants differ significantly.  According to Plaintiff, the Parties'
initial agreements were formalized in the form of "Right of First Refusal" letters for ISM and FSI
services through April 30, 2008.  (Docket no. 15 at 13-14.)  These contracts contained the same
permissive forum-selection clause found in the Dial contracts.  (*Id.*)  Heinz and Defendants then
extended this relationship through April 30, 2010.  (*Id.* at 15.)  With regard to FSI services, the
amendments did not change the permissive forum-selection clause.  (*Id.*)  With regard to the ISM
services, however, the forum-selection clause changed to the following:

---

[4]ISM products include floor and shelf advertising, on-shelf coupon dispensers, shopping
cart advertisements, and other promotional products.  (*See* docket no. 11 at 11.)

> [12(a)] Each letter of Commitment shall be governed by and construed and enforced in accordance with the laws of the State of New York, . . . The parties consent to the *exclusive jurisdiction* in the state and federal courts in the State of New York, County of New York, with respect to any claim arising out of or related to each Letter of Commitment.

(Docket no. 11-3 at 6 (emphasis added).)  Additionally, in 2010, Heinz and Defendants entered into a new agreement to run from June 1, 2010, through May 31, 2013, for FSI and ISM services that also included the same mandatory forum-selection clause.  (Docket no. 11-4 at 7.)  Thus, the parties agree that with respect to claims arising out of contracts between Heinz and Defendants (1) for ISM services from April 25, 2006, through April 30, 2010, and (2) for FSI and ISM services from June 1, 2010, through May 31, 2013, such claims are tied to a mandatory forum-selection clause empowering the courts of New York with exclusive jurisdiction.  (Docket no. 11 at 12; docket no. 15 at 16-17.)

## 2.    The *Valassis* Matter

On January 18, 2006, Valassis Communications, Inc. ("Valassis"), a Delaware corporation with its headquarters and principal place of business in Livonia, Michigan, filed a Complaint in this Court against Defendants alleging violations of the Sherman Act, 15 U.S.C. §§ 1, 2, and 3; Tortious Interference with a Business Relationship; Unfair Competition in violation of Connecticut, Nebraska, North Carolina, South Carolina, Utah, Washington, and California statutes; and violation of the Cartwright Act, Ca. Bus. & Prof. Code §§ 16720 et seq. *Valassis*, No. 06-10240, docket no. 1.[5]  Like Plaintiffs here, Valassis's claims centered around Defedants' FSI and ISM services, but unlike Plaintiffs here, Valassis provides FSI services in competition with Defendants. *Id.* ¶ 7.  In its  highly detailed Antitrust Complaint, Valassis essentially alleges that Defendants entered into

---

[5]Hereinafter, the Court will refer to *Valassis* docket entries as "*Valassis* docket no. __."

ISM contracts with major grocery-store chains at below-market prices to monopolize the market on ISM services and then used the power of those relationships to leverage FSI business away from Valassis and other competitors.  *See id.* ¶¶ 24-25.

When Valassis initially filed its Complaint, the matter was assigned to Judge John Feikens. *See id.* at 1.  Judge Feikens presided over the case from January 18, 2006, through May 9, 2008, when the matter was reassigned to Judge Gerald E. Rosen.  *Valassis* docket no. 82.  Approximately one month later, on July 11, 2008, Judge Rosen reassigned the case to Judge Sean F. Cox.  *Valassis* docket no. 86.  Judge Cox presided over the case until February 24, 2009, when he issued an order of recusal and the matter was reassigned to Judge Arthur J. Tarnow.  *Valassis* docket no. 237.  The matter was dismissed pursuant to a settlement on February 5, 2010, but Judge Tarnow presided over the case until it was ultimately closed on June 6, 2011.  *Valassis* docket nos. 391, 413.  Throughout the early part of the *Valassis* litigation, Judge Cox employed a Special Discovery Master, who was located in Detroit, Michigan.  *Valassis* docket no. 97.  And following settlement, Judge Tarnow appointed a panel of three Special Masters to enforce the parties' agreement.  *Valassis* docket no. 401.

