# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DIAL CORPORATION, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) Civil Action No. 1:13 Civ. 06802 (WHP) |
| v. | ) |
| | ) |
| NEWS CORPORATION, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES HARLAND CLARKE HOLDINGS CORP.'S AND MACANDREWS & FORBES HOLDINGS INC.'S MOTION TO QUASH THE SUBPOENAS *DUCES TECUM* SERVED BY DEFENDANTS

Dated:  February 20, 2015

CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022-2524
Telephone: 212-223-4000

*Attorneys for Non-Parties*
*Harland Clarke Holdings Corp. and*
*MacAndrews & Forbes Holdings Inc.*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

FACTUAL BACKGROUND ......................................................................................... 2

PROCEDURAL BACKGROUND .................................................................................. 5

LEGAL STANDARD ................................................................................................... 8

ARGUMENT ............................................................................................................... 9

I.     NAM'S DEMANDS FOR DOCUMENTS UNRELATED TO THE FSI OR ISP
       MARKETS ARE OVERBROAD AND NOT RELEVANT TO THE *DIAL V.
       NEWS CORP.* LITIGATION. ............................................................................. 9

II.    NAM'S DEMANDS FOR ANALYSES OF VALASSIS AS A WHOLE
       ARE NOT ONLY UNNECESSARY AND IRRELEVANT, BUT THEY ARE
       ALSO UNDULY BURDENSOME AND SEEK HIGHLY CONFIDENTIAL
       INFORMATION ................................................................................................ 11

       A.     NAM'S DEMANDS FOR VALUATIONS OF VALASSIS AS A
              WHOLE SEEK HIGHLY CONFIDENTIAL INFORMATION NOT
              RELEVANT TO THIS ACTION AND ARE THUS UNDULY
              BURDENSOME. ..................................................................................... 12

       B.     NAM CANNOT MAKE A STRONG SHOWING OF NEED FOR
              ANY OF MOVANTS' ANALYSES, LET ALONE THEIR HIGHLY
              CONFIDENTIAL VALUATIONS. ............................................................ 14

III.   NAM'S OVERBROAD REQUESTS ARE UNDULY BURDENSOME. ................... 15

IV.    NAM'S DEMANDS ARE MERELY AN IMPROPER ATTEMPT TO GAIN
       ADVANTAGE IN OTHER LITIGATIONS. .......................................................... 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Act, Inc. v. Sylvan Learning Sys., Inc.,*
No. CIV. A. 99-63, 1999 WL 305300 (E.D. Pa. May 14, 1999) ................................12, 14, 16

*Burns v. Bank of Am.,*
No. 03 CIV.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ...........................13

*Concord Boat Corp. v. Brunswick Corp.,*
169 F.R.D. 44 (S.D.N.Y. 1996) ................................................................................9, 10, 15

*Concord Boat Corp. v. Brunswick Corp.,*
No. 96 C 6026, 1996 WL 705260 (N.D. Ill. Dec. 4, 1996) ...........................................9, 12, 14

*In re eBay Seller Antitrust Litig.,*
No. C09-735RAJ, 2009 WL 5205961 (W.D. Wash. Dec. 23, 2009) .........................13, 14, 16

*In re Frates v. Pantry Pride, Inc.,*
No. M8-85, 1985 WL 2752 (S.D.N.Y. Sept. 25, 1985)................................................10, 12, 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
269 F.R.D. 360 (S.D.N.Y. 2010) ..................................................................................9

*Micro Motion, Inc. v. Kane Steel Co.,*
894 F.2d 1318 (Fed. Cir. 1990)....................................................................................12

*Nicholas v. Poughkeepsie Sav. Bank/FSB,*
No. 90 CIV. 1607 (RWS), 1991 WL 113279 (S.D.N.Y. June 14, 1991) ...............................17

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.,*
No. 03 CIV. 1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)...............................17

*Solarex Corp. v. Arco Solar, Inc.,*
121 F.R.D. 163 (E.D.N.Y. 1988), *aff'd,* 870 F.2d 642 (Fed. Cir. 1989) ...............................9

*Suture Express, Inc. v. Cardinal Health 200, LLC,*
No. 14-CV-04737, 2014 WL 6478077 (N.D. Ill. Nov. 18, 2014) ....................................12, 13

*Travelers Indem. Co. v. Metro. Life Ins. Co.,*
228 F.R.D. 111 (D. Conn. 2005)....................................................................................9

*Usov v. Lazar*,
    No. 13 CIV. 818 RWS, 2014 WL 4354691 (S.D.N.Y. Sept. 2, 2014) ...................................15

**Statutes & Rules**

Fed. R. Civ. P. 26(b)(1)...........................................................................................................10

Fed. R. Civ. P. 45(d)(1).......................................................................................................8, 15

Fed. R. Civ. P. 45 ........................................................................................................... *passim*

