PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW                    WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A
BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

WRITER'S DIRECT DIAL NUMBER
(202) 223-7356

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

WRITER'S DIRECT FACSIMILE
(202) 204-7356

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

WRITER'S DIRECT E-MAIL ADDRESS
kgallo@paulweiss.com

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

May 8, 2015

**By Hand Delivery**

The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

        *The Dial Corporation, et al. v. News Corporation, et al.,*
        No. 13-cv-06802 (WHP) (S.D.N.Y.)

Dear Judge Pauley:

       Pursuant to Your Honor's instructions in the Order dated March 24, 2015 (ECF No. 214), we write on behalf of Defendants (collectively, "NAM") to request a pre-motion conference in contemplation of a motion for summary judgment.

       Plaintiffs claim that NAM has monopolized an alleged market for third-party in-store promotions in violation of § 2 of the Sherman Act. NAM will show that it is entitled to summary judgment for at least three reasons: (1) NAM's conduct has not been anticompetitive as a matter of law, (2) Plaintiffs cannot show damages from any allegedly anticompetitive conduct, and (3) Plaintiffs cannot meet their burden of proving that "third-party in-store promotions" constitutes a relevant product market.

       While certain discovery remains outstanding, the facts underlying NAM's arguments—in particular the length and profitability of its retailer contracts—are not in dispute. Plaintiffs' principal expert on liability and damages (Dr. MacKie-Mason) has testified: "We agree on the facts. That's not the issue." (Ex. A at 10-11.) NAM will show in its motion that it is entitled to judgment as a matter of law on all claims.[1]

---

[1] NAM also intends to seek summary judgment on Plaintiffs' claims alleging monopolization and tying in a market for "free-standing inserts." While these claims are asserted in Plaintiffs' complaint, Plaintiffs appear to have abandoned them: they have not submitted any expert (or other) evidence regarding these claims, and cannot carry their burden to establish, *inter alia,* market definition or damages.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable William H. Pauley III  2

<u>NAM's Conduct Has Not Been Anticompetitive.</u> Plaintiffs allege that NAM acquired and maintained a monopoly by predatorily "overpaying" retailers for access to their stores, entering into "long-term" and "staggered" contracts with retailers, and engaging in various "unfair" conduct. (*See* ECF No. 152 at 9-13.) Plaintiffs cannot establish that any of this alleged conduct was anticompetitive under the Sherman Act.

*First*, the undisputed evidence establishes that NAM's payments to retailers are not predatory. "Just as sellers use output prices to compete for purchasers, buyers use bid prices to compete for scarce inputs." *Weyerhauser Co.* v. *Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 323 (2007). Here, the "input" for which NAM, Valassis, and others compete is access to retail store space. Because claims of predatory bidding involve "the very essence of competition," the Supreme Court has held that they must meet the same stringent standards as predatory pricing claims: Plaintiffs must prove, *inter alia*, that the alleged overpayments were so high that they "led to below-cost pricing of [NAM's] outputs." *Id.* at 325. There is no such proof here, and Plaintiffs' own expert has admitted as much. (Ex. A at 11-13; 37-38; 53-54; 102-04.) Thus, Plaintiffs have no basis to claim that NAM's competitive bidding for retailer space was anticompetitive.[2]

*Second*, the length and "staggered" expiration dates of NAM's retailer contracts are not exclusionary. The undisputed evidence is that NAM's contracts have had, on average, presumptively lawful durations ▮▮▮▮▮▮▮▮. *E.g.*, *Spinelli* v. *Nat'l Football League*, No. 13 Civ. 7398, 2015 WL 1433370, at *26 (S.D.N.Y. Mar. 27, 2015) (dismissing claims because three-year agreements "cannot plausibly [cause] harm to competition"). It is also undisputed that, despite allegations of "staggering," a large percentage ▮▮▮▮ of NAM's contracts have been open to competition each year, and ▮▮▮▮ have come up for bid during the damages period. (Ex. A. at 114-17.) NAM's competitors thus have had opportunities to compete for ▮▮ the allegedly "exclusionary" contracts.[3] *See NicSand, Inc.* v. *3M Co.*, 507 F.3d 442, 453 (6th Cir. 2007) (finding multi-year exclusive agreements procompetitive where rival "could have competed for the exact same" agreements); *Menasha Corp.* v. *News Am. Mktg. In-Store*

