# McKool Smith

John C. Briody
Direct Dial: (212) 402-9438
jbriody@McKoolSmith.com

One Bryant Park
47th Floor
New York, NY 10036

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

May 15, 2015

**VIA HAND DELIVERY**

The Honorable William H. Pauley III
United States District Judge, U.S. District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *The Dial Corp., et al. v. News Corp., et al.*, Civ. Action No. 1:13-cv-06802-WHP

Dear Judge Pauley:

The summary judgment motion Defendants ("News") propose to file is futile. ***First***, hotly contested fact issues surround each instance of News's anticompetitive conduct. ***Next***, the relevant product market and damages raise fact issues, as shown by the parties' multiple competing experts. ***Finally***, any such motion is mooted by News's admitted failure to produce more than 1 million emails from key executives and employees — a fiasco News did not announce until April 14 and *still* has not remedied, obliterating the May 1 discovery deadline.

***Market Definition Presents A Fact Question.*** Though discussed last in News's letter, defining the relevant market is a critical first step and poses a contested fact question. *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 53 (S.D.N.Y. 2012) (Pauley, J.) (noting "market definition is a deeply fact-intensive inquiry") (quoting *Todd v. Exxon Corp.,* 275 F.3d 191, 199–200 (2d Cir. 2001)); *Hayden Pub. Co. v. Cox Broad. Corp.*, 730 F.2d 64, 70 n.8 (2d Cir. 1984). Plaintiffs contend (as did two of News's competitors) that the relevant market is third-party in-store promotions ("ISP"). (Ex. 1, Mackie-Mason ("MM") Rep. at 2, 29–50.) News asserts a vastly more expansive market but provides no definition. (Ex. 2, Murphy Rep.at 51-53.) This dispute cannot be resolved on summary judgment. Prior ISP monopolization cases against News have rejected News's market contentions. *Insignia Systems, Inc. v. News America Marketing In-Store, Inc.*, 661 F. Supp. 2d 1039, 1057-60 (D. Minn. 2009).

***News's Staggered, Long-Term Contracts Foreclose Competition.*** News claims Plaintiffs cannot prove any conduct was anticompetitive, but News's own documents and testimony prove the contrary and create material fact questions.

- For more than a decade, News's [redacted] has been to enter into [redacted] (Ex. 3, NAM-CPG-000228156, at 157.)

- News claims its "average" contract length is [redacted] but it locked up the [redacted] (Ex. 4, NAM-CPG-003036516; Ex. 5, NAM-CPG-003023264; Ex. 6, MM Ex. 40.)

- News claims that [redacted] of its retailer contracts came up for bid in the damages period, [redacted] (Ex. 7, Berg Tr. 107:5-108:15)(Ex. 8, Hansa Ex. 108 - In March 2010, News sought to extend [redacted] for [redacted]

- News admits it [redacted] (Ex. 9, NAM-CPG-000382904 at 918.)

- News makes predatory and exclusionary bids to exclude competitors.[1] For example:
  - In response to Valassis's competing [redacted], News increased its [redacted] and paid [redacted] — while News's *ex ante* analysis of its [redacted] offer yielded a money-losing margin [redacted] (Ex. 10, NAM-CPG-009213284.) News won the [redacted] contract but ended up losing [redacted] on the deal — more than [redacted] in FY 2013 alone. (Ex. 11, Bedell Tr. 267:4–10; Ex. 12, Bedell Ex. 276,) After Valassis was excluded, News negotiated a new contract with [redacted] for only [redacted] per store. (Ex. 13, Kroc Tr. at 130:13–132:3.)
  - News's predatory commissions to retailers caused its margin for its [redacted] — the period when [redacted] tried to compete with News. (MM Rep. at 80–82; Ex. 14, MM Ex. 67.) [redacted] (Ex. 15, MM Reb. Rep at 37–39.)
  - In response to [redacted] telling News it was switching to Valassis, News's CEO offered to immediately increase its bid by [redacted] for a renewed contract and pay an additional [redacted] under News's existing contract if [redacted] would reject Valassis's bid and stay with News. (Ex. 16, Hansa Ex. 103.)

***Monopoly Margins Fuel News's Exclusionary Payments.*** Since 2009, News's ISP margins on sales to the proposed class consistently [redacted] (MM Rep. at 50; Ex. 17, MM Exs. 34, 35.) News executive VP Joe Bevilacqua testified that [redacted]

---

[1] Although numerous of News's retailer commissions resulted in negative margins, Plaintiffs are not required to show the commissions are below-cost in order for News's contracting practices to be anticompetitive. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 278 (3d Cir. 2012) ("Nothing in the case law suggests, nor would it be sound policy to hold, that above-cost prices render an otherwise unlawful exclusive dealing agreement lawful.").

(Ex. 18, Bevilacqua Tr. 171:3–23.) But in the ISP market News is the dominant participant and uses its monopolist's profits to consistently overpay retailers to exclude rivals and maintain a high barrier to entry.

***Total Exclusion of Competitors***. Since 2000, News has faced three competitors and excluded all three. *First*, through disparagement, trespass, and predatory retailer commissions, (MM Rep. at 85; Ex. 19, MM Ex. 50; MM Reb. Rep. at 32–35.) News bought Floorgraphics' remaining contracts in a litigation settlement in 2009 (MM Rep. at 85.) *Second*, News excluded Insignia by paying predatory retailer commissions and then co-opted Insignia by paying a $125 million litigation settlement and executing an to eliminate Insignia as a competitor. (MM Rep. at 20; Ex. 20, NAM-CPG-012826290.) *Third*, by 2014 (MM at 86–87.)

***Plaintiffs' Damages Methods Are Standard and Reliable.*** Rather than being "unreliable" and "unprecedented," Plaintiffs' benchmarking study is a well-accepted way to calculate damages. *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996) (benchmark analysis is a "widely accepted means of measuring damages in antitrust cases"). News's rebuttal expert opinion only creates a "battle of the experts" on a complex fact issue, making summary judgment inappropriate. *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995) (reversing summary judgment because "[t]rial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts.").

***Summary judgment is inappropriate given News's discovery failures***. Circumstances in this case have changed starkly since the Court's March 24 Order adjourning the pre-trial order deadlines: News revealed that over one million emails have yet to be produced. But six months after identifying the error in its production and one month after revealing it, News has produced less than 10% of the missing emails. News cannot credibly suggest these emails are not "essential discovery" that alone warrant denial of summary judgment pursuant to Fed. R. Civ. P. 56(d)(1). The emails come from key custodians from whom Plaintiffs have adduced important evidence to rebut News's case for summary judgment. To date, News appears to have focused its production on only two custodians, one of whom, Mr. Aversano, is News's former executive VP of marketing and who already To come will likely be production of additional emails from, among others, custodians responsible for News's retailer contracting, (Ex. 21, Hansa Tr. at p. 106:7-111:11.)

Plaintiffs are prejudiced by News's botched and still-incomplete document production. News requested and received an extension of final pretrial deadlines without disclosing its massive discovery failing. (Dkt. 210, 214). Additional delay for News to pursue a futile Rule 56 motion will squander the Court's time and resources and further prejudice Plaintiffs. Instead, the Court should order News to complete its production by June 12 and set a firm trial date this Fall.

Respectfully Submitted,

John C. Briody

cc: Counsel of Record (Via Email)