UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/16/15
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                      :

DIAL CORPORATION, *et al.*,

                      :      13cv6802

              Plaintiffs,

                      :      <u>MEMORANDUM & ORDER</u>

      -against-

                      :

NEWS CORPORATION, *et al.*,

                      :

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Defendants News Corporation, News America Inc., News America Marketing FSI

L.L.C., News America Marketing In-Store Services L.L.C. (collectively, "News Corp.") seek

this Court's permission for News Corp.'s in-house counsel to engage in direct discussions with

in-house counsel of absent class members regarding "possible resolution of the issues raised in

the present lawsuit." (ECF No. 300.) The Class Representatives and their Class Counsel oppose

News Corp.'s request to conduct <u>ex parte</u> settlement negotiations because such negotiations are

"potentially coercive, improper, and could also violate Rule 4.2 of the New York Rules of

Professional Conduct and ABA Model Rule 4.2." (ECF No. 305.) This Court explored these

issues during a November 5, 2015 teleconference with the parties. For the following reasons,

News Corp.'s request to permit its in-house counsel to communicate with some absent class

members' in-house counsel is granted, subject to the limitations enumerated in this

Memorandum & Order.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(d), a district court may impose conditions on the parties and their counsel in a class action. Fed. R. Civ. P. 23(d)(1)(C). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); Erhardt v. Prudential Grp. Inc., 629 F. 2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court . . . to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel.").

DISCUSSION

On June 18, 2015, this Court certified a class of Consumer Packaged Goods companies ("CPGs"). (ECF No. 243.) Shortly thereafter, this Court appointed Susman Godfrey LLP and Kellogg Huber Hanson Todd Evans & Figel LLP as Class Counsel. (ECF No. 257.) News Corp. filed a Fed. R. Civ. P. 23(f) petition in the Second Circuit for leave to appeal the class certification ruling. On November 10, 2015, the Second Circuit denied News Corp.'s petition. (ECF No. 327.)

Prior to class certification, courts have allowed individual settlements with putative class members. See Cada v. Costa Line, Inc., 93 F.R.D. 95, 98 (N.D. Ill. 1981) ("Individual class members who chose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c)."); Cf. Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 773 (2d Cir. 1972) ("Indeed, we are unable to perceive any legal theory that would endow a plaintiff . . . with a right to prevent negotiation of settlements

-2-

between the defendant and other potential members of the class who are of a mind to do this[.]").

However, after class certification, <u>ex parte</u> communications with individual class members are generally disfavored because class counsel are counsel to the entire class—both Class Representatives and absent class members.  <u>See</u> Manual For Complex Litigation § 21.33 (2004) ("Once a class has been certified, the rules governing communications apply as though each class member is the client of class counsel . . . . Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation.").  And Rule 4.2(a) of the New York Rules of Professional Conduct provides that "a lawyer shall not communicate or cause another to communicate about the subject matter of the representation with a party the lawyer knows to be represented by another lawyer in the matter[.]"  <u>See also</u> Model ABA Rule 4.2.

This class action is easily distinguishable from a typical class action where class counsel must protect individual class members from possible coercion or intimidation.  <u>See, e.g.,</u> <u>In re Currency Conversion Fee Antitrust Litig.</u>, 361 F. Supp. 2d 237, 253-54 (S.D.N.Y. 2005) (finding that "unsupervised communications" with putative credit cardholder class members to change the terms of their cardholder agreements was "potentially coercive and improper").  Here, the absent class member CPGs are large and sophisticated entities—Procter & Gamble, Johnson & Johnson, Kimberly Clark Corporation, to name a few—with their own in-house legal teams.  Moreover, as News Corp. points out, its in-house counsel have regular contact with their CPG counterparts as an integral part of their ongoing business relationships.  Lawyer to lawyer communications between sophisticated business entities do not raise the kinds of concerns that motivated this Court in <u>Currency Conversion</u>.

This Court declines to impose undue restrictions on the rights of large

corporations to communicate with each other about any issue, including the potential resolution of claims in this action. See Gulf Oil Co., 452 U.S. at 101 (noting that any order regulating communications with class members needs a basis in "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.")

Absent concrete evidence of News Corp.'s coercion, the danger "that Rule 4.2 was designed to prevent, [i.e.,] obtaining a tactical advantage by knowingly contacting a represented party without notifying her lawyer," is remote. Velez v. Novartis Pharm. Corp., No. 04-9194 (CM), 2010 WL 339098, at *3 (S.D.N.Y. Jan. 26, 2010); see also Dodona I, LLC v. Goldman, Sachs & Co., 300 F.R.D. 182, 188 (S.D.N.Y. 2014) (permitting communications with individual class members where "Plaintiffs have not shown that Defendants have gained any improper tactical advantage over class members by Defendants' counsel's communications, to date, with class members' in-house . . . attorneys, who are presumably sophisticated").

Nevertheless, this Court is mindful of the potential imbalance of information that may skew communications regarding this action between News Corp. in-house counsel and in-house counsel for absent class members. News Corp.'s in-house counsel has been privy to all pleadings, motions, and orders of this Court, including voluminous material filed under seal. And News Corp.'s in-house counsel has had access to the millions of documents produced by the parties pursuant to a Stipulation and Protective Order. In-house counsel for absent class members may only be aware, tangentially, of this litigation.

As News Corp. acknowledges, this Court is tasked with administering and safeguarding the class action process. Accordingly, to level the playing field, this Court imposes the following restrictions on communications between in-house counsel at News Corp. and in-

house counsel of absent class member CPGs.  Because News Corp. intends to discuss a potential resolution of this action with a select few of its largest CPG customers, News Corp. should identify those CPGs to Class Counsel at least fourteen days before initiating any settlement discussions.  Of course, Class Counsel are free to communicate with absent class members in any manner they deem appropriate.  In addition, at least seven days before contacting any in-house CPG counsel about this action, News Corp.'s in-house counsel must furnish copies of the following documents to in-house CPG counsel:  (1) this Memorandum & Order; (2) the June 18, 2015 Memorandum & Order granting class certification; and (3) the November 19, 2013 Stipulation and Protective Order.  Finally, absent class members that are contacted by News Corp.'s in-house counsel may apply to this Court through Class Counsel to view "Confidential Information" produced by the parties in this action, as defined by the Stipulation and Protective Order.  (ECF Nos. 82, 87, 155.)

CONCLUSION

For the foregoing reasons, News Corp.'s in-house counsel may communicate with absent class members' in-house counsel regarding possible resolution of the issues raised in this action, with the following limitations:

(1) News Corp. shall identify those absent class member CPGs that it proposes to contact regarding potential resolution of this action to Class Counsel at least fourteen days before initiating such discussions;

(2) News Corp.'s in-house counsel must provide, at least seven days before contacting any in-house CPG counsel, the following documents:  (1) the Stipulation and Protective Order (ECF Nos. 82, 87, 155); (2) the June 18, 2015 Memorandum & Order granting class certification (ECF No. 243); and (3) this Memorandum & Order; and

(3) Absent class members that are contacted by News Corp.'s in-house counsel may apply to this Court through Class Counsel to view "Confidential Information" produced by the parties in this action, as defined by the Stipulation and Protective Order.

Dated: November 16, 2015
     New York, New York

               SO ORDERED:

                        _____
                        WILLIAM H. PAULEY III
                        U.S.D.J.

*All Counsel of Record (via ECF).*