UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DIAL CORPORATION,<br>HENKEL CONSUMER GOODS INC.,<br>H. J. HEINZ COMPANY,<br>H. J. HEINZ COMPANY, L.P.,<br>FOSTER POULTRY FARMS,<br>SMITHFIELD FOODS, INC.<br>HP HOOD LLC, and<br>BEF FOODS, INC.,<br>Individually and On Behalf of<br>Similarly Situated Companies,<br><br>      Plaintiffs,<br><br>      v.<br><br>NEWS CORPORATION,<br>NEWS AMERICA INC.,<br>NEWS AMERICA MARKETING FSI L.L.C.,<br>and NEWS AMERICA MARKETING IN-<br>STORE SERVICES L.L.C.,<br><br>      Defendants. | Civil Action No. 13-CV-06802-WHP<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
<u>EXCLUDE EVIDENCE OF CLAIMS DISCHARGED BY RELEASES</u>**

            PAUL, WEISS, RIFKIND, WHARTON &
            GARRISON LLP
            2001 K Street, N.W.
            Washington, DC  20006-1047
            Tel: (202) 223-7300
            Fax: (202) 223-7420

            1285 Avenue of the Americas
            New York, NY  10019-6064
            Tel: (212) 373-3000
            Fax: (212) 757-3990

            *Counsel for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1
BACKGROUND ............................................................................................................................2
ARGUMENT ..................................................................................................................................4
CONCLUSION ...............................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broussard* v. *Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ................................................................................................6

*Davis & Assocs., Inc.* v. *Health Mgmt. Servs., Inc.*,
  168 F. Supp. 2d 109 (S.D.N.Y. 2001) ...................................................................................5

*Gambale* v. *Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004) ..................................................................................................7

*Golden Pac. Bancorp* v. *F.D.I.C.*,
  273 F.3d 509 (2d Cir. 2001) ..................................................................................................6

*In re Southeastern Milk Antitrust Litig.*, 08-MD-1000, 2011 WL 3300577,
  at *1 (E.D. Tenn. 2011) ........................................................................................................6

*Krumme* v. *WestPoint Stevens Inc.*,
  238 F.3d 133 (2d Cir. 2000) ..................................................................................................6

*Levine* v. *Bd. of Educ. of City of N.Y.*,
  152 F.3d 919, 1998 WL 386141 (2d Cir. 1998) ....................................................................7

*Melong* v. *Micronesian Claims Comm'n*,
  643 F.2d 10 (D.C. Cir. 1980) ................................................................................................8

*Nat'l Rural Utils. Coop. Fin. Corp.* v. *Prosser*,
  467 B.R. 59 (D. Del. 2011) ...................................................................................................7

*Provident Loan Soc'y of N.Y.* v. *190 E. 72nd St. Corp.*,
  911 N.Y.S. 2d 308 (1st Dep't 2010) .....................................................................................5

*Ruskay* v. *Waddell*,
  552 F.2d 392 (2d Cir. 1977) ..................................................................................................7

*U.S. Airways, Inc.* v. *Sabre Holdings Corp.*,
  105 F. Supp. 3d 265 (S.D.N.Y. 2015) ...................................................................................6

*Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*,
  No. 14 Civ. 9783(PAE), 2015 WL 5122590 (S.D.N.Y. Aug. 31, 2015) ...............................5

*Worth Constr. Co.* v. *I.T.R.I. Masonry Corp.*,
  No. 98 Civ. 2536(CM), 2001 WL 209924 (S.D.N.Y. Feb. 21, 2001) ...................................4

*Xerox Corp.* v. *Media Sciences, Inc.*,
     609 F. Supp. 2d 319 (S.D.N.Y. 2009) ...........................................................................7

**Other Authorities**

Fed. R. Evid. 408 ............................................................................................................6

Defendants respectfully submit this memorandum of law in support of their motion, pursuant to Section VI.B.iii of Your Honor's Individual Practices, to exclude evidence of claims discharged by releases.

## PRELIMINARY STATEMENT

Seven class members have executed valid, enforceable, and binding releases discharging claims against Defendants. Those releases cover antitrust and unfair competition claims arising from NAM's provision of in-store promotion services during periods of time within the class period, and they clearly apply to the claims brought in this action. All of the releases at issue were executed before a class was certified; six of the seven were executed before the first class action complaint in this matter was even filed.

