## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE DIAL CORPORATION, *et al.*,

    Individually and on behalf of Similarly
Situated Companies,

                Plaintiffs,

        v.

NEWS CORPORATION, *et al.*,

                Defendants.

Civil Action No. 13-cv-06802-WHP

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OMNIBUS MOTION *IN LIMINE*

## MOTIONS *IN LIMINE*

1.    Any reference, argument, or testimony regarding, or introduction into
      evidence of Defendants' summary exhibits............................................................1

2.    Communications between counsel and class members, including testimony
      concerning how the class representatives came to become involved in this
      lawsuit and absentee class members' decision whether or not to act as a
      class representatives.............................................................................................5

3.    Plaintiffs' dismissed claims in this case..............................................................6

4.    The size, financial condition or profitability of class members............................7

5.    Class members' supposed ability to pass on defendants' overcharges and
      the effect of News's overcharges on class members' businesses. ..........................8

6.    The Class's ability to recover treble damages or attorneys' fees and costs............9

7.    Live testimony by Defendants' fact witnesses not made available to testify
      live during Plaintiffs' case-in-chief. .................................................................10

8.    Irrelevant portions of depositions from Plaintiffs' Case in Chief.........................11

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985)..................................................................................................9

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
  199 F.R.D. 487 (E.D.N.Y. 2001) ...................................................................17, 18

*Brooks v. Cook*,
  938 F.2d 1048 (9th Cir. 1991) ...............................................................................15

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014)....................................................................17

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) ...................................................................................9

*Gorbea v. Verizon N.Y., Inc.*,
  No. 11-CV-3758, 2014 WL 2916964 (E.D.N.Y. June 25, 2014) ...........................12

*Hanover Shoe v. United Shoe Merch. Corp.*,
  392 U.S. 481 (1968)................................................................................................14

*Hart v. RCI Hosp. Holdings, Inc.*,
  90 F. Supp. 3d 250, 274 (S.D.N.Y. 2015) .............................................................16

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972)................................................................................................13

*HBE Leasing Corp. v. Frank*,
  22 F.3d 41 (2d Cir. 1994)................................................................................14, 15

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)........................................................................................13, 14

*In re Gulf Oil/Cities Svc. Tender Offer Litig.*,
  776 F. Supp. 838 (S.D.N.Y. 1991) .........................................................................16

*In re Homestore.com, Inc.*,
  No. CV 01-11115....................................................................................................12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  No. 07-MD-01819 CW, 2010 WL 10086747 (N.D. Cal. Dec. 16, 2010) ...............12

i

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. C 10-4572 SI, 2013 WL 10936486 (N.D. Cal. July 11, 2013) ........................................12

*In re WorldCom Securities Litigation*,
  02-CV-3288-DLC (Feb. 18, 2005) ..................................................................................................18

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*,
  340 U.S. 211 (1951), *overruled in part on other grounds in Copperweld Corp.*
  *v. Independence Tube Corp.*, 467 U.S. 752 (1984).................................................................9

*Maran Coal Corp. v. Societe Generale de Serveilance S.A.*,
  No. 92-CIV-8728, 1996 WL 11230 (S.D.N.Y. Jan. 10, 1996) ...............................................16

*Memorex Corp. v. Int'l Bus. Machines Corp.*,
  555 F.2d 1379 (9th Cir. 1977) .......................................................................................................9

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
  392 U.S. 134 (1968) *overruled in part on other grounds in Copperweld Corp.*
  *v. Independence Tube Corp.*, 467 U.S. 752 (1984).................................................................9

*Pollock & Riley, Inc. v. Pearl Brewing Co.*,
  498 F.2d 1240 (5th Cir. 1974) .....................................................................................................15

*S. Pacific Co. v. Darnell-Taenzer Lumber Co.*,
  245 U.S. 531 (1918)........................................................................................................................13

*Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
  No. 1:12-CV-00560-BLW, 2013 WL 5488904 (D. Idaho Sept. 30, 2013) .............................9

*United States v. Dentsply Int'l, Inc.*,
  399 F.3d 181 (3d Cir. 2005)...........................................................................................................9

*United States v. Jasper*,
  No. 00 CR. 825(PKL), 2003 WL 221740 (S.D.N.Y. Jan. 31, 2003) ........................................7

