UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |  |
|---|---|
| THE DIAL CORPORATION, *et al.*, <br><br> Individually and on behalf of Similarly Situated Companies, <br><br>              Plaintiffs, <br><br>              v. <br><br> NEWS CORPORATION, *et al.*, <br><br>              Defendants. | Civil Action No. 13-cv-06802-WHP |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OMNIBUS
MOTION *IN LIMINE* (DKT. NO. 465)**

# TABLE OF CONTENTS

1. Plaintiffs' MIL 1: News's Untimely Damages Analysis Should Be Excluded ................... 1

2. Plaintiffs' MIL 2: CPG Business Practices Are Irrelevant To Any Supposed Justification For News's Anticompetitive Conduct ....................................................... 2

3. Plaintiffs' MIL 3: Contacts Between Class Members And Counsel Are Not Probative Of Any Issue In This Case ........................................................................... 6

4. Plaintiffs' MIL 4: The Dismissal Of Plaintiffs' FSI Claims Has No Bearing On This Case ............................................................................................................................ 7

5. Plaintiffs' MIL 5: Defendants Can Make The Arguments They Seek Without Making Reference To Plaintiffs' Profits and Margins ............................................... 7

6. Plaintiffs' MIL 6: Plaintiffs' Motion To Preclude Evidence of Pass Through is Moot .............................................................................................................................. 8

7. Plaintiffs MIL 7: News Appears To Agree That Evidence And Testimony Concerning Plaintiffs' Entitlement To Treble Damages Should Be Precluded So An Order *In Limine* Is Appropriate ........................................................................... 8

8. Plaintiffs' MIL 8: News Appears To Agree That It Would Be Improper To Call A Live Witness That It Refused To Make Available ................................................... 9

9. Plaintiffs' MIL 9: The Court Should Enter An Order Requiring Defendants To Narrow Designations To The Scope of Affirmative Designations Or Agree To Separately Present Proffered Deposition Testimony. ..................................................... 9

# TABLE OF AUTHORITIES

|  | Page(s) |
|---|---|
| **CASES** | |
| *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487 (E.D.N.Y. 2001) | 10 |
| *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) | 4 |
| *Comcast Cable Commc'ns, LLC v. FCC*, 717 F.3d 982 (D.C. Cir. 2013) (Kavanaugh, C.J., concurring) | 4 |
| *G.O. Coin Service, Inc. v. Ace Vending Co.*, No. C-2-77-201, 1978 WL 1306, 1978 U.S. Dist. LEXIS 20207 (S.D. Ohio Jan. 12, 1978). *G.O.* | 5 |
| *Galen v. Ave. of Stars Assocs.*, LLC, No. CV 09-4738, 2011 WL 837785, 2011 U.S. Dist. LEXIS 28305 (C.D. Cal. Mar. 1, 2011) | 6 |
| *Geneva Pharmaceuticals Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485 (2d Cir. 2004) | 4, 5 |
| *HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2d Cir. 1994) | 9 |
| *IHS Dialysis v. Davita, Inc.*, No. 12-cv-02468, 2013 U.S. Dist. LEXIS 47532 (S.D.N.Y. March 31, 2013) | 3 |
| *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 WL 505234, 2014 U.S. Dist. LEXIS 14971 (S.D. W. Va. Feb. 5, 2014) | 6 |
| *In re Gulf Oil/Cities Svc. Tender Offer Litig.*, 776 F. Supp. 838 (S.D.N.Y. 1991) | 9 |
| *In re Homestore.com, Inc.*, No. CV 01-11115 | 7 |
| *In re WorldCom Securities Litigation*, 02-CV-3288-DLC (S.D.N.Y. Feb. 18, 2005) | 10 |
| *JES Props. Inc. v. USA Equestrian, Inc.*, No. 8:02-cv-1585-T-24, 2005 U.S. Dist. LEXIS 43122 (M.D. Fla. May 9, 2005) | 3 |

*Law v. NCAA*,
    902 F. Supp. 1394 (D. Kan. 1995)..................................................................................3

*Leegin Creative Leather Prods. v. PKSK, Inc.*,
    551 U.S. 887 (2007)............................................................................................................4

*Maran Coal Corp. v. Societe Generale de Surveillance S.A.*,
    No. 92-CIV-8728, 1996 WL 11230, 1996 U.S. Dist. LEXIS 172 (S.D.N.Y.
    Jan. 10, 1996)......................................................................................................................9