## B.    Standard of review

28 U.S.C. § 1404(a) governs transfer of a case and provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  District courts have broad discretion to determine when a transfer of venue is appropriate.  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir.2009).  The moving party bears the burden of proving that the court

should transfer the action.  *Steelcase v. Smart Technologies, Inc.*, 336 F.Supp.2d 714, 719 (W.D. Mich.2004).

As a threshold matter, the district or division to which transfer is proposed must be one in which the case might have been brought.  *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964).  When this threshold requirement has been met, "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness."  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991).  The private interests of the parties include the following:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Campbell v. Hilton Hotels Corp.*, 611 F.Supp. 155, 157 (E.D. Mich. 1985) (citing *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967)).  Public-interest factors include the following:

> (i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law.

*Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F.Supp.2d 714, 720 (W.D. Mich. 2004) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3rd Cir. 1995)).  Courts also regularly consider Plaintiff's choice of forum, *see, e.g.*, *id.*, and the existence of a contractual forum-selection clause, *Kerobo v. S.W. Clean Fuels, Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002), as significant factors when balancing the parties' interests.

**C.    Analysis**

7

The parties agree that this action could have been brought in the Southern District of New York; the Court agrees.  This threshold requirement having been satisfied, the Court will consider the private and public interests at issue in this matter.[6]

### 1.      Plaintiffs' Choice of Forum and the Forum Selection Clauses

Plaintiffs' choice to bring suit in the Eastern District of Michigan and the applicability of the various forum-selection clauses in the parties' contracts as they relate to Plaintiff's ability to make that choice are, perhaps, the most contested issues in the instant Motion.  The parties agree that a plaintiff's choice of forum is generally entitled to substantial deference, particularly when the plaintiff also resides in the chosen forum.  *See Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 (2d Cir. 1995) (per curiam); *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D. Ill. 1993).  But when attempting to avoid a mandatory forum-selection clause, "it [is] incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court" unless enforcement of the clause "would contravene a strong public policy of the forum in which suit is brought."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972).

Defendants assert that Plaintiffs are bound by the mandatory forum-selection clause included in the Heinz contract and that Plaintiffs, therefore, have the burden to prove that the clause should be set aside.  (Docket no. 11 at 16.)  Plaintiffs argue that the forum-selection clause does not apply to this action because the clause only applies to Heinz, and it only applies to (approximately) 56% of the alleged overages that Defendants charged to Heinz.  (Docket no. 15 at 16-17.)  Thus,

---

[6]The Court has eliminated from its analysis those factors that the parties did not address in their briefs.

Plaintiffs' contend, all of the claims asserted by Dial and Heinz (and Foster through their Second Amended Complaint) should not be transferred to another forum merely because one half of the claims brought by one of the three Plaintiffs are subject to mandatory forum selection.[7]   (*Id.*) Defendants contend that Plaintiffs' claims are subject to a four-year statute of limitations and, therefore, *all* of Heinz's claims are subject to the mandatory forum-selection clause.  (Docket no. 17 at 6.)

Regardless of the statute-of-limitations question,[8] the Parties agree that Dial and Foster are bound only by permissive forum-selection clauses and that at least a portion of Heinz's claims are subject to a mandatory forum-selection clause.  While the Sixth Circuit does not appear to have addressed this issue, other courts (including the Second Circuit and the Southern District of New York) have found that the "twin commitments to upholding forum selection clauses where the[y] are found to apply and deferring to a plaintiff's proper choice of forum [require the court] to treat [the] claims separately."  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2nd Cir. 2007) (citing, *cf.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (holding that district courts are

---

[7]Plaintiffs also assert that Dial filed this action as the "Lead Plaintiff" and that Heinz's joinder as a (secondary) Plaintiff bound by a forum-selection clause should not have any bearing on whether to keep Dial's Complaint in the Eastern District of Michigan.  (Docket no. 15 at 12.) As Defendants note, however, Dial and Heinz have acted together, through joint counsel, for at least nine months before filing this action.  (Docket no. 17 at 5 (citing Exs. 11 and 12).)  As noted, Dial filed its Complaint on December 21, 2012, and Heinz joined the action six days later. (Docket nos. 1 and 3.)  Thus, unless Plaintiffs' counsel forgot to include Heinz as a Plaintiff in this matter, the Court agrees with Defendants that this "procedural gamesmanship" was intended to avoid the forum-selection clause.  Therefore, while Plaintiffs were permitted to file their Complaint and Amended Complaint as they did, the Court will not consider Dial's status as the "Lead Plaintiff" as a factor tipping the scales toward Plaintiffs with respect to the enforcement of the forum-selection clause.