Fed. R. Civ. P. 45(d)(3).................................................................................................1, 8, 9, 18

Local Civil Rule 37.2 .................................................................................................................6

Non-parties Harland Clarke Holdings Corp. ("Harland Clarke") and MacAndrews & Forbes Holdings Inc. n/k/a MacAndrews & Forbes Incorporated ("MacAndrews & Forbes") (collectively, "Movants"), pursuant to Federal Rule of Civil Procedure 45(d)(3), respectfully submit this memorandum in support of their motion to quash the subpoenas served on them by defendants News Corporation, News America, Inc., News America Marketing FSI L.L.C., and News America Marketing In-Store Services L.L.C. (collectively, "NAM"). NAM's subpoenas seek discovery of Harland Clarke's acquisition of non-party Valassis Communications, Inc. ("Valassis") that goes well beyond what is even arguably relevant to this case and that is designed to both harass Movants and improperly obtain information for use in separate litigation between Valassis and NAM in Michigan. NAM's motivations are made clear by its rejection of Movants' reasonable proposals to narrow the subpoenas' scope to documents and information actually relevant to this case. NAM's insistence on far-reaching and burdensome discovery is at odds with its obligation under Rule 45 to take reasonable steps to avoid imposing an undue burden on non-parties.

NAM's insistence on broad and burdensome discovery from Movants is particularly troublesome in light of its prior negotiations with Valassis relating to a similar subpoena. Valassis engaged in exhaustive meet and confers with NAM concerning the scope of that subpoena, which was broad enough to cover nearly all of the documents NAM now seeks from Movants, and ultimately reached an agreement pursuant to which Valassis, at great expense, produced over 14.5 million pages. NAM never suggested or advised Valassis that it was going to subpoena Valassis's parent company. Yet shortly after Valassis completed its production, NAM turned around and issued additional third-party subpoenas to Valassis's parent, its parent's

1

parent, and various advisors.  Moreover, despite having previously agreed upon production by

Valassis in response to a subpoena sweeping in scope, NAM now:

- Refuses to limit the present subpoenas to documents relating to the FSI and ISP markets **despite** having agreed to just that limitation for the Valassis subpoena; and

- Insists that Movants engage in a sweeping email review **despite** having previously agreed that Valassis need not conduct an exhaustive email review.

This prior agreement with Valassis (and NAM's implicit admission to what is relevant and

reasonable and what is not), makes NAM's new demand that Valassis's parent (and its parent's

parent) produce all information related to the Valassis acquisition patently unreasonable.

Movant's motion to quash should therefore be granted.

## FACTUAL BACKGROUND

In 2006, Valassis sued News America, Inc., News America Marketing FSI, Inc., and

News America Marketing In-Store Services, Inc. (collectively, "News") alleging violations of

federal antitrust and state tort laws ("*Valassis I*").  Declaration of A. Michael Palizzi ("Palizzi

Decl.") ¶ 2.  In 2009, Valassis obtained a $300 million jury verdict in Michigan state court on its

state tort claims, and settled all claims for more than $500 million in 2010, on the eve of the

federal trial in the Eastern District of Michigan.  *Id.* ¶ 3.  As part of the settlement, Valassis

obtained an order allowing it to seek relief from the federal district court in the event News

engaged in certain anticompetitive conduct.  *Id.* ¶ 4.  On November 8, 2013, Valassis brought a

motion seeking expedited discovery on News' alleged bundling and tying of FSIs and ISPs in

*Valassis I*.  *Id.* ¶ 5.  The court granted Valassis's motion on February 4, 2014.  *Id.* ¶ 6.  The court

did not permit News to seek expedited discovery from Valassis.  *Id.* ¶ 7.  Also on November 8,

2013, Valassis brought a second case against News in the Eastern District of Michigan, alleging

various federal and state antitrust and unfair competition claims involving News' control of the in-store promotions market ("*Valassis II*").  *Id.* ¶ 8.

Until recently, News has done everything in its power to limit or stay discovery in the Michigan actions.  *Id.* ¶ 9.  In *Valassis I*, even though the court found that Valassis was entitled to certain expedited discovery, News has tried very hard to prevent Valassis from taking additional discovery, including from third parties, and waited more than a year before making any effort to take discovery of its own.  *Id.* ¶ 10.  Similarly, News has refused to conduct discovery in *Valassis II* pending the outcome of Valassis's objections to the Magistrate Judge's recommendation that *Valassis II* be stayed pending resolution of *Valassis I*.  *Id.* ¶ 11.  That recommendation was made in connection with News' Motion to Dismiss and Valassis's objections are pending before the district court.  *Id.*