---

[2] Lacking evidence that NAM priced below cost, Plaintiffs' expert has tried to avoid the relevant standard by arguing that NAM's non-predatory payments were "exclusionary" (because they led to lower profits), and by opining about documents that supposedly reflect NAM's anticompetitive "intent." (Ex. A at 17; 23; 76.) The Sixth Circuit recently rejected a virtually identical argument, in a predatory pricing case, as "flatly contrary to law," and affirmed summary judgment for the defendant and the exclusion of plaintiffs' expert testimony on these issues. *Superior Prod. P'Ship* v. *Gordon Auto Body Parts Co.*, No. 13-4466, 2015 WL 1811060, at *8-11 (6th Cir. Apr. 22, 2015). NAM will show that the same result is warranted here.

[3] For the same reasons, NAM's contracts do not constitute exclusive dealing under § 1. Unlike a typical exclusive dealing case, Plaintiffs do not assert that the exclusivity provisions of NAM's contracts harm competition. To the contrary, they acknowledge those provisions are procompetitive and would exist in the "but for world."

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable William H. Pauley III                                                            3

*Inc.*, 354 F.3d 661, 664 (7th Cir. 2004) ("One might think that staggered expiration dates make entry easier; Menasha (or any other rival [to NAM]) can sign up chains as their exclusives expire, without having to enroll the entire retail industry at one go.").

*Finally*, the alleged business torts—such as hacking into a competitor's website in 2003—do not amount to anticompetitive conduct as a matter of law. *Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition . . . ."). Nor can Plaintiffs rely on allegations about NAM's entire "course of conduct," because they cannot establish that any of the alleged acts comprising that course of conduct was anticompetitive. *See, e.g., Eatoni Ergonomics, Inc.* v. *Research In Motion*, 826 F. Supp. 2d 705, 709-10 (S.D.N.Y. 2011) (Pauley, J.). Further, all of the alleged tortious or "unfair" conduct occurred *prior* to the damages period for this case, and Defendants' expert (Dr. Murphy) has demonstrated that such conduct had no impact on competition *during* the damages period. Dr. Murphy's showing has gone unrebutted; Plaintiffs' expert does not even purport to show that the prior conduct caused any injury during the damages period. (Ex. A at 329.)

Plaintiffs Fail to Establish Damages. Plaintiffs' damages claims fail as a matter of law because the model their expert uses to calculate a pricing overcharge is fundamentally unreliable. Plaintiffs' expert fails to present any proof that NAM's alleged conduct led to an overcharge. Instead, he asserts that NAM's profits were higher than a "benchmark"—consisting of an average of profits of wildly different firms from NAM—and then speculates that this difference in profits must be due to supracompetitive pricing. This model is as unprecedented as it is unreliable and should be rejected under *Daubert*.[4]

Plaintiffs Fail to Define a Relevant Market. Plaintiffs cannot carry their burden of establishing that "third-party in-store promotions" constitutes a relevant product market. In another case involving NAM's in-store promotions business, the Seventh Circuit affirmed summary judgment in favor of NAM on this basis. *Menasha*, 354 F.3d at 664. And the evidence in this case is overwhelming that consumer packaged goods companies (including Plaintiffs themselves) regularly substitute third-party in-store promotions for a wide variety of other forms of advertising and marketing.

Respectfully submitted,

/s/ Kenneth A. Gallo
Kenneth A. Gallo

cc:   Counsel of Record (by email)

---

[4]   Contrary to Plaintiffs' overcharge claims, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B.)