The class members that signed releases are all large, sophisticated businesses—███████████████████████████████████████████████████████—and all were represented by counsel in connection with the releases. None of these class members have contested the validity or enforceability of these releases—nor have class counsel—for the indisputable reason that there is no basis to do so. It is therefore impermissible for Plaintiffs to seek to recover damages allegedly incurred during the released periods on behalf of those class members.

Since early December, Defendants have made good-faith efforts to negotiate a stipulation with Plaintiffs that would remove released claims from the case, but those efforts have been unsuccessful to date. Accordingly, Defendants have no choice but to respectfully request that this Court exclude from trial all evidence of claims discharged by the releases and preclude Plaintiffs from putting before the jury a class-wide damages

calculation that includes alleged overcharges on purchases made by these class members during the time periods covered by the releases.

## BACKGROUND

From July 29, 2011 through October 28, 2014, seven current members of the plaintiff class (the "Class Members") executed releases (the "Releases") discharging claims against Defendants arising from the provision of in-store promotion services.[1] The scope of the Releases is broad, covering all antitrust claims (among other things) and extending well into the class period in this action:

- ███████ released all claims "related to the business relationship between ███ and [Defendants]" through October 2, 2012.[2]

- ███████ released all claims that "relate to or arise from, directly or indirectly, the provision of free standing insert services or in-store services" through August 23, 2011.[3]

- ███████ released all claims "that arise from the Parties' business relationship, with respect to agreements and conduct related to the sale of in-store services and free-standing-insert coupons" through December 31, 2012.[4]

- ███████ released all claims "relating in any way to in store marketing or free standing insert activity in North America" through April 19, 2013.[5]

- ███████ released all claims "in any way related to free standing insert services or in-store services" through January 1, 2012.[6]

---

[1] The Class Members are ███████████████████████████████████████████████████████████████████████████

[2] The ███████ release is attached to this memorandum as Exhibit 1.

[3] The ███████ release is attached to this memorandum as Exhibit 2.

[4] The ███████ release is attached to this memorandum as Exhibit 3.

[5] The ███████ release is attached to this memorandum as Exhibit 4.

[6] The ███████ release is attached to this memorandum as Exhibit 5.

2

- ▇▇▇ released [Defendants] "from any and all past, present, or future claims and/or counterclaims, causes of action, [and] suits" through October 28, 2014.[7]
- ▇▇▇ released all claims "arising out of any purported violation of any state or federal antitrust, unfair competition or other statutes or laws protecting competition" through July 29, 2011.[8]

All of the Class Members were represented by counsel in connection with the releases.[9] Each of the Releases is valid, binding, and applicable to this litigation's subject matter and time period.

On December 10, 2015, Defendants requested that Plaintiffs stipulate to the exclusion of any evidence related to claims discharged by the Releases. This request would principally affect Plaintiffs' calculation of damages arising from alleged overcharges for purchases made by class members during the class period. At present, Plaintiffs' damages calculation includes revenue associated with the released claims. To effectuate the purpose of the Releases, Defendants requested that Plaintiffs exclude from their damages calculations any in-store promotion fees paid by the Class Members during the released time periods.

In response, class counsel did not identify any doubt about the validity and enforceability of the Releases. To the contrary, class counsel acknowledged that at least one of the Class Members has made clear that it expects that its release will be honored and enforced and that it does not wish to pursue any damages in this action for at least the

---

[7] The ▇▇▇ release is attached to this memorandum as Exhibit 6.
[8] The ▇▇▇ release is attached to this memorandum as Exhibit 7.
[9] In fact, two of the Class Members—▇▇▇▇▇▇▇▇▇▇▇▇—signed a tolling agreement while represented by one of Plaintiffs' attorneys only months before they signed their respective releases. Five of the releases were produced to Plaintiffs during the document discovery period. Copies of all were provided again on December 10, 2015. Plaintiffs cannot credibly claim to have been unaware of these releases.

time period covered by the release. Nevertheless, on January 15, 2016, Plaintiffs served Defendants with a supplemental expert report calculating damages that includes the released claims. Plaintiffs have also declined to enter into any form of stipulation regarding the released claims and have suggested that the effect of the Releases should be decided by the jury at trial.