*United States v. Mahaffy*,
  No. 05-CR-613 (S-3)(ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007)............................17

*Zubulake v. UBS Warburg LLC*,
  382 F. Supp. 2d 536 (S.D.N.Y. 2005)........................................................................................12

## STATUTES

15 U.S.C. § 15(a) ...............................................................................................................................14

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 32(a)(6) ......................................................................................17

Federal Rule of Civil Procedure 34(b)(6) ................................................................................18

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ....................................................................11

Federal Rule of Evidence 106 .................................................................................................17, 18

Federal Rule of Evidence 401 .................................................................................................13

Federal Rule of Evidence 402 .................................................................................5, 6, 7, 10, 11, 12, 13

Federal Rule of Evidence 403 .................................................................................5, 6, 7, 10, 11, 12, 13

Federal Rule of Evidence 611(a) .............................................................................................15, 16

Plaintiffs The Dial Corporation, Henkel Consumer Goods Inc., H.J. Heinz Company LP, Kraft Heinz Foods Company, Foster Poultry Farms, Smithfield Foods, Inc., HP Hood LLC, and BEF Foods, Inc., acting in their individual capacity and on behalf of similarly situated companies (collectively, "Plaintiffs" or "the Class"), move for an order *in limine* prior to *voir dire* examination of the jury, instructing counsel, representatives, and all witnesses tendered (whether live or by deposition) not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner either directly or indirectly, any of the matters set forth below without obtaining a favorable ruling from this Court outside the presence and hearing of the prospective jurors or the jury ultimately selected in this case.  Plaintiffs also ask this Court to instruct the parties to warn and caution each witness to follow the same instructions.

Accordingly, Plaintiffs request that the Court exclude all argument, evidence, testimony or reference to:

**1.    Any reference, argument, or testimony regarding, or introduction into evidence of, Defendants' summary exhibits.**

At 4:07 PM today (the motions *in limine* deadline), News served on Plaintiffs for the first time drafts of four so-called "summary exhibits."[1]  (*See* E-mail from J. Anderson to Plaintiffs' counsel, attached as Exhibit 1 to the Declaration of James H. Smith.)[2]  These purported "summary" exhibits are not even the real exhibits that News proposes to use at trial.  News's cover email expressly refers to the exhibits as "drafts."  (*Id.*)  Until today, News had only produced empty shells of multiple columns that it claimed it would populate some time in the

---

[1] The exhibits are identified in the Final Joint Pretrial Order as exhibits DX0045,DX0046, DX2314 and DX2315.  Dkt. No. 422-5 DX0045, DX0046, DX2314, DX2315.  News has since changed the numbering of its exhibits.

[2] All exhibits cited herein refer to exhibits to the Declaration of James H. Smith, dated February 4, 2016.

1

future.  (*See* Ex. 2, Letter from W. Michael to J. Southwick, dated December 7, 2015.)   If News wanted to use these so-called "summaries," they needed to be provided long ago, in a manner that would allow Plaintiffs a fair opportunity to review, verify and address their contents. News's prejudicial delay alone warrants exclusion.  *See United States v. Jasper*, No. 00 CR. 825(PKL), 2003 WL 221740, at *2 (S.D.N.Y. Jan. 31, 2003) ("the Court will not allow any [summary] charts if defendant's counsel has not had a reasonable opportunity to review them in advance and to consider any objections or corrections thereto.") (citing *United States v. Oshatz*, 912 F.2d 534, 543 (2d Cir. 1990)).

But delay is not the only reason that News's purported "summaries" should be excluded. News's purported summaries are no summaries at all.  They do not summarize the contents of other large records.  They are untimely expert analysis—an apparent distillation of expert back up information and application of that information to nearly 150,000 other documents produced in the case.  The sources relied upon for the "summaries" makes this clear.  News created its summaries from the "Back-Up to the Expert Reports of Dr. MacKie-Mason"—Plaintiffs' antitrust and damages expert.  From the best that Plaintiffs can tell (with only a brief period to review the exhibits), the "summaries" appear to pull information from the back-up files supporting the analysis and disclosed calculations found in Dr. MacKie-Mason's multiple prior reports in this case, and tie that back-up to other News documents—approximately 147,000 in all—that are found in four of News's compilation schedules.[3]  This is classic expert analysis.  If

---

[3]  The parties have agreed to serve revised, shortened exhibit lists.  Plaintiffs maintain all objections to News's compilations, but will address those in the context of News's revised exhibit list.