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
    614 F.3d 57 (3d Cir. 2010)..................................................................................................4

*Sullivan v. National Football League*,
    34 F.3d 1091 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 1252 (1995) .................................3

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)............................................................................................................4

*United States v. Jasper*,
    2003 U.S. Dist. LEXIS 1395 (S.D.N.Y. Jan. 30, 2003)....................................................1

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)............................................................................................4

Plaintiffs (or "The Class") submit this Reply in support of their Omnibus Motion *in Limine* (Dkt. No. 465) (the "Motion") and in response to Defendants'[1] opposition (Dkt. No. 494, "Opp.") to their Omnibus Motion *In Limine*.

## 1. Plaintiffs' MIL 1: News's Untimely Damages Analysis Should Be Excluded

It is not credible for News to contend that the supposed "summaries" it spent (at a bare minimum) two months creating amount to the handiwork of a fifth-grader. The length of time it took News to finally assemble a draft of the exhibits shows that there is considerable analysis behind them. Even assuming the exhibits are some form of Rule 1006 summary—they are not—dumping them on Plaintiffs three weeks before trial does not allow Plaintiffs a "reasonable opportunity to review them" and they should be precluded. *United States v. Jasper*, 2003 U.S. Dist. LEXIS 1395 at *6 (S.D.N.Y. Jan. 30, 2003).

Incredibly, it appears that News does not even know what its "summaries" are based upon. News repeatedly asserts the "summaries" are a simple combination of News contracts and News transaction revenue data, with a readily transparent roadmap connecting the two. But that is not what its summaries reflect. News's summaries were generated from Dr. MacKie-Mason expert report "back up"—not some set of News transaction data on the parties' exhibit lists.[2] The Court may recall that, in referencing its transaction data, News previously asserted that "understanding and working reliably with this raw data will be practically impossible without access to the personnel who maintain and use it in the ordinary course of NAM's business." (Dkt. No. 112 at 3.) Dr. MacKie-Mason and his staff put in significant time and effort in order to understand News's transaction data. This resulted, in part, in his expert "back up." Creating an intersection between that "back up" (the product of expert work itself) and News's selections from 150,000 different "agreements" that News previously referenced is an *analysis*, not a

---

[1] Capitalized terms not defined herein have the same meaning ascribed to them in the Motion.
[2] News falsely incorrectly asserts that "[a] lay witness, the chief financial officer will testify that he consulted a financial database used in the ordinary course of business." News does not rely upon Dr. MacKie-Mason's expert analysis back-up in the ordinary course of business.

1

document that simply "proves the content" of other voluminous writings under 1006. This analysis should have been provided at the expert report deadline—whether through Dr. Carlton or a News witness making appropriate disclosures pursuant to Rule 26—so Plaintiffs had a full and fair opportunity to study and test it.

One other point raised in News's Opposition warrants comment. The notion that Plaintiffs cannot complain about News's analysis because, back in early December, News identified the underlying exhibits and provided a shell of the "summary" is absurd. To clarify, the underlying exhibits that News referred Plaintiffs to were: (1) approximately 150,000 "agreements" contained in what News dressed up as four compilation exhibits; and (2) the wilderness of News transaction data that News aptly described above. This disclosure, at bottom, was meaningless. How News actually intended to use the two sources together remained a mystery until News provided the "summaries" hours before the MIL filing deadline. As set forth above, News did not even use News's actual transaction data, but relied upon Dr. MacKie-Mason's "back up."

News's summaries are untimely disclosed expert analysis; nothing in News's Opposition changes that. The summaries should be precluded.

2. **Plaintiffs' MIL 2: CPG Business Practices Are Irrelevant To Any Supposed Justification For News's Anticompetitive Conduct**

News's Opposition does not advance any legitimate basis why the jury should consider CPG business practices. News claims that it is not asserting some "goose gander" defense but, in truth, that is the only proffered basis for this evidence. News advances the argument that, because someone else engaged in conduct—no matter what the industry, and no matter what the circumstances—News may rely on that conduct as a procompetitive justification to rebut Plaintiffs' showing of anticompetitive conduct. That argument is wrong as a matter of law. Any evidence that supports it is inadmissible.