[8]The Court will not address the merits of the Parties' arguments with regard to this issue because the matter is not currently before the Court.

required to compel arbitration of claims subject to arbitration clause "even if the result is 'piecemeal' litigation")); *see also MAK Marketing, Inc. v. Kalapos*, 620 F.Supp.2d 295 (D. Conn. 2009); *Zichichi v. Jefferson Ambulatory Surgery Center, LLC*, No. 07-2774, 2007 WL 3353304 (E.D. La. Nov. 7, 2007). Thus, the Court will consider these claims separately for purposes of the instant analysis.[9]

Dial's "home forum" would be either the State of Delaware or the State of Arizona; Foster's "home forum" would be the State of Pennsylvania; and Foster's "home forum" would be the State of California. Other than their substantial business connections, none of the Plaintiffs has any direct connection with the Eastern District of Michigan. Likewise, however, they have no direct connection with the State of New York. All three parties, nonetheless, agreed to a permissive forum-selection clause, thereby indicating that they were amenable to litigating in New York. Thus, with regard to Dial's claims, Foster's claims, and any portion of Heinz's claims that are not covered by the forum-selection clause, Plaintiffs' choice of forum will be given moderate weight, but not substantial deference. With regard to Heinz's claims that are subject to the mandatory forum-selection clause, the Court affords no weight to Heinz's choice of forum and finds that this factor weighs greatly in favor of transfer.[10]

---

[9]The Court neither agrees nor disagrees with Plaintiffs' contention that the all of the claims should not be transferred merely because a portion of Heinz's case is subject to the mandatory forum-selection clause. Because the Court finds that the remaining factors support Defendants' Motion to Transfer, the Court need not address this dichotomy or the possible negative effect of dividing this litigation. (*See* docket no. 15 at 18.) The Court's decision with regard to this issue is only one factor that is included as part of the Court's balancing test. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) (stating that a forum selection clause is considered within the § 1404(a) balancing analysis).

[10]If it is determined that transfer of this matter to the Southern District of New York as recommended herein is not appropriate, the Court further recommends dismissing Heinz's

### 2.    Convenience for the Parties

Defendants argue that this factor weighs in favor of transfer to the Southern District of New York for three reasons: (1) the forum-selection clauses (permissive and mandatory) "serve[] as evidence that Plaintiffs were on notice that they could be subject to litigation in [New York]" and that "a permissive forum selection clause is determinative of the convenience to the parties;" (2) New York is at least as convenient to Plaintiffs as Michigan and more convenient for Defendants; and (3) Defendants have filed a declaratory judgment action in the Southern District of New York.[11] (Docket no. 11 at 20 (internal citations and quotations omitted).)  Plaintiffs do not directly address this factor.  The Court, however, agrees with Defendants.  Whether mandatory or permissive, Plaintiffs were all on notice that claims arising out of the contracts at issue were subject to the laws of the State of New York, and they consented to jurisdiction in New York courts.  Dial and Heinz argue that they have a "strong connection with Michigan," (docket no. 15 at 22-23), but they also have strong connections with New York (and the rest of the country).  Thus, The Eastern District of Michigan is no more or less convenient for Plaintiffs than the Southern District of New York. Defendants, however, have their principal place of business in New York.  Thus, the Court finds that this factor weighs moderately in favor of transfer.

---

claims (that are subject to the mandatory forum-selection clause) under Fed. R. Civ. P. 12(b)(6) or forum non conveniens.  *Compare Wong v. PartyGaming* Ltd., 589 F.3d 821, 830 (6th Cir. 2009) (stating that dismissal under Fed. R. Civ. P. 12(b)(3) for improper venue is inappropriate because the forum-selection clause does not deprive the court of proper venue but noting that the court could sua sponte raise forum non conveniens), *with Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 366 (6th Cir. 2008) (remanding for entertainment of a motion to enforce a forum-selection clause under Fed. R. Civ. P. 12(b)(6)).

[11]The Court will address Defendants' third argument related to the New York action in subsection II.C.6 *infra*.