Separately, in November 2013, NAM and Plaintiffs **in this case** issued subpoenas *duces tecum* on Valassis as a third party.  *Id.* ¶¶ 12-13 & Exs. A & B.  The Plaintiffs re-issued their subpoena on December 6, 2013.  *Id.* ¶ 13. Together, the third-party subpoenas contained twenty-nine requests seeking broad categories of documents relating to virtually every aspect of Valassis's business.  *Id.* ¶ 14.  Specifically, NAM's subpoena sought documents from 2009 to the present on the following categories: costs, margins, rates, discounts, revenues, profits, volume, financial projections, performance, and profitability (*id.* Ex. A at Nos. 3, 7, 9, 12); negotiations and contracts with clients and retailers (*id.* at Nos. 10, 11, 13, 14); Valassis's competitors (*id.* at No. 2); substitutes for FSIs and ISPs (*id.* at No. 5); and entry into the FSI and ISP markets and any expansion in those markets (*id.* at No. 8).  The requests also sought documents "made, served, filed, or produced" in *Valassis I* including the November 2013 proceeding (*id.* at No. 1), all marketing products or services offered by Valassis (not just FSIs

3

and ISPs) (*id.* at Nos. 2, 3, 4, 6, 8, 10, 11, 18), and communications with the Plaintiffs in this

action about *Valassis I*, this action, *Valassis II*, NAM, FSIs, and ISPs (*id.* at Nos. 15, 16, 17, 18).

Valassis engaged in exhaustive meet and confers with NAM, culminating in an

agreement on August 6, 2014 limiting the scope of the production; even as narrowed, **Valassis**

**produced more than 1,298,160 records consisting of 14,623,640 pages** (representing

approximately 75% of all pages produced thus far in this case). *Id.* ¶¶ 15-16.  Notably, NAM

agreed that Valassis could limit its production of documents related to the FSI and ISP markets.

*Id.* ¶ 15.  NAM also agreed that Valassis did not have to conduct exhaustive email searches.  *Id.*

¶ 15.  Responding to NAM's and Plaintiff's subpoenas was costly in terms of dollars and time

spent, and also required Valassis to notify nearly forty-five third-parties that had produced

documents in *Valassis I* in accordance with the terms of the protective order.  *Id.* ¶ 17.

Shortly after Valassis completed its production on October 3, 2014 (*id.* ¶ 18), and

notwithstanding the agreements it made with Valassis, NAM promptly turned around and issued

additional third-party subpoenas to Valassis's parent company, Harland Clarke; to Harland

Clarke's indirect parent, MacAndrews & Forbes; and to advisors retained to assist with Harland

Clarke's acquisition of Valassis—*i.e.*, The Raine Group, J.P. Morgan Securities LLC ("J.P.

Morgan"), and Bank of America.  Declaration of John N. Thomas ("Thomas Decl.") ¶¶ 2, 3 &

Exs. 1 & 2.  (Indeed, notwithstanding the Court's order to quash Request No. 16, which sought

in part documents reflecting Movants' "external communications concerning Valassis's past and

present litigation with NAM," we understand that NAM has been pressing J.P. Morgan for those

very documents, among others.  *Id.* ¶ 7, Exs. 2-4.)  Of the requests in the subpoenas to Movants

that are currently in dispute, as summarized and quoted below, three seek information

duplicative of what was covered by NAM's earlier Valassis subpoena (Categories A, B, D) and

all four are overbroad, unduly burdensome and seek highly confidential documents not relevant to this action (Categories A-D).  All of NAM's requests exceed the scope of production NAM voluntarily limited during its negotiations with Valassis – an agreement which limited production to FSI and ISP, and did not require an exhaustive email search.  NAM issued these overly broad subpoenas seeking information about all aspects of Valassis's business in a transparent – and improper – attempt to gain leverage in the Michigan litigations (*Valassis I* and *Valassis II*) and harass Movants.

## PROCEDURAL BACKGROUND

In the claims most relevant to the instant dispute, plaintiffs allege that NAM exercises monopoly power and has unlawfully restrained trade in two markets in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, as well as under state antitrust laws in New York and Michigan.  Fourth Am. Compl., ¶¶ 2, 137-184, Apr. 8, 2014, ECF No. 111.  The two relevant markets are the nationwide market for third-party in-store promotion services (the "ISP" market) and the nationwide market for free-standing-insert co-op coupons (the "FSI" market).  *Id.* ¶¶ 4, 54, 66.  Plaintiffs identified non-party Valassis as a competitor of NAM in the FSI market.  *Id.* ¶ 18.  On August 11, 2014, plaintiffs moved for certification of a class of consumers in the ISP market only.  Mem. of Law in Supp. of Pls.' Mot. for Class Certification at 2, 3 n.3, refiled Sept. 23, 2014, ECF No. 152.

In October 2014, NAM served two nearly identical subpoenas *duces tecum* seeking documents responsive to sixteen separate requests from Harland Clarke, the parent company of Valassis, and from MacAndrews & Forbes, the indirect parent company of Harland Clarke.  *See* Thomas Decl. Ex. 1.  Movants served timely objections to the subpoenas on October 27, 2014.