## ARGUMENT

Through the Releases, the Class Members have knowingly relinquished their rights to bring claims against Defendants arising from their purchase of in-store promotions during certain time periods. Having relinquished those rights, the Class Members cannot now use this class action lawsuit as a vehicle to recover for released claims. It is therefore improper for Plaintiffs to include in their damages calculation any evidence of released claims, particularly evidence that comes in the form of alleged overcharges paid by the Class Members. Allowing Plaintiffs to "double dip" by claiming damages on behalf of Class Members that released claims would deprive Defendants of the benefit of their bargain, run counter to the recognized policy preference favoring settlement, and expose the Class Members—whose interests should be represented by Plaintiffs and class counsel—to potential litigation for breaching the Releases.

As a preliminary matter, there is no reason to doubt that the Class Members and Defendants intended the Releases to apply to the claims presented in this litigation. Where "the parties to a release express their intent in language that is clear and unambiguous on its face, full effect must be given to that intent in accordance with the language employed." *Worth Constr. Co. v. I.T.R.I. Masonry Corp.*, No. 98 Civ. 2536(CM), 2001 WL 209924, at *5 (S.D.N.Y. Feb. 21, 2001) (internal quotation marks and citation omitted). There is nothing ambiguous or uncertain about the relevant

provisions of the Releases. The scope of each release encompasses the antitrust claims presented in this litigation. Plaintiffs' claims arise directly out of NAM's provision of in-store promotions to the Class Members; out of NAM's business relationship with the Class Members; and out of a purported violation of laws protecting competition.

There is also no legitimate question about the validity of the Releases. "[A] release is binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense." *Davis & Assocs., Inc.* v. *Health Mgmt. Servs., Inc.*, 168 F. Supp. 2d 109, 113 (S.D.N.Y. 2001). Neither the Class Members nor Plaintiffs have presented any reason not to enforce the Releases. And none is apparent from the record. The Releases were negotiated in good faith between sophisticated parties, without any hint of fraud, duress, or any other form of impropriety. Where, as here, "the release agreement [is] executed in the course of arm's length negotiations by sophisticated commercial actors . . . [it] must be given greatest deference by the Court." *Id.*

Insofar as Plaintiffs contend that the effect of the Releases presents a question to be resolved by the jury, their arguments run counter to precedent and sound judicial administration. Construction of the Releases' impact on this litigation is a question of law for the Court. *See Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, No. 14 Civ. 9783(PAE), 2015 WL 5122590, at *9 (S.D.N.Y. Aug. 31, 2015) (citing *Provident Loan Soc'y of N.Y.* v. *190 E. 72nd St. Corp.*, 911 N.Y.S. 2d 308, 309 (1st Dep't 2010)) ("[T]he interpretation of an unambiguous contract is a question of law to be addressed by the Court."). The question presented by a release is whether a party has relinquished the right to press a claim. That question, just like those presented by waiver, preservation, or

forfeiture, is legal in nature and resolved by the Court. *See Krumme* v. *WestPoint Stevens Inc.*, 238 F.3d 133, 139–44 (2d Cir. 2000).[10]

The Federal Rules of Evidence present another barrier to Plaintiffs' suggestion that the Releases should be presented to the jury at trial. Under Rule 408 of the Federal Rules of Evidence, evidence of "accepting . . . valuable consideration in compromising . . . the claim" is not admissible "to prove or disprove the validity or amount of a disputed claim." This rule places the Releases well outside the realm of admissible evidence. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 08-MD-1000, 2011 WL 3300577, at *1 (E.D. Tenn. 2011) (excluding agreements reached during ongoing litigation under Fed. R. Evid. 408).[11]

The effect of the Releases should also be decided prior to the commencement of trial, so that the jury is not presented with revenue figures that can form no legitimate part of an award of damages. The Fourth Circuit addressed this issue in *Broussard* v. *Meineke Discount Muffler Shops, Inc.*, and faulted the district court for allowing released claims to be included in the jury verdict. 155 F.3d 331, 338–39 (4th Cir. 1998). "The error was not cured," in that Court's view, "by the district court's post-trial order effectuating the releases signed by many class members." *Id.* at 339. Likewise in *U.S. Airways, Inc.* v. *Sabre Holdings Corp.*, the defendant moved to enforce a settlement agreement between the parties that barred claims arising during a portion of the damages period. 105 F. Supp. 3d 265, 279 (S.D.N.Y. 2015). The plaintiff resisted, urging that the