News was going to put together an analysis like this, one of its experts was required to disclose it approximately a year ago—on March 13, 2015—when its rebuttal reports were due.

Analyzing News's transaction data and incorporating it into an analysis in this case, to be sure, is a complex task that is the province of expert work. Plaintiffs and their experts expended significant time and effort in this case to digest and understand News's transaction data in all the various manners that it was produced. Plaintiffs had extensive correspondence with News's counsel in order to understand how the various databases relate to one another and the meaning of the various types of transactional data produced by News. News should not be permitted to, on the brink of trial, dig into Prof. MacKie-Mason's "back-up" and create some new rebuttal analysis. It is absurd and disingenuous for News to try to pass off this expert analysis as a Rule 1006 "summary."

The unfair and prejudicial burden that would be imposed upon Plaintiffs if News were permitted to introduce these out of time expert analyses is demonstrated by how long it has taken News to put them together. *Cf. United States v. Earls*, 2004 WL 350725, at *9 (S.D.N.Y. Feb. 25, 2004) ("[A] 'reasonable time' for inspection [under Rule 1006] is … *determined by the precise volume of the foundational documents and the complexity of the summary*." (emphasis added)). ***Two months ago,*** News agreed to provide "as soon as practicable in advance of the JPTO" its summary exhibits. (Ex. 2.) Plaintiffs, for the first time, were served with a *draft* of these exhibits today. Taking News at its word, it was not "practicable" to even assemble a "draft" of these "summaries" in two months. It is fundamentally unfair and unduly prejudicial to expect Plaintiffs and their experts to study and understand what News did in less than half that time—on the eve of trial. News's so-called "summary" exhibits boil down to untimely, ambush expert analysis that does not comply with Rule 1006. They all should be precluded.

2.    **Class members' alleged business and contracting practices, including, but not limited to, practices relating to the purchase or sale of two products together, use of contractual exclusivity provisions, confidentiality clauses or the timing of contractual bidding.**

The manner in which consumer packaged goods companies ("CPGs") may sell their products and the contracts they enter into as part of their day-to-day business operations are irrelevant to any matter at issue in this case. This case is about *News's* monopolization and exclusion of competition in the in-store promotions market. How CPG class representatives (and absent class members) operate their own businesses, selling products like soap and beef and ketchup, is irrelevant as a matter of law.

There is no "goose-gander" defense to the antitrust laws. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 441 (4th Cir. 2011) ("Conduct that might otherwise be lawful may be impermissibly exclusionary under antitrust law when practiced by a monopolist. Indeed, 'a monopolist is not free to take certain actions that a company in a competitive…market may take, because there is no market constraint on a monopolist's behavior.'") (quoting *LePage's, Inc. v. 3M*, 324 F.3d 141, 151-52 (3d Cir. 2003)); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601-04 (1985); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist.") *cf. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 214 (1951) ("The alleged . . . conduct of petitioner, however, could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured."), *overruled in part on other grounds in Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968); *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977) ("'Unclean hands' has not been recognized as a defense to an antitrust action for

many years."); *Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2013 WL 5488904, at *1 (D. Idaho Sept. 30, 2013) ("The main purpose of this evidence . . . is to excuse St. Luke's conduct on the ground that St. Al's was trying to do the same thing. That is a classic 'unclean hands' defense, and the Supreme Court has rejected that defense in antitrust cases.").

Accordingly, any evidence that News seeks to present to the jury concerning CPG's business and contracting practices is irrelevant and will only serve to confuse and mislead the jury into believing that business and contracting practices of parties in an unrelated market can excuse News's own anticompetitive conduct.  This evidence should be excluded.

**3.      Communications between counsel and class members, including testimony concerning how the class representatives came to become involved in this lawsuit and absentee class members' decision whether or not to act as a class representatives.**

News has indicated that it seeks to introduce at trial argument, exhibits or testimony concerning, among other things, whether the class representatives were initially approached by outside counsel in this lawsuit.