News's Opposition makes clear that the only proffered basis for admissibility relevancy

of CPG business practices is to support News's rule of reason defense. But CPG business practices, including practices in completely different markets cannot, as a matter of law, provide pro-competitive justification for what News did. *See IHS Dialysis v. Davita, Inc.*, No. 12-cv-02468, 2013 U.S. Dist. LEXIS 47532, at *24 (S.D.N.Y. March 31, 2013) (whether an alleged monopolist's conduct is anticompetitive "can only be answered by considering the alleged conduct as a whole in the context of the relevant market and in light of the parties' respective roles therein"); *JES Props. Inc. v. USA Equestrian, Inc.*, No. 8:02-cv-1585-T-24, 2005 U.S. Dist. LEXIS 43122, at *49-*50 (M.D. Fla. May 9, 2005) ("Under the rule of reason analysis, this Court must evaluate the challenged rule in light of the factual context of the particular industry, the history of the restraint, and the reason for its imposition"); *cf. Sullivan v. National Football League*, 34 F.3d 1091, 1112 (1st Cir. 1994) (it seems "improper to validate a practice that is decidedly in restraint of trade simply because the practice produces some unrelated benefits to competition in another market"), *cert. denied*, 115 S. Ct. 1252 (1995); *Law v. NCAA*, 902 F. Supp. 1394, 1406 (D. Kan. 1995) ("Procompetitive justifications for price-fixing must apply to the same market in which the restraint is found, not to some other market."). The only probative evidence on this issue must come from News personnel. News cannot co-opt the pro-competitive justifications of someone else.

News suggests that Plaintiffs' controlling authorities can be disregarded because similar arguments were made when the Court granted, over Plaintiffs' objection, discovery into Plaintiffs' business practices. But that was a discovery ruling where the Court made "clear now that while I'm going to permit News America to obtain this discovery, plaintiffs are free to argue about the relevance and admissibility of any such evidence before trial, when the Court will have the benefit of a fuller record and context here." (Dkt. 116 (4/23/14 Hearing) at 27:5-9.) The

"fuller record and context" reveal that News cannot connect the dots from the discovery it obtained and legitimate argument at trial. News does not and cannot argue that it enters into staggered retail contracts to keep up with a shampoo and conditioner combo, or because there is an exclusive contract between a CPG and its supplier of office supplies.

News instead proffers misleading case law sound-bites that have nothing to do with its proposed use of CPG business practice evidence in this case. Virtually all of News's quotations and citations are lifted from a discrete (and irrelevant) context: court assessment of the appropriate legal test to apply to specific types of alleged anticompetitive business practices. *Leegin Creative Leather Prods. v. PKSK, Inc.*, 551 U.S. 887, 894-99 (2007) (discussing whether vertical price restraints are *per se* unlawful); *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 333 (1961) (discussing whether protracted requirements contracts are *per se* violations); *Comcast Cable Commc'ns, LLC v. FCC*, 717 F.3d 982, 987-992 (D.C. Cir. 2013) (Kavanaugh, C.J., concurring) (discussing whether vertical integration and vertical contracts should be analyzed under the *per se* rule); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 81 (3d Cir. 2010) (recognizing the unremarkable proposition that exclusive dealing arrangements are not *per se* unlawful); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894, 903 (9th Cir. 2008) (assessing the appropriate jury instruction concerning the circumstances "when bundled discounts can amount to anticompetitive conduct"); *United States v. Microsoft Corp.*, 253 F.3d 34, 90-95 (D.C. Cir. 2001) (addressing whether *per se* analysis should apply to software bundling). The courts appropriately considered and discussed the ubiquity of certain general types of practices in assessing whether potentially blanket legal standards were appropriate. None of those cases changes the law that, in a rule of reason case, evidence of News's pro-competitive justification must be derived from News itself. News's case, *Geneva*

*Pharmaceuticals Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 506-07 (2d Cir. 2004), is consistent with this. The Court's discussion of the defendant's procompetitive justifications centered on the market and the defendant in question. *Id.* at 509-10.