### 3.      Convenience for the Witnesses

Defendants argue that the parties cannot yet identify all of the witnesses that they will call, but the "party witnesses are likely to be located primarily in Arizona, Pennsylvania, [California,] and New York." (Docket no. 11 at 20.)  Plaintiffs assert that they will rely primarily on witnesses from Defendants' "few remaining competitors Valassis [(located in Livonia, Michigan)] and Insignia [(located in Minneapolis, Minnesota)]."   (Docket no. 15 at 21-22.)   Plaintiffs suggest that Defendants have participated in litigation with Valassis in Michigan and with Insignia in Minnesota, which demonstrates that Defendants are accustomed to traveling outside of New York.  (*Id.*) Moreover, Plaintiffs assert, "Detroit is considerably easier [for Insignia employees to travel to] than New York City."  (*Id.* at 22.)   Defendants respond that the majority of witnesses in the *Valassis* matter were not even from Michigan and that it is just as easy for individuals from outside of Michigan to travel to New York as it is to travel to Michigan.  (Docket no. 11 at 21.)  Moreover, Defendants contend, any third-party witnesses that cannot travel to New York can be presented through video testimony pursuant to Fed. R. Civ. P. 32(a)(4).  (*Id.*)

The Court has no doubt that Plaintiffs and Defendants are all capable of traveling away from their home states to participate in litigation.  As noted by Plaintiffs, Defendants have done so in the past.  And Plaintiffs' desire to try this case in Michigan is evidence of their own wherewithal to participate in such travel when they desire to do so.  Thus, with regard to witnesses from Plaintiffs' own organizations, both Michigan and New York appear to be mutually inconvenient.  And with regard to witnesses in Defendants' organizations, the Southern District of New York is more convenient than the Eastern District of Michigan.  With regard to third-party witnesses that *may* be

called, with the exception of a few witnesses who may live in Michigan, both Michigan and New York appear to be equally inconvenient.  Thus, this factor weighs slightly in favor of transfer.

### 4.    Access to Sources of Proof

Plaintiffs argue that "[m]assive numbers of documents have been discovered and produced in the *Valassis* [matters, so t]hey are more readily available in this forum" (Docket no. 15 at 22.)  Additionally, Plaintiffs argue that documents from the *Insignia* matter, which are located in Minneapolis, are "closer at hand" if the matter remains in Michigan.  (*Id.*)  Defendants argue that Plaintiffs' contention is misleading because discovery will "be sent by electronic discs across K Street in Washington D.C., where the law firms involved are located."  (Docket no. 17 at 8.)

Access to Defendants records will be more convenient in their home state of New York, and access to Plaintiffs' records will be mutually inconvenient in Michigan and New York.  And as Defendants suggest, final production of discovery materials will likely take place electronically between counsel, both located in Washington D.C.  Thus, this factor weighs in favor of Defendants.  Nevertheless, the Court does acknowledge that access to some third-party records will be more convenient in Michigan.  Therefore, the Court finds that this factor weighs moderately (rather than heavily) in favor of transfer.

### 5.    Ability to Compel Unwilling Witnesses

Plaintiffs assert that "[s]hould important Valassis or other witnesses resident in Michigan decline to testify voluntarily then Fed. R. Civ. P. 45(b)(2) permits subpoena powers to run throughout Michigan." (Docket no. 15 at 22.)  Defendants do not directly respond to this contention, but as noted, Defendants dispute the relevance of these witnesses, and they suggest that many of the Valassis witnesses do not reside in Michigan.  (Docket no. 11 at 20-21; docket no. 17 at 8.)

Plaintiff implies that the Valassis witnesses are located in Michigan and that they may not be willing to travel to New York to testify, but Plaintiffs' argument is based on mere conjecture. Even assuming, however, that the Michigan-based Valassis witnesses would all refuse to travel to New York, Plaintiffs' argument does not account for Valassis witnesses located outside of Michigan or any other witnesses located in New York, Arizona, Pennsylvania, California, or Minnesota, all of whom would be beyond the Court's subpoena power.  Thus, it appears to the Court that the limitations of the Court's subpoena power will impact the proceedings no matter what the forum. Therefore, this Court finds that this factor neither weighs in favor of transfer or retention of this matter.