*Id.* ¶ 8.  Movants and NAM met and conferred telephonically, including on November 6 and 20,

2014 and December 2 and 11, 2014.  *Id.* Ex. 1 at 1 n.1.

Movants offered to provide (unredacted) all documents in its possession relating to ISPs

and FSIs that were produced in the due diligence for Harland Clarke's acquisition of Valassis.

*See id.* Ex. 5.  Yet, Movants and NAM were unable to reach an agreement to narrow the

requests.

Unsatisfied with Movants' proposals, on December 19, 2014, NAM wrote the Court

outlining four categories of documents it wanted Movants to produce:

> **(A):**  "All due diligence files in the Subpoenaed Parties' possession";
>
> **(B):**  "All evaluations, examinations, and presentations—whether conducted or commissioned by the Subpoenaed Parties—concerning Valassis, its competitors, the markets in which it operates, and its potential for profitability within those markets";
>
> **(C):**  "The Subpoenaed Parties' internal and external communications concerning the evaluation and potential acquisition of Valassis"; and
>
> **(D):**  "All documents and communications exchanged between the Subpoenaed Parties and Valassis."

*Id.* Ex. 1 at 4.  The four categories in NAM's letter, quoted here and lettered for ease of

reference, do not directly correspond to NAM's original requests in the subpoenas.

Movants responded to NAM's letter on January 7, 2015 (*id.* Ex. 6) and, pursuant to Local

Civil Rule 37.2, the Court ordered a telephonic conference (*id.* Ex. 7 at 4), which was held on

January 30, 2015.  During that conference, the Court quashed Request No. 16 in both subpoenas.

*Id.* Ex. 4 at 9:5-7.  Movants and NAM were then directed to meet and confer to attempt to

narrow the remaining disputed requests.  *Id.* Ex. 4 at 11:18-12:5.  To the extent any issues

remained, Harland Clarke and MacAndrews & Forbes were given leave to file a motion to quash

by February 20, 2015.  *Id.*

Counsel for NAM and counsel for Movants conferred telephonically on February 9, 2015, and exchanged emails, but have been unable to reach a full agreement on how the requests should be narrowed.  *Id.* ¶ 12, Exs. 8-11.  Movants' last proposal to NAM was:

> **Response to Category A**:  Harland Clarke will produce all due diligence materials in its possession that it received from Valassis.  Harland Clarke will produce these unredacted, even if they contain non-FSI and non-ISP information.

> **Response to Category B:**  While Harland Clarke did not prepare its own analyses of the FSI and ISP markets, Harland Clarke will produce unredacted analyses of those markets in its possession – specifically acquisition-related analyses performed by Ernst & Young and J.P. Morgan.  Harland Clarke will also produce the various decks (*e.g.*, its lender presentation) it created that incorporate those analyses.  One of these documents, a presentation to lenders, will be produced unredacted. The remainder of the decks created by Harland Clarke will be redacted to the extent they discuss financial modeling and analyses beyond the FSI and ISP markets.  NAM has agreed that Movants need not produce financial modeling.

*Id.* Exs. 8, 9, 11.  In sum, Harland Clarke has offered to provide NAM with the acquisition-related FSI and ISP analyses in its possession.  MacAndrews & Forbes, as the indirect parent of the acquiring company, did not prepare any independent analyses of the relevant markets or of Valassis generally.  *Id.* Ex. 9.  The due diligence materials and the analyses of the FSI and ISP markets provide NAM with all that might be relevant to this case.  NAM has articulated nothing other than a superficial and hollow explanation as to why any additional information might possibly be relevant to this case.

NAM rejected this proposal and: (1) refuses to accept any limitation narrowing the requests to the relevant markets, *i.e.*, FSIs and ISPs; (2) insists that Movants produce acquisition-related "valuations" of Valassis; (3) demands documents reflecting any of MacAndrews & Forbes's comments on or reactions to any analyses or valuations of Valassis performed for the contemplated acquisition; and (4) demands Movants' emails related to the Valassis acquisition. *Id.* Ex. 10.  While NAM agrees that Movants do not need to produce their "financial modeling," it insists upon receiving "investigations, analyses, and evaluations of Valassis as a whole even if

those materials do not include specific analyses of ISP or FSI." *Id.* at 1.

Because of NAM's continued unreasonableness, Movants bring this motion to quash

NAM's remaining requests based on the following objections:

**Category A:**  Movants have agreed to produce responsive documents.

**Objection to Category B:**  To the extent NAM seeks acquisition-related "evaluations, examinations, and presentations" related to Valassis's business beyond the FSI and ISP markets, those request are overbroad and irrelevant because they are not related to the markets at issue here; and they are unreasonably cumulative and duplicative because Valassis has already produced extensive market data and analyses to NAM.  Moreover, this request is not only unduly burdensome for a non-party, it also requires the production of highly sensitive, confidential commercial information.  NAM previously agreed Valassis could limit its production of documents to ISPs and FSIs, and NAM offers no compelling reason why Movants should be required to produce **more than** Valassis did.