---

[10] Even if Plaintiffs were to challenge the scope of the Releases as ambiguous, that challenge is a question of law resolved by the Court, not a fact question for the jury. *Golden Pac. Bancorp* v. *F.D.I.C.*, 273 F.3d 509, 514–15 (2d Cir. 2001) ("Whether a contract is ambiguous is a question for the court.").

[11] Defendants intend to file an *in limine* motion seeking the exclusion of the Releases pursuant to Rules 402, 403, and 408.

matter not be resolved until after trial. *Id.* Judge Schofield refused to delay adjudication, enforced the agreement, and dismissed the released claims from the litigation prior to trial. *Id.* The result should be no different here.

Policy considerations also weigh in favor of enforcing the Releases prior to trial. The Second Circuit has consistently recognized "a strong policy in favor of enforcing settlement agreements and releases." *Levine* v. *Bd. of Educ. of City of N.Y.*, 152 F.3d 919, 1998 WL 386141, at *2 (2d Cir. 1998) (summary order). This principle has particular force in the context of antitrust suits "where tests of legality are often rather vague, where many business practices can be simultaneously efficient and beneficial to consumers but also challengeable as antitrust violations." *Xerox Corp.* v. *Media Sciences, Inc.*, 609 F. Supp. 2d 319, 326–27 (S.D.N.Y. 2009) (quoting Areeda and Hovenkamp, Antitrust Law § 320a (3d ed. 2007)). Allowing plaintiffs "to prosecute [an] action after giving what is, on its face, a general release would allow the defendants to be 'sandbagged,' a result [courts] are not willing to countenance." *Ruskay* v. *Waddell*, 552 F.2d 392, 396 (2d Cir. 1977). It would also discourage parties from entering into settlement and release agreements in the first place, a result at odds with sound policy preferences expressed repeatedly by courts. *See Gambale* v. *Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (noting that "courts are bound to encourage" settlement).

Finally, the Class Members themselves have a strong interest in seeing the Releases enforced. At a minimum, the pursuit of released claims could give rise to a breach of contract action and further, unwanted litigation. *See, e.g., Nat'l Rural Utils. Coop. Fin. Corp.* v. *Prosser*, 467 B.R. 59, 67-68 (D. Del. 2011) (suit pursuing released claims caused "clear and irreparable harm to those intended to benefit from the

[r]eleases"). The business reasons that caused the Class Members to enter into the Releases in the first instance, including the benefits they received, remain just as compelling now as they did at the time of execution. There is no reason to believe that the Class Members want to return those benefits and face litigation over the Releases. Plaintiffs should not be allowed to harm the interests of these absent Class Members by pressing claims barred by the Releases. *See, e.g.*, *Melong* v. *Micronesian Claims Comm'n*, 643 F.2d 10, 13–15 (D.C. Cir. 1980) (noting conflict between class representative who had not executed a release, and absent class members who had). The interests of the Class Members provide yet another reason to enforce the Releases by excluding evidence of released claims at trial.

## **CONCLUSION**

For the foregoing reasons, evidence of claims released by the Class Members, including any corresponding payments that would otherwise be included in Plaintiffs' damages calculation, should be excluded from trial.

Dated:  January 21, 2016

                    Respectfully submitted,

                    PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

                    By:  /s/ Kenneth A. Gallo
                          Kenneth A. Gallo (kgallo@paulweiss.com)
                          Jane B. O'Brien (jobrien@paulweiss.com)
                          2001 K Street, NW
                          Washington, D.C.  20006-1047
                          (202) 223-7300
                          Fax: (202) 223-7420

                          William B. Michael (wmichael@paulweiss.com)
                          Geoffrey R. Chepiga (gchepiga@paulweiss.com)
                          1285 Avenue of the Americas
                          New York, NY  10019-6064
                          (212) 373-3000
                          Fax: (212) 757-3990

                    *Counsel for Defendants*