This type of evidence or argument, and any similar evidence or argument concerning communications between counsel and class members,[4] should be excluded from evidence at trial. Its sole purpose is to inflame the jury into discrediting Plaintiffs' case, and disparage its merits for misleading reasons that have no bearing whatsoever on the merits of this case.  Fed. R. Evid 402, Fed. R. Evid. 403.  That Plaintiffs' counsel may or may not have initiated the first contact with class representatives has no bearing on whether these large and sophisticated companies ultimately decided to pursue this action or whether the substance of the action has merit.

---

[4] Obviously, communications between counsel and the class representatives are privileged.  Plaintiffs do not understand News to be seeking to delve into privileged communications at trial.  It obviously would be improper if News attempted to do so.

News has also indicated that it may introduce at trial argument, exhibits or testimony concerning counsel's communications with absentee class members, including evidence regarding the fact that absentee class members were approached and did not ultimately decide to participate in the action as class representatives.  This type of evidence should be excluded.  The decision whether or not to act as a class representative could be influenced by any number of factors, and is not probative of any claim or defense in this case.  The introduction of such evidence seeks only to imply a false and prejudicial connection between the decision not act as a class representative and the merits of Plaintiffs' claims.  Fed. R. Evid. 402, Fed. R. Evid. 403.

**4.     Plaintiffs' dismissed claims in this case.**

News should be precluded from making reference to, or introducing any evidence or testimony regarding, Plaintiffs' decision to dismiss any federal or state claims, including but not limited to the parties' stipulation and agreement that the class representative Plaintiffs would not pursue their claims that News committed antitrust violations in the Free Standing Inserts ("FSI") market.   On September 8, 2015, the named parties to this litigation stipulated and agreed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) that Counts II, IV, VI, and VIII of the Fourth Amended Complaint, dated April 8, 2014, were dismissed with prejudice. The named parties also stipulated and agreed that Counts III and VII of the Fourth Amended Complaint, dated April 8, 2014, were dismissed in part in that the portions of Counts III and VII alleging antitrust violations in an alleged market for the sale of FSI were dismissed with prejudice.

Plaintiffs' voluntary determination to dismiss their antitrust claims with respect to the FSI market itself does not prove anything concerning their claims in the in-store promotions market. This fact is irrelevant to the adjudication of Plaintiffs' in-store claims.  Moreover, the reasoning behind the dismissal of a claim is privileged, wrapped up in strategic decision-making.

Introducing evidence or argument concerning the dismissal of claims invites the jury to improperly speculate about Plaintiffs' motivations and credibility and draw misplaced conclusions about some purported evidentiary linkage between dismissal and the matter that is actually before the Court.  That is why Courts routinely issue *in limine* orders precluding this sort of argument or evidence.  *See Gorbea v. Verizon N.Y., Inc.,* No. 11-CV-3758, 2014 WL 2916964 (E.D.N.Y. June 25, 2014) ("The previously dismissed claims…are not of consequence in determining the action and therefore will be excluded."); *cf. Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536, 545 (S.D.N.Y. 2005) ("Defendants contend that this Court's previous decisions in this case, including the imposition of sanctions on UBS, are irrelevant to plaintiff's discrimination claims and would unfairly prejudice UBS. Defendants are right. Placing the five previous decisions in this case before the jury would serve no legitimate purpose.")  The Court should preclude Defendants from arguing or presenting this irrelevant, misleading and confusing evidence to the jury.

**5.     The size, financial condition or profitability of class members.**

Many class members are large, profitable corporations. As a matter of law, the size, financial condition and profitability of class members are irrelevant where, as here, they seek to recover only for the overcharges stemming from Defendants' illegal conduct. Fed. R. Evid. 402; Fed. R. Evid. 403. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. C 10-4572 SI, 2013 WL 10936486, at *2 (N.D. Cal. July 11, 2013) (granting Plaintiffs' motion *in limine* "[t]o exclude references to the current financial condition of any of the named plaintiff[ corporations]" absent "offer of proof demonstrating relevance of evidence."); *In re Homestore.com, Inc.,* No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (granting plaintiff's motion *in limine* to exclude evidence of plaintiff's financial condition, as "[e]vidence

of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 10086747, at *2 (N.D. Cal. Dec. 16, 2010) (granting plaintiffs' motion *in limine* to exclude evidence of the class representative's financial condition).