News reaches back to a 1978 District Court of Ohio decision to advance the overbroad proposition that any plaintiff's business practices are always admissible to prove the procompetitive reasons for an antitrust defendant's conduct. *G.O. Coin Service, Inc. v. Ace Vending Co.*, No. C-2-77-201, 1978 WL 1306, 1978 U.S. Dist. LEXIS 20207, at *1 (S.D. Ohio Jan. 12, 1978). *G.O. Coin* was a competitor case. *Id.* at *2 ("Defendants are a competitor of plaintiff's."). It does not support the proposition that The Class's—or any plaintiff's—business practices are probative of anything having to do with anticompetitive conduct in an unrelated market. Notably, the case itself acknowledges that "goose gander" is not a defense to an antitrust violation. *Id.* at *15 ("a pari delicto defense is not available"). But putting that aside, Plaintiffs do not dispute that in a rule of reason case, the business practices of competitors in the same market *may* be probative of among other things, how firms in the same relevant market compete against each other. But evidence of Plaintiffs' day-to-day business practices has nothing to do with that. Moreover, any evidence and argument concerning CPG interactions with respect to Valassis and Insignia for ISP[3] needs to be carefully monitored, with limiting and final instructions to guard against the improper inferences that News is intent on conveying.

The jury is not being asked to make a matter of law conclusion that News's contracts are a *per se* violation of the antitrust laws. The only proffered basis for admitting CPG business practices into evidence is procompetitive justification for News's anticompetitive conduct. News cannot rely on CPG business practices for that.

---

[3] Plaintiffs are not seeking to eliminate evidence concerning their preferences in purchasing ISP.

5

### 3. Plaintiffs' MIL 3: Contacts Between Class Members And Counsel Are Not Probative Of Any Issue In This Case

News agrees that both communications between counsel and absentee class members and absentee class members' decision whether to act as a class representative are irrelevant. (Opp. at 9.) But News then incorrectly blames Plaintiffs for injecting the issue into the trial by insisting on presenting evidence of class members' decisions not to opt out of the class. (*See id.*) That is demonstrably false. Plaintiffs offered not to refer to class members' decision to remain in or opt out of the class in exchange for News's commitment not to refer to communications between class counsel and absentee class members or absentee class members' decisions not to participate as class representatives; News rejected Plaintiffs' offer. Resolution of the issue is simple: the Court should bar News from referring to communications between counsel and absentee class members or absentee class members' decision not to act as class representatives, and Plaintiffs will not refer to absentee class members' decision to remain in the class, as Plaintiffs explained in their opposition to News's Thirteenth Motion *In Limine*. (*See* Dkt. No. 492 at 23.)

News insists that evidence of how the class representatives became involved in the lawsuit is somehow relevant to the "bona fide[s]" of their injuries or would correct "a misimpression with the jury about the significance of this litigation and the named Plaintiffs' role in it." (Dkt. No. 494 at 9-10.) This is wrong. First, the "bona fides" of Plaintiffs' antitrust injuries will be determined by expert economic proof of the overcharge, relying on financial records; that alone distinguishes this case from the authority News cites in its opposition. *See In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 WL 505234, at *1, 2014 U.S. Dist. LEXIS 14971, at *1 (S.D. W. Va. Feb. 5, 2014) (a personal injury suit over a medical implant); *Galen v. Ave. of Stars Assocs., LLC*, No. CV 09-4738, 2011 WL 837785, at *5, 2011 U.S. Dist. LEXIS 28305, at *14, (C.D. Cal. Mar. 1, 2011) (motivation for bringing a

lawsuit to rescind a purchase of real property was relevant where the plaintiff had to testify if she received a document that would render rescission untimely). Second, the fact that counsel may have told certain named Plaintiffs that they had an antitrust claim against News has nothing to do with the significance of the litigation or their role in it. Introducing this evidence to the jury and encourage it to draw speculative and unfounded inferences is improper. Plaintiffs' Third Motion *In Limine* should be granted in its entirety.

4. **Plaintiffs' MIL 4: The Dismissal Of Plaintiffs' FSI Claims Has No Bearing On This Case**

Plaintiffs will not rehash their arguments that already are set forth in their Opposition to News's Motion *In Limine* Number 12. (Dkt. No. 492 at 22.) The fact that Plaintiffs dismissed their FSI market claims concerning bundling and tying has no bearing on the probative value of any of the evidence presented at trial. It will only serve to confuse and mislead the jury.

5. **Plaintiffs' MIL 5: Defendants Can Make The Arguments They Seek Without Making Reference To Plaintiffs' Profits and Margins**

Evidence of the size, financial condition, or profitability of named Plaintiffs and class members is only admissible if News can demonstrate some way that they are relevant to Plaintiffs' claims or News's defenses and that any such relevance is not substantially outweighed by the risk of unfair prejudice to Plaintiffs and the class. *See In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *1, 2011 U.S. Dist. LEXIS 10677, at *1 (C.D. Cal. Jan. 25, 2011). News argues that named Plaintiffs' finances are somehow relevant to their bargaining power against News. (Dkt. No. 494 at 12.) But Plaintiffs allege that News is a monopolist in the relevant product market. That Plaintiffs might have had bargaining power due to their size in a competitive marketplace says nothing about Plaintiffs' bargaining power against a monopolist in a cornered market. Plaintiffs' size, financial condition, and profitability are irrelevant to proving the relevant product market and News's power in that market.