### 6.    Practicality for the Parties and the Court - the New York Action

Defendants argue that it would be more efficient for the Parties and the courts for this matter to be consolidated with the declaratory judgment action that they filed in the Southern District of New York.  (Docket no. 11 at 22.)  The Court agrees with this sentiment in principle.  Nevertheless, the Court finds this argument unpersuasive with regard to the instant Motion.  With regard to the New York action itself, Plaintiff has indicated that it intends to file a Motion to Dismiss or Transfer the New York action to the Eastern District of Michigan.  *News Am. Marketing In-Store Services L.L.C.*, No. 13-00550, docket no. 9.  Thus, it appears that both parties wish to consolidate these matters, but with regard to the location of that consolidation, either forum would be appropriate. Moreover, to the extent that the New York action arises out of the same transaction or occurrence as the instant action, such a claim should, arguably, have been brought as a counterclaim under Fed.

14

R. Civ. P. 13(a).[12]   Therefore, the Court finds that the existence of the New York action neither weighs in favor of transfer or retention of this matter.

### 7.    Local Interests

Defendants argue that New York has a stronger interest in resolving this matter because the alleged unlawful conduct was committed by Defendants, whose principal place of business is in New York. (Docket no. 11 at 22 n.10. (citing *Simonian v. Maybelline LLC*, No. 10-cv-1615, 2011 WL 814988, at *9 (N.D. Ill. Mar. 1, 2011), and *Liggett Group, Inc. v. R. J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 536 (D.N.J. 2000)).  Plaintiffs do not address this factor directly, but the Court will consider their "strong connection" with Michigan as part of its analysis.  (*See* docket no. 15 at 22-23.)   Nevertheless, as noted herein, as major manufacturers of consumer-packaged goods, Plaintiffs have a strong connection with much, if not all, of the country.  Thus, their connections with New York are as strong as their connections with Michigan.  Because Defendants are the only party with a distinct tie to either Michigan or New York, the Court finds that this factor weighs slightly in favor of transfer.

### 8.    Familiarity of the Trial Judge with the Applicable Law and the *Valassis* matter.

Plaintiffs' chief contention in opposition of Defendants' Motion is Judge Tarnow's familiarity with the *Valassis* matter.  (*See, e.g.*, docket no. 15 at 19-20.)  Plaintiffs filed this matter as a companion case to *Valassis* and assert that "[t]his Court has sat for five and one-half years on the *Valassis* [matter] which alleged the same violation issues as the two Plaintiffs here."  *Id.* Plaintiffs note that in *Valassis*, the Court presided over a Summary Judgment motion, several

---

[12]The Court does not presume to rule on the validity of the New York Complaint.

special-master reports, and the mediation of a core *Valassis* issue.  (Docket no. 15 at 19.)  Plaintiffs note that the Souther District of New York does not have this experience with Defendants.  Moreover, Plaintiffs contend, in *Valassis*, the Court became extremely familiar with "the antitrust and procedural issues raised by the trial of this matter," with particular focus on motions to dismiss (*Valassis* docket nos. 47 and 49), a protective order (*Valassis* docket no. 71), discovery issues (*Valassis* docket nos. 139-169), a motion for summary judgment (*Valassis* docket no. 267), various motions in limine (*Valassis* docket nos. 275, 285, and 330-345), Daubert motions (*Valassis* docket nos 224-26 and 234), and various other matters (*Valassis* docket nos. 277, 286, 388, and 412).  Plaintiffs suggest that this experience will make the instant action "more expeditious and inexpensive."  (Docket no. 15 at 20.)

With regard to the legal issues raised in this matter and the *Valassis* matter, Defendants assert that the Souther District of New York is "equally familiar with federal antitrust law" as the Eastern District of Michigan.  (Docket no. 17 at 6-7.)  Additionally, Defendants argue, "[o]ther legal issues involving the interpretation of [the Parties] agreements . . . will require the application of New York Law . . . with which the Southern District of New York is more familiar."  (*Id.* at 7 (citations omitted).)  The Court agrees with Defendants.  While the Eastern District of Michigan is equipped with the knowledge and resources to administer this matter as it did in *Valassis*, the Southern District of New York is equally equipped.  There is nothing to suggest that this Court is more suited to preside over this matter with regard to the legal issues at hand.  Moreover, as the parties agreed that any state-law matters would be subject to the law of the State of New York, the Southern District of New York is more familiar with the applicable law.  Thus, if the Court's determination

of this factor were based solely on the applicable law, this factor would weight slightly in favor of transfer.