**Objection to Category C:**  NAM's request for "internal and external communications concerning the evaluation and potential acquisition of Valassis" is excessive, overbroad, and seeks irrelevant information.  This would require, among other things, an electronic search for all emails relating to a $1.8 billion acquisition of a public company.  That search would undoubtedly generate a significant number of emails, including communications with attorneys, that would in turn require expensive and time consuming reviews for responsiveness and privilege.  Such a request is facially overly burdensome for a non-party. Further, it too calls for the production of highly confidential and competitively sensitive information.  Finally, despite the many conversations related to these requests, NAM has failed to articulate any reason that this information is relevant to the instant case.

**Objections to Category D:**  NAM's request for "[a]ll documents and communications exchanged between the Subpoenaed Parties and Valassis" is excessively overbroad, seeks irrelevant information, is unreasonably cumulative and duplicative as Valassis has already produced the due diligence materials to NAM, is unduly burdensome, and seeks highly confidential and competitively sensitive information for all of the reasons described above.

## <u>LEGAL STANDARD</u>

The party issuing a subpoena "must take reasonable steps to avoid imposing undue

burden or expense" on the subpoena's target.  Fed. R. Civ. P. 45(d)(1).  Failure to do so will

result in the unduly burdensome subpoena being quashed or modified by the court.  Fed. R. Civ.

P. 45(d)(3)(A).  A court may also quash or modify a subpoena if it requires the disclosure of "a

trade secret or other confidential research, development, or commercial information."  Fed. R.

Civ. P. 45(d)(3)(B)(i).

In analyzing motions to quash, "courts weigh the need of the party seeking the discovery

against any undue hardships created by permitting it."  *In re Methyl Tertiary Butyl Ether (MTBE)*

*Prods. Liab. Litig.*, 269 F.R.D. 360, 363-64 (S.D.N.Y. 2010).  Whether a subpoena imposes an

"undue burden" depends upon "such factors as relevance, the need of the party for the

documents, the breadth of the document request, the time period covered by it, the particularity

with which the documents are described and the burden imposed."  *Concord Boat Corp. v.*

*Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("*Concord I*") (citation omitted).

Courts give "special weight to the burden on non-parties of producing documents to

parties involved in litigation."  *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113

(D. Conn. 2005); *accord Concord I*, 169 F.R.D. at 52; *Solarex Corp. v. Arco Solar, Inc.*, 121

F.R.D. 163, 179 (E.D.N.Y. 1988), *aff'd*, 870 F.2d 642 (Fed. Cir. 1989) (non-party status is a

significant factor in "determining whether compliance [with a discovery demand] would

constitute an undue burden") (citation omitted).  The Federal Rules of Civil Procedure are

intended to protect non-parties when they are obliged to provide "involuntary assistance to the

court."  Fed. R. Civ. P. 45 advisory committee note (1991).

## ARGUMENT

### I.  NAM'S DEMANDS FOR DOCUMENTS UNRELATED TO THE FSI OR ISP MARKETS ARE OVERBROAD AND NOT RELEVANT TO THE *DIAL V. NEWS CORP.* LITIGATION.

Even though this is an antitrust action, NAM's requests are so broad that they are not

"truly necessary to determine [relevant] markets."  *See Concord Boat Corp. v. Brunswick Corp.*,

No. 96 C 6026, 1996 WL 705260, at *3 (N.D. Ill. Dec. 4, 1996) ("*Concord II*").  The two

relevant markets at issue here are the ISP and FSI markets.  Fourth Am. Compl., ¶ 4 ("News has severely injured competition in two relevant markets for the sale of in-store promotion services ('ISPs') and free-standing-insert co-op coupons ('FSIs').").  NAM has already acknowledged that documents unrelated to the FSI and ISP markets are irrelevant in this action by agreeing that Valassis could so limit its production.  Since NAM determined it does not need documents unrelated to FSIs and ISPs from Valassis (its actual competitor), there is no valid reason it needs them from Movants.  NAM is using these subpoenas to attempt to circumvent its prior agreement with Valassis, which was heavily negotiated over many months and finalized just two months before serving these subpoenas.