The size, financial condition and/or profitability of the class members is entirely irrelevant to any issue in this case. Unlike the finances of Defendants, which are directly at issue as to both liability and damages in this case, evidence of Plaintiffs' finances is relevant to no issue, would serve no legitimate purpose, and would serve only to be inflammatory and prejudicial. There should accordingly be no mention of the size, financial condition, or profitability of class members.

**6.      Class members' supposed ability to pass on defendants' overcharges and the effect of News's overcharges on class members' businesses.**

Plaintiffs move to exclude evidence and argument regarding class members' ability, if any, to pass on to consumers or otherwise recoup News's unlawful overcharges.  Such evidence and argument would be irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402 and 403.

Federal antitrust plaintiffs, like the Class here, are injured when they pay "money wrongfully induced," and their "damages are established by the amount of the overcharge." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972).  "Courts will not go beyond the fact of this [overcharge] injury to determine whether the victim of the overcharge has partially recouped its loss in some other way …." *Id.*; *see also S. Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918) ("The plaintiffs suffered losses [in] the amount of the [overcharge] when they paid [it].  Their claim accrued at once in the theory of the law and it does

not inquire into later events." (citation omitted)).  Thus, a "direct purchaser suing for treble damages … is injured … by the full amount of the overcharge" and an antitrust defendant is "not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge[.]"  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724–25 (1977).

Accordingly, evidence or argument that class members may have passed on to their customers part of News's unlawful overcharges is irrelevant and would be unfairly prejudicial.  *See, e.g.*, *id.* at 745-46 ("[D]irect purchasers are not only spared the burden of litigating the intricacies of pass-on but also are permitted to recover the full amount of the overcharge."); *Hanover Shoe v. United Shoe Merch. Corp.*, 392 U.S. 481, 494 (1968) (antitrust defendants are prohibited from raising as a defense that plaintiffs passed-on or otherwise recouped all or some of defendants' overcharges by passing on those overcharges to their customers).

In addition, the Court should preclude News from indirectly raising the pass-on defense by prohibiting News from referring to or attempting to offer evidence regarding the effect of News's overcharges on class members' business.  Such evidence would include evidence regarding class members' profitability, profit margins, the retail prices they set for their consumer packaged goods, or how class members determine their prices to members.  *See also* MIL No. 5.  Indirect pass-on evidence, like its direct-evidence counterpart, is irrelevant and would otherwise confuse the issues, mislead the jury, and unfairly prejudice Plaintiffs.

**7.      The Class's ability to recover treble damages or attorneys' fees and costs.**

Plaintiffs move to exclude evidence and argument regarding the Class's ability to recover treble damages and attorneys' fees and costs.  *See* 15 U.S.C. § 15(a).  Such evidence is irrelevant, would interfere with the public policy underlying the antitrust laws, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice the Class.  Exclusion of

such evidence is also the well-established law in this circuit.  In *HBE Leasing Corp. v. Frank*, 22

F.3d 41, 45 (2d Cir. 1994), the Second Circuit held:

> We … now remove any doubts within our own Circuit that *district courts should
> not as a general matter permit reference before the jury to the fact that any
> eventual award will be trebled under the statute or that attorneys fees will be
> awarded to a prevailing party*.  Because our decision today might arguably be
> construed as a departure from past caselaw, this opinion has been circulated to the
> members of the court prior to filing.
>
> …
>
> Reference to treble damages and attorneys fees is irrelevant to the jury questions
> of liability and damages and may tend to confuse or prejudice a jury into reducing
> its eventual award, thus frustrating Congress's goal of deterring improper conduct
> by assessing treble damages and attorneys fees.