News's legal authority is inapplicable. In *American Society of Composers, Authors &*

*Publishers v. Showtime/The Movie Channel, Inc.*, the Second Circuit affirmed an order holding that a negotiated copyright royalty rate between a monopolist and individual buyers was not the product of a competitive market because of the strength of the monopolist's bargaining power. 912 F.2d 563, 567-72 (2d Cir. 1990). In *GMA Cover Corp. v Saab Barracuda LLC*, the court dismissed a claim of attempted monopolization by predatory pricing because the plaintiff did not allege that the monopolist would recoup its losses; this was because the market consisted of a monopolist supplier and a monopsonist buyer, which would ensure that the monopolist would not charge supracompetitive prices. No. 4:10-CV-12060, 2012 WL 642739, at *7, 2012 U.S. Dist. LEXIS 25543, at *21 (E.D. Mich. Feb. 8, 2012). And in *FTC v. Tenet Health Care Corp.*, the Eighth Circuit held that managed care payers had bargaining power against a proposed hospital merger because they could steer patients to other nearby hospitals, not because of their size, financial status, or profitability. 186 F.3d 1045, 1054 (8th Cir. 1999). News has provided no reason why class members' size, financial status, or profitability is relevant to any material issue in this case, and Plaintiffs' Fifth Motion *In Limine* should be granted.

6.  **Plaintiffs' MIL 6: Plaintiffs' Motion To Preclude Evidence of Pass Through is Moot**

News's opposition to the Class's Sixth Motion *In Limine* regarding pass-on evidence is moot. News opposed the Class's motion only because the Class opposed News's motion seeking to exclude evidence that consumers have been harmed by News's unlawful overcharges. (Opp. at 14–15.) Defendants argue that "the better course is to preclude all 'pass on' arguments". (*Id.* at 14.) The Class agrees and has proposed a stipulation that neither party shall reference evidence or argue that Plaintiffs were not injured because they had the ability to pass on alleged overcharges to their customers.

7.  **Plaintiffs MIL 7: News Appears To Agree That Evidence And Testimony Concerning Plaintiffs' Entitlement To Treble Damages Should Be Precluded So An Order *In Limine* Is Appropriate**

There is no basis for either party to inform the jury that damages will be trebled. The

Class cited binding Second Circuit authority on this issue, *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994), and News does not even suggest that the availability of treble damages has any relevance at trial. In fact, News concedes the point by proposing a curative jury instruction, which states that treble damages should not be considered. (*See* Opp. at 16.) The Class objects to News's proposed jury instruction but, in any event, this is not the time to argue jury instructions. The better practice is to grant the Class's Seventh Motion *In Limine* and completely preclude any argument or evidence regarding treble damages. Whether a jury instruction—which itself potentially draws attention to the issue and could skew the jury's assessment of damages—is appropriate should be addressed at a later date.

8. **Plaintiffs' MIL 8: News Appears To Agree That It Would Be Improper To Call A Live Witness That It Refused To Make Available**

News does not even attempt to respond to the case law cited by the Plaintiffs in their motion. Instead, it suggests that the issue is premature and that that they will "endeavor to verify the availability of witnesses under their control." (Dkt. No. 494, at 16-17). There is no need to delay a ruling. The law and equity are clear: If News seeks to introduce live testimony of witnesses under its control, those witnesses must be available for Plaintiffs' case in chief. *See Maran Coal Corp. v. Societe Generale de Surveillance S.A.*, No. 92-CIV-8728, 1996 WL 11230, at *2-*3, 1996 U.S. Dist. LEXIS 172, at *1-*2 (S.D.N.Y. Jan. 10, 1996); *In re Gulf Oil/Cities Svc. Tender Offer Litig.*, 776 F. Supp. 838, 839-40 (S.D.N.Y. 1991). Plaintiffs' Eighth Motion *In Limine* should be granted.