With regard to the factual and procedural issues raised in this matter, however, the Court agrees (to a limited extent) with Plaintiffs.  Defendants assert that [t]his action is fundamentally different from the *Valassis* case, in which Valassis claimed [that Defendants] bundled ISM services and FSI coupons in order to charge below-market prices through 2009" and that here, "Plaintiffs argue that they have been *overcharged* for the same services since at least 2008."  (Docket no. 17 at 7.)  The Court need not address this contention, however, because even if the two matters were fundamentally the same, the Court's analysis would remain unchanged.

Plaintiffs' argument rests on the presumption that the Court is familiar with the facts and procedural nuances of the *Valassis* matter.  But as Defendants correctly note, the *Valassis* matter was filed in January 2006, and Judge Tarnow did not join the case as the presiding judge until February 24, 2009.  *Valassis* docket no. 273.  So with regard to the docket entries referred to by Plaintiffs in their contention that the Eastern District of Michigan is more equipped to preside over this matter, Judge Tarnow was only assigned to the matter for 22 of the 59 issues.  Any procedural advantage gained by the Court in having previously handled the *Valassis* matter would be earned by reviewing the docket rather than by rote memory; any judge in the Souther District of New York would be able to review the *Valassis* docket as well.  Thus, the Court finds that the procedural similarities between these two matters weighs slightly in favor of retention.  The Court agrees with Plaintiffs that with regard to any factual similarities between the two cases, Judge Tarnow's familiarity with *Valassis* would likely be helpful in maintaining efficiency throughout the instant litigation; thus, the Court finds that the factual similarities weight heavily in favor of retention.  Therefore, because the

applicable law weights slightly in favor of transfer, the procedural efficiencies weight slightly in favor of retention, and the factual similarities weight heavily in favor of retention, the Court finds that this factor weighs heavily in favor of retention.

### 9. Balancing the Factors

As discussed more thoroughly in sections II.C.2-8, *supra*, the court finds as follows: (1) the convenience of the parties weights moderately in favor of transfer; (2) the convenience of the witnesses weights slightly in favor of transfer; (3) access to sources of proof weights moderately in favor of transfer; (4) the ability to compel unwilling witnesses does not favor transfer or retention; (5) the existence of the New York action does not favor transfer or retention; (6) the local interest weighs slightly in favor of transfer; and (7) the Court's familiarity with the law and the issues presented weigh heavily in favor of retention.  In sum, two of these factors weight moderately in favor of transfer, two of the factors weight slightly in favor of transfer, one of the factors weighs heavily in favor of retention, and two of the factors bear no weight.  Thus, before considering the Plaintiff's choice of forum and the forum-selection clause, these factors weight heavily in favor of transfer.

As determined in section II.C.1, *supra*, with regard to Dial's claims, Foster's claims, and any portion of Heinz's claims that are not covered by the forum-selection clause, Plaintiffs' choice of forum will be given moderate weight.  Therefore, when combined with the other factors considered by the Court, the scales tip slightly in favor of granting Defendants' Motion to transfer.

Also as noted in section II.C.1, *supra*, with regard to Heinz's claims that are subject to the mandatory forum-selection clause, the existence of the clause weighs greatly in favor of transfer.

Therefore, when combined with the other factors considered by the Court, transfer of these claims is also appropriate.

### D.     Conclusion

For the above-stated reasons, the Court recommends granting Defendants' Motion to Transfer Venue (docket no. 11).  The matter should be transferred to the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1404.  In light of this determination, the Court further recommends denying as moot Defendants' alternative Motion to Dismiss (docket no. 11). If, however, this Report and Recommendation is not adopted, the Court recommends, in the alternative, granting Defendants' Motion to Dismiss with regard to any of Heinz's claims that are subject to the mandatory forum-selection clause.  *See, supra*, note 10 at 11.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: May 10, 2013                             s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: May 10, 2013                             s/ Lisa C. Bartlett
                                                Case Manager