NAM's about-face with regard to these subpoenas is particularly troubling given that its demands are patently overbroad and exceed the permissible scope of discovery.  *See* Fed. R. Civ. P. 26(b)(1).  Requests that "pursue[ ] material with little apparent or likely relevance to the subject matter" are overbroad and unreasonable.  *Concord I*, 169 F.R.D. at 50.  When the underlying antitrust claims involve only certain lines of business, requests seeking all documents about any aspect of a competitor's business are deemed overbroad because they do not seek material with "likely relevance to the subject matter."  *Id.*; *see also In re Frates v. Pantry Pride, Inc.*, No. M8-85, 1985 WL 2752, at *1 (S.D.N.Y. Sept. 25, 1985) (holding that subpoenas were "overbroad simply by virtue of the fact that they request any and all documents relating in any imaginable way" to the plaintiff).  Thus, all of NAM's requests are overbroad to the extent that they are not tailored to information about the FSI and ISP markets.  *See* Categories A-D.

NAM's requests encompass documents and communications regarding Harland Clarke's assessment of Valassis's relationship with Harland Clarke's other companies, the expected

synergies among the companies, and the duplication of certain business functions like human resources and legal services.

Moreover, Valassis's business is not limited to the FSI and ISP markets.  Thus, broad analyses of Valassis as a whole would shed virtually no light on the FSI and ISP markets.  It would, however, provide NAM access to highly sensitive competitive information that it cannot otherwise obtain.  None of these have any relevance to the claims and defenses in this lawsuit.

Giving due consideration to the issues **actually** involved in this case (*i.e.*, the FSI and ISP markets), and after engaging in good faith conversations with NAM, Movants have agreed to produce the documents that might arguably be relevant to the issues in this case (*i.e.*, analyses of those markets), along with any documents received from Valassis as part of due diligence.  The remainder of the information sought by NAM, whether received from Valassis or found in Movants' documents and communications, is simply irrelevant to the issues in this litigation.

Accordingly, the Court should quash the subpoenas to the extent they cover documents and information not related to the FSI and ISP markets.

## II.  NAM'S DEMANDS FOR ANALYSES OF VALASSIS AS A WHOLE ARE NOT ONLY UNNECESSARY AND IRRELEVANT, BUT THEY ARE ALSO UNDULY BURDENSOME AND SEEK HIGHLY CONFIDENTIAL INFORMATION.

NAM has conceded that "financial modeling" related to Valassis is not relevant to the instant action.  Nevertheless, it maintains that, while Movants need not produce "financial modeling" related to the acquisition of Valassis, they must produce "valuations" of Valassis.  Thomas Decl. Ex. 10.  This makes little sense, as valuations of Valassis would necessarily be based on Movants' "financial modeling."  While there is a distinction to be drawn between analyses of the FSI and ISP markets and valuations of Valassis as a whole, the line NAM attempts to draw here is illusory.  Its demand for all valuations of Valassis should be quashed.

**A. NAM's Demands For Valuations Of Valassis As A Whole Seek Highly Confidential Information Not Relevant To This Action And Are Thus Unduly Burdensome.**

Rule 45 does not require disclosure of competitively sensitive information even under a protective order. *See Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14-CV-04737, 2014 WL 6478077, at *4, *6 (N.D. Ill. Nov. 18, 2014) (finding that "the existence of [a] protective order is not a license for the Parties to obtain all of the confidential material that they seek"); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). To the contrary, the requesting party "must make a strong showing of need, especially when confidential information from a nonparty is sought." *Concord II*, 1996 WL 705260, at *3 (citations omitted).

In addition to seeking irrelevant information, NAM's demand for all analyses of Valassis is unreasonable given the proprietary nature of that information and the fact that the disclosure would be to a competitor and customers. *See In re Frates*, 1985 WL 2752, at *1. Courts will decline to require discovery of a non-party's confidential and commercially sensitive information. *Suture Express*, 2014 WL 6478077, at *6. Confidential and commercially sensitive information includes documents related to "internal decision-making process[es]," such as those formulating "sales policies and pricing structure[s]." *Id.* at *8. Pricing information which is not generally known and not made publicly available is considered confidential. *Concord II*, 1996 WL 705260, at *2. Likewise, purely internal documents relating to any potential or actual acquisition of a non-party competitor are "clearly confidential." *See Act, Inc. v. Sylvan Learning Sys., Inc.*, No. CIV. A. 99-63, 1999 WL 305300, at **2-3 (E.D. Pa. May 14, 1999).

Harland Clarke and MacAndrews & Forbes are investment organizations "whose analyses and valuations of companies are [their] stock in trade." *See In re Frates*, 1985 WL 2752, at *1. In such cases, "district courts have repeatedly resisted efforts to utilize the liberal federal discovery rules for the purpose of gaining access to proprietary, confidential business

12

information from third parties who have no interest in the litigation." *Id.*

NAM seeks Harland Clarke's internal and confidential assessment of Valassis's business in connection with the proposed acquisition. This calls for the production of highly proprietary business processes and models that Harland Clarke, a non-public entity, uses in assessing potential acquisition targets. NAM's request covers competitively sensitive information that has nothing to do with the FSI and ISP markets but, rather, relates to how Harland Clarke assesses, values, and integrates businesses into its corporate family. At most, a portion of the information Harland Clarke reviewed (such as Valassis's financial projections, market studies, competitive analyses, Valassis's performance, etc.) may be relevant. While that information was already covered by the subpoena that NAM served on Valassis, Harland Clarke has nonetheless offered to produce (a) documents produced by Valassis as part of due diligence, and (b) analyses of the FSI and ISP markets conducted on its behalf during its assessment of the Valassis acquisition.