*Id.* at 45 (emphasis added).[5]

## 8. Live testimony by Defendants' fact witnesses not made available to testify live during Plaintiffs' case-in-chief.

This court should use its inherent authority over the conduct of the trial pursuant to

Federal Rule of Evidence 611(a) to preclude Defendants from presenting live testimony of

witnesses during Defendants' case-in-chief unless those witnesses are made available for live

examination during Plaintiffs' case-in-chief. Courts have repeatedly held that defendants may be

precluded from calling defense witnesses during their own presentations if the defendants failed

to produce those witnesses during the plaintiffs' case-in-chief:

---

[5] Likewise, other circuits also do not permit juries to be advised of the mandatory trebling
provision of the antitrust laws.  *See, e.g.*, *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991)
("An instruction informing the jury of the trebling provision is an invitation to the jury to
negate Congress' determination that actual damages should be trebled in order to deter antitrust
violations and encourage private enforcement of the antitrust laws."); *Pollock & Riley, Inc. v.
Pearl Brewing Co.*, 498 F.2d 1240, 1242 (5th Cir. 1974) ("Having considered the policies and
reviewed the authorities carefully, we hold that the jury should not be advised of the mandatory
tripling provision of 15 U.S.C.A. § 15.").

> To prevent unfairness and avoid wasting time, numerous courts have held that a party may not limit a witness that the party intends to call at trial from testifying only during its own case in chief. Instead, the party must either permit its opponent to directly examine the witness, so that both parties may elicit the witness's live testimony during their cases in chief, or rely itself on the witness's deposition testimony, so that neither party may elicit the witness's live testimony during its case in chief.

*Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 274 (S.D.N.Y. 2015) (citing *Buchwald v. Renco Grp., Inc.*, No. 13-CV-7948-AJN, 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014); *Maran Coal Corp. v. Societe Generale de Serveilance S.A.*, No. 92-CIV-8728, 1996 WL 11230, at *2-*3 (S.D.N.Y. Jan. 10, 1996) (invoking authority under Fed. R. Evid. 611(a) to require defendant to "produce [its witnesses] for plaintiff's case or be precluded from calling them as live witnesses in their own case"); *In re Gulf Oil/Cities Svc. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) (invoking Fed. R. Evid. 611(a), requiring defendant to produce former officer and director live for plaintiffs' case, and stating "[i]f [the witness] elects to absent himself during plaintiffs' case, he will not testify at all, and plaintiffs will be free to comment upon his absence").

Though each witness will take the stand only once, in the interest of fairness the Defendants must make any witnesses they seek to call available for the Plaintiffs' case-in-chief. *See Hart*, 90 F. Supp. 3d at 274 (adopting trial procedure allowing each witnesses to be called only once, but protecting the right of "both the [plaintiffs] and Defendants … to elicit [the witnesses'] testimony for their cases in chief.").

## 9.   Irrelevant portions of depositions from Plaintiffs' Case in Chief.

While the parties have continued to meet and confer concerning the use of deposition designations at trial, Plaintiffs respectfully submit one issue they believe is necessary for adjudication.

Defendants have suggested that, given the Court's direction that each live witness is to be called only once, they are permitted to play massively voluminous designations when a witness is called by video deposition as part of Plaintiffs' case in chief. *See, e.g.*, Deposition of David Brotherton (Plaintiffs have designated 107 total lines, yet Defendants purport to have designated 4,187 total lines, or over three and one-half hours of testimony); Deposition of Henry Hendrix (Plaintiffs have designated 257 lines, yet Defendants purport to have designated 5,228 lines, or over four and one-half hours of testimony).

Rather than Plaintiffs playing only those small portions outside their designations necessary for completeness or context, as Rule 106 and 32(a)(6) contemplate, Defendants instead seek *carte blanche* to derail Plaintiffs' case-in-chief and bury critical testimony in hours of irrelevant video. Such an arrangement would be at odds with equity and the law. *Accord Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487, 490 (E.D.N.Y. 2001) ("a party's presentation of a case ought not to be unduly interrupted or distracted").

The Rule of Completeness neither requires nor countenances a party's introduction of an entire deposition on account of the use of a small portion thereof. "Only evidence that is necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion is admissible under the rule." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 698 (S.D.N.Y. 2014); *accord United States v. Mahaffy*, No. 05-CR-613 (S-3)(ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) ("Though the goal of Rule 106 is to offer the jury a 'complete' understanding of a defendant's statement, Rule 106 does not permit the unfettered admission of all omitted portions. There are several limitations that prevent the rule from becoming all-encompassing under the rubric of 'completeness.' For instance, Rule 106 does not require "the

12

admission of portions of a statement that are neither explanatory nor relevant to the admitted passages.") (quoting *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999)).