9. **Plaintiffs' MIL 9: The Court Should Enter An Order Requiring Defendants To Narrow Designations To The Scope of Affirmative Designations Or Agree To Separately Present Proffered Deposition Testimony.**

Plaintiffs seek "an order *in limine* requiring only that *appropriate* counter-designations, as contemplated by Rules 106 and 34(b)(6), be played during their case in chief, and precluding News from designating material beyond that necessitated by the rule of completeness for presentation during plaintiff's case in chief." (Dkt. No. 474 at 13 (emphasis in original).) Instead

of addressing this simple request, News argues against a straw man that "Plaintiffs . . . invoke the Rule of Completeness to argue that Defendants' designations should be restricted" and ignores Plaintiffs' legal authority. (Opp. at 18.)

Plaintiffs did not, and do not, seek by this motion to restrict News's designations. Instead, Plaintiffs ask that they be allowed to play their limited, affirmative deposition designations without also playing hours of News's affirmative deposition designations for the same witnesses. Given that Plaintiffs bear the burden of proof in this case, allowing News to play its own affirmative deposition designations during Plaintiffs' case-in-chief would create perverse incentives for News to over-designate in order to obfuscate otherwise concise and helpful portions of testimony.

Even if there were some gains in judicial economy to be had by allowing News to interpose into Plaintiffs' case News's own affirmative testimony—which it itself concedes was not designed for presentation to the jury (*see* Dkt. No. 494 at 18)—the prejudice to Plaintiffs in effectively allowing News to seize control of Plaintiffs' case-in-chief would substantially outweigh any small gains in efficiency. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487, 491 (E.D.N.Y. 2001) (stressing "the importance to plaintiff of manageably presenting [deposition] evidence to the jury"); *In re WorldCom Securities Litigation*, 02-CV-3288-DLC (S.D.N.Y. Feb. 18, 2005) transcript of pre-trial conference at 36:8-10 (requiring plaintiffs to play all deposition testimony together would "put defendants in the position of hijacking plaintiff's case and controlling how it puts on its proof"); *id.* at 31:13-32:24, 34:10-36:16.

News should have an opportunity to play appropriate counter-designations with Plaintiffs' affirmative deposition designations. And News has its own case-in-chief to play the affirmative deposition designations it feels support its position. But the Court should not require Plaintiffs to play both their own and News's affirmative deposition designations for shared witnesses during Plaintiffs' case-in-chief.

February 11, 2016

Respectfully submitted,

| | |
|---|---|
| KRAMER LEVIN NAFTALIS & FRANKEL LLP | MCKOOL SMITH, PC |
| /s/ Daniel B. Goldman<br>Daniel B. Goldman<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Phone: (212) 715-9162<br>Email: dgoldman@kramerlevin.com | /s/ Lewis T. LeClair<br>Lewis T. LeClair (pro hac vice)<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>Phone: (214) 978-4984<br>Email: lleclair@mckooksmith.com |
| BERRY LAW PLLC<br>R. Stephen Berry (pro hac vice)<br>1717 Pennsylvania Ave., NW, Suite 450<br>Washington, DC 20006<br>Phone: (202)296-3038<br>Email: sberry@berrylawpllc.com | MCKOOL SMITH, PC<br>John C. Briody<br>James H. Smith<br>One Bryant Park, 47th Floor<br>New York, NY 10036<br>Phone: (212) 402-9438<br>Email: jbriody@mckoolsmith.com<br>    jsmith@mckoolsmith.com |

*Attorneys for Plaintiffs*

| | |
|---|---|
| SUSMAN GODFREY LLP | KELLOGG, HUBER, HANSEN, TODD EVANS & FIGEL, PLLC |
| James T. Southwick<br>Richard W. Hess (pro hac vice)<br>Ryan V. Caughey (pro hac vice)<br>1000 Louisiana Street, Suite 5100<br>Houston, Texas 77002-5096<br>Phone: (713) 651-9366<br>Email: jsouthwick@susmangodfrey.com<br>    rhess@susmangodfrey.com<br>    rcaughey@susmangodfrey.com | Steven F. Benz (pro hac vice)<br>1615 M Street, N.W., Suite 400<br>Washington, DC 20036<br>Phone: (202) 326-7900<br>Email: sbenz@khhte.com |

*Co-lead Class Counsel*

## CERTIFICATE OF SERVICE

I, James H. Smith, hereby certify that a copy of the foregoing has been served via email upon counsel for Defendants on February 11, 2016.

_/s/ James H. Smith_____
James H. Smith