NAM's supposed need for such highly sensitive assessments of Valassis's business does not outweigh the competitive harm to Harland Clarke that would result from disclosure. On one hand, given that NAM has already received extensive data and analyses from Valassis, its requests for additional data and market analyses from non-parties is "unreasonably cumulative [and] duplicative." *See Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007). To the extent NAM wants additional analyses, it is more than capable of performing them itself. *See Suture Express*, 2014 WL 6478077, at *5 (finding additional information unnecessary when requesting party had sales information sufficient to calculate market share); *In re eBay Seller Antitrust Litig.*, No. C09-735RAJ, 2009 WL 5205961, at **3-4 (W.D. Wash. Dec. 23, 2009) ("Whatever analyses Amazon has conducted of the relevant markets are analyses that eBay could conduct itself."). On the other hand, Movants

13

have a substantial interest in safeguarding this highly confidential and commercially sensitive information and take substantial efforts to protect it from disclosure.  Movants are both privately held and do not disclose any of the requested information regarding its financial analyses. Because such information is not only irrelevant to this litigation but also highly confidential and commercially sensitive, these demands are overbroad and unjustifiably intrusive.  They should be quashed.

### B.   NAM Cannot Make A Strong Showing Of Need For Any Of Movants' Analyses, Let Alone Their Highly Confidential Valuations.

Even if these overall analyses of Valassis could be used to assess the relevant markets, NAM cannot make a strong showing of need for any of Movants' analyses.  *See Concord II*, 1996 WL 705260, at *3 (requiring "a strong showing of need . . . when confidential information" is sought from a non-party).  An assessment of the relevant markets for an antitrust case is an objective inquiry, not one that depends on a non-party competitor's views on the subject.  *See Act, Inc.*, 1999 WL 305300, at *2 (quashing subpoena seeking "market assessment information" from a non-party competitor for lack of "substantial need").  Because most companies either have their own market research or can obtain it from independent researchers, courts do not need to compel non-party competitors to produce information concerning: (1) efforts to enter the market at issue, (2) assessment of potential and existing competitors, (3) evaluation of competitive conditions, or (4) analyses of barriers to entry.  *See id.*; *see also In re eBay Seller Antitrust Litig.*, 2009 WL 5205961, at **2-4 (quashing eBay's request for non-party Amazon's analyses of the market and competitive landscape).

Thus, NAM cannot show a need for any market analyses that would justify compelling its competitor's parent company Harland Clarke (or its parent's indirect parent, MacAndrews &

Forbes) to produce any additional market analyses, especially in light of the negotiated production it received from Valassis.

Despite this lack of need, Harland Clarke has offered to provide any analyses of the FSI and ISP markets in its possession. As we have advised NAM, MacAndrews & Forbes did not perform or commission any independent analyses related to Valassis or the FSI or ISP markets, and thus has nothing non-duplicative to produce. Thomas Decl. Ex. 9. In light of this, NAM's continued demands for valuations and analyses beyond those of the relevant market is unreasonable and unnecessary, and cannot outweigh the burden that would be imposed on Movants if they were forced to disclose competitively sensitive valuations.

## III. NAM'S OVERBROAD REQUESTS ARE UNDULY BURDENSOME.

As non-parties, Movants are "entitle[d] [ ] to consideration regarding expense and inconvenience." *Usov v. Lazar*, No. 13 CIV. 818 RWS, 2014 WL 4354691, at *16 (S.D.N.Y. Sept. 2, 2014). NAM's subpoena, contrary to Rule 45(d)(1), is not reasonably tailored to avoid imposing an undue burden on Movants. Responding to NAM's subpoenas would be unduly burdensome and oppressive for both Movants. This is particularly true given that NAM has already obtained the necessary discovery from others.

NAM's requests seeking "all documents" or all "communications" are overbroad on their face. Vague requests for "any communications" or "all documents" exchanged between a competitor and a third-party about that competitor's financial condition fail to "even meet the broad standard of relevancy." *Concord I*, 169 F.R.D. at 51. This is particularly true in antitrust litigation yet is precisely what NAM seeks here: all internal and external communications related to the Valassis acquisition (Category C) and all documents and communications exchanged between the Movants and Valassis (Category D). And even if those requests were limited to documents and communications discussing the FSI and ISP markets, they add little to

NAM's case because the relevant markets inquiry is objective and does not depend on the opinion of third-parties.  *See Act, Inc.*, 1999 WL 305300, at *2; *In re eBay Seller Antitrust Litig.*, 2009 WL 5205961, at **2-3.  Put simply, while Rule 45 imposes a duty on the serving party to avoid imposing undue burden, NAM has not.