Courts routinely deny this sort of gamesmanship by defendants. For instance, in *Blue Cross & Blue Shield of New Jersey, Inc.*, 199 F.R.D. at 491, the court granted the plaintiff's motion in limine on largely identical grounds, holding "[t]he potential prejudice defendants face by presenting video clips later in the trial is outweighed by the importance to plaintiff of manageably presenting this evidence to the jury." The court reasoned in part that the sophistication and length of the trial warranted proceeding without playing counter-designations, as defendants could sufficiently overcome the plaintiff's tactical advantage in presenting its clips first by use of their clips in their case in chief. *Id.*

Judge Cote of this Court came to the same conclusion in the *WorldCom* case:

I think this is, again I am thinking from the jury's point of view, a much more sensible way for them to learn about the case. They learn plaintiffs' view of the evidence, then they learn the defendants' view of the evidence, … If the plaintiff… put on deposition testimony in its case, obviously the defendant would have a right to counter-designate under the rule of completeness any portion of the deposition that in fairness needed to be presented to the jury at the same time. The issue … was whether the defendant could designate additional material beyond that necessitated by the rule of completeness. The answer to that is no.

*In re WorldCom Securities Litigation*, 02-CV-3288-DLC (Feb. 18, 2005), transcript of pre-trial conference 31:13-32:22 (emphasis added). When defendants in that case sought reconsideration, Jude Cote denied it, noting she did "not want to put defendants in the position of hijacking plaintiff's case and controlling how it puts on its proof." *Id.* at 35:25-36:16.

Plaintiffs thus seek an order *in limine* requiring only that *appropriate* counter-designations, as contemplated by Rules 106 and 34(b)(6), be played during their case-in-chief, and precluding Defendants from designating material beyond that necessitated by the rule of completeness for presentation during Plaintiffs' case-in-chief.

**CONCLUSION**

If presented to the jury, the topics delineated in this Motion would unduly prejudice the Class.  For this reason, and those mentioned above, Plaintiffs request that this Court order that all counsel, and through counsel, any and all witnesses (whether testifying live or by deposition only), be instructed to refrain from any mention or interrogation, directly or indirectly, in any manner whatsoever, including the offering of documentary evidence or through deposition, of any of the matters set forth in this Omnibus Motion *In Limine*.

February 4, 2016

Respectfully submitted,

KRAMER LEVIN NAFTALIS
& FRANKEL LLP

*/s/ Daniel B. Goldman*
Daniel B. Goldman
1177 Avenue of the Americas
New York, NY 10036
Phone:  (212) 715-9162
Email: dgoldman@kramerlevin.com

BERRY LAW PLLC
R. Stephen Berry *(pro hac vice)*
1717 Pennsylvania Ave., NW, Suite 450
Washington, DC  20006
Phone:  (202)296-3038
Email: sberry@berrylawpllc.com

MCKOOL SMITH, PC

*/s/ Lewis T. LeClair*
Lewis T. LeClair *(pro hac vice)*
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4984
Email: lleclair@mckooksmith.com

MCKOOL SMITH, PC
John C. Briody
James H. Smith
One Bryant Park, 47th Floor
New York, NY  10036
Phone: (212) 402-9438
Email: jbriody@mckoolsmith.com
        smith@mckoolsmith.com

*Attorneys for Plaintiffs*

SUSMAN GODFREY LLP

James T. Southwick
Richard W. Hess *(pro hac vice)*
Ryan V. Caughey *(pro hac vice)*
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Phone:  (713) 651-9366
Email: jsouthwick@susmangodfrey.com
        rhess@susmangodfrey.com
        rcaughey@susmangodfrey.com

KELLOGG, HUBER, HANSEN, TODD
EVANS & FIGEL, PLLC
Steven F. Benz *(pro hac vice)*
1615 M Street, N.W., Suite 400
Washington, DC 20036
Phone: (202) 326-7900
Email: sbenz@khhte.com

*Co-lead Class Counsel*

**CERTIFICATE OF SERVICE**

I, James H. Smith, hereby certify that a copy of the foregoing has been served via email upon counsel for Defendants on February 4, 2016.

                                    _/s/ James H. Smith_____
                                    James H. Smith