NAM's demand for all communications goes far beyond what should be required of a non-party.  Indeed, NAM agreed that Valassis could perform limited email searches (*e.g.*, limited to two custodians and only for email that reflected negotiations with retailers).  Palizzi Decl. ¶ 15.  Yet it proposes Movants conduct email searches with preposterously broad search terms, such as "Valassis," "V," or "exclusiv!."  *See* Thomas Decl. Ex. 10 at 2.  Such a search would be excessively overbroad and sweep in anything at all related to the Valassis acquisition, and post-acquisition activities.  NAM's proposed search terms further confirm that these subpoenas are not designed to obtain information relevant for this action but are instead designed to obtain information for use in litigation taking place in Michigan.

Neither Movants nor Valassis is a party to this litigation.  Yet NAM has sought full-blown discovery from both Valassis and Movants as if they were parties.  NAM has gone so far as to subpoena a number of Movants' financial advisors.  However, the documents that are arguably relevant to this action are in Valassis's possession, and NAM has obtained more than fourteen million pages of those documents directly from Valassis.  Further, Harland Clarke has offered to give NAM all the acquisition due diligence it received from Valassis regarding the FSI and ISP markets and any analyses that Harland Clarke, or its advisors, performed of those markets.  To the extent NAM's requests go beyond that, NAM is abusing the subpoena power and those requests should be quashed.

16

As discussed above (Section I), Valassis's business is not limited to the FSI and ISP lines of business. Thus, requests for all documents and all communications related to Valassis would obviously encompass substantial amounts of irrelevant documents. It is unreasonable to expect the parent of a non-party competitor to search for and produce internal emails, including emails reflecting confidential business and strategic thinking. To the extent NAM wanted emails between Harland Clarke and Valassis, it could have sought them from Valassis; NAM did not do so, apparently because NAM did not deem them relevant to this action. Harland Clarke should not be forced to produce them.

As burdensome as responding to NAM's subpoena is for Harland Clarke, it is doubly so for MacAndrews & Forbes. MacAndrews & Forbes is Harland Clarke's ultimate parent company and is even further removed from the business of NAM's actual competitor, Valassis. Thus the burden on MacAndrews & Forbes is certainly undue and warrants quashing the subpoena here.

## IV. NAM'S DEMANDS ARE MERELY AN IMPROPER ATTEMPT TO GAIN ADVANTAGE IN OTHER LITIGATIONS.

A party may not use a subpoena to obtain information for use in another proceeding. *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 CIV. 1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 CIV. 1607 (RWS), 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991). "[A] court is not required to blind itself to the purpose for which a party seeks information" and may properly deny discovery "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit[.]" *Nicholas*, 1991 WL 113279, at *2.

Despite Movants' offer to produce analyses of the product markets at issue in this action, NAM demands extensive information about the financial condition of Valassis, its opponent in

17

separate litigations (*Valassis I & II*).  It is undisputed that NAM spent months negotiating with

Valassis to obtain the documents it purportedly needed for this action.  As a result, NAM

received more than 1,298,160 records consisting of 14,623,640 pages.  NAM's claim that it

needs ***more*** information about Valassis is a thinly disguised attempt to obtain leverage in those

actions, where NAM has either (a) made virtually no meaningful attempt to take discovery

(*Valassis I*), or (b) taken the position that discovery should be stayed (*Valassis II*).  NAM is

improperly using its subpoena power in this case to exert pressure and harass Valassis's new

parent company (as well as its indirect parent) and engage in what amounts to full-blown party

discovery against a third-party, Valassis.  The Court should reject NAM's attempt to avoid the

limitations on discovery in place in the Michigan actions and quash NAM's subpoenas.

## <u>CONCLUSION</u>

Movants respectfully request that the Court, pursuant to Federal Rule of Civil Procedure

45(d)(3), quash the subpoenas served on them by NAM, except as to those requested documents

Movants have agreed to produce.

**CROWELL & MORING LLP**

Dated: February 20, 2015
          New York, New York               By:    s/ John N. Thomas
                                                          John N. Thomas
                                                          Glen G. McGorty
                                                          Crowell & Moring LLP
                                                          590 Madison Avenue, 20th Floor
                                                          New York, NY 10022-2524
                                                          Telephone: 212-223-4000
                                                          Email: jnthomas@crowell.com
                                                                      gmcgorty@crowell.com

                                                          *Attorneys for Non-Parties*
                                                          *Harland Clarke Holdings Corp. and*
                                                          *MacAndrews & Forbes Holdings Inc.*

18