UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DIAL CORPORATION,<br>HENKEL CONSUMER GOODS INC.,<br>KRAFT HEINZ FOODS COMPANY,<br>H. J. HEINZ COMPANY, L.P.,<br>FOSTER POULTRY FARMS,<br>SMITHFIELD FOODS, INC.,<br>HP HOOD LLC, and<br>BEF FOODS, INC.,<br><br>Individually and On Behalf of<br>Similarly Situated Companies,<br><br>Plaintiffs,<br><br>v.<br><br>NEWS CORPORATION,<br>NEWS AMERICA INC.,<br>NEWS AMERICA MARKETING FSI L.L.C.,<br>and NEWS AMERICA MARKETING IN-<br>STORE SERVICES L.L.C.,<br><br>Defendants. | Civil Action No. 13-CV-06802-WHP<br><br>ECF Case |

## <u>JOINT PROPOSED JURY INSTRUCTIONS</u>

# TABLE OF CONTENTS

Page

I. PRELIMINARY INSTRUCTIONS................................................................1

    PROPOSED INSTRUCTION NO. 1. PRELIMINARY INSTRUCTIONS ...................1

II. PRE-DELIBERATION INSTRUCTIONS ............................................9

    A. GENERAL INSTRUCTIONS ................................................9

    PROPOSED INSTRUCTION NO. 2. JUROR ATTENTIVENESS.....................9

    PROPOSED INSTRUCTION NO. 3. ROLE OF THE COURT ...............10

    PROPOSED INSTRUCTION NO. 4. ROLE OF THE JURY .....................11

    PROPOSED INSTRUCTION NO. 5. JURY TO DISREGARD COURT'S
    VIEW ....................................................13

    DEFENDANTS' PROPOSED INSTRUCTION NO. 6. REPRIMAND OF
    COUNSEL FOR MISCONDUCT – IF APPLICABLE .........................14

    DEFENDANTS' PROPOSED INSTRUCTION NO. 7. PUBLICITY—IF
    APPLICABLE.....................................................15

    PROPOSED INSTRUCTION NO. 8. BURDEN OF PROOF.......................16

    DEFENDANTS' PROPOSED INSTRUCTION NO. 9. WHAT IS AND IS
    NOT EVIDENCE.......................................18

    DEFENDANTS' PROPOSED INSTRUCTION NO. 10. DIRECT AND
    CIRCUMSTANTIAL EVIDENCE.............................20

    DEFENDANTS' PROPOSED INSTRUCTION NO. 11. INFERENCES ...................22

    DEFENDANTS' PROPOSED INSTRUCTION NO. 12. NOTE TAKING.................24

    DEFENDANTS' PROPOSED INSTRUCTION NO. 13. JUDICIAL
    NOTICE—IF APPLICABLE ....................................26

    DEFENDANTS' PROPOSED INSTRUCTION NO. 14. STIPULATIONS—IF
    APPLICABLE.....................................................27

    PROPOSED INSTRUCTION NO. 15. WITNESS CREDIBILITY.............................28

    DEFENDANTS' PROPOSED INSTRUCTION NO. 16. WITNESS BIAS ................30

    DEFENDANTS' PROPOSED INSTRUCTION NO. 17. WITNESS
    INTEREST IN OUTCOME ....................................31

    DEFENDANTS' PROPOSED INSTRUCTION NO. 18. DISCREPANCIES IN
    TESTIMONY—IF APPLICABLE ....................................32

    PROPOSED INSTRUCTION NO. 19. IMPEACHMENT BY PRIOR
    INCONSISTENT STATEMENTS ....................................33

PROPOSED INSTRUCTION NO. 20.  EXPERT WITNESSES ...................................34

PROPOSED INSTRUCTION NO. 21.  30(b)(6) WITNESSES ..................................36

PLAINTIFFS' PROPOSED INSTRUCTION NO. 22.  NUMBER OF
    WITNESSES ................................................................................................37

DEFENDANTS' PROPOSED INSTRUCTION NO. 23. UNCALLED
    WITNESS NOT EQUALLY AVAILABLE—IF APPLICABLE ..........................38

DEFENDANTS' PROPOSED INSTRUCTION NO. 24.  UNCALLED
    WITNESS EQUALLY AVAILABLE—IF APPLICABLE ...................................39

DEFENDANTS' PROPOSED INSTRUCTION NO. 25.  WITNESS
    PREPARATION – IF APPLICABLE ...............................................................40

PROPOSED INSTRUCTION NO. 26.  CERTAIN SUMMARIES AND
    CHARTS ADMITTED AS EVIDENCE .............................................................41

PROPOSED INSTRUCTION NO. 27.  OTHER SUMMARIES AND CHARTS
    NOT ADMITTED AS EVIDENCE ....................................................................42

PROPOSED INSTRUCTION NO. 28.  DEPOSITIONS AS EVIDENCE ...................43

DEFENDANTS' PROPOSED INSTRUCTION NO. 29.
    INTERROGATORIES—IF APPLICABLE ..........................................................44

DEFENDANTS' PROPOSED INSTRUCTION NO. 30.  REQUESTS FOR
    ADMISSION—IF APPLICABLE .....................................................................46

DEFENDANTS' PROPOSED INSTRUCTION NO. 31.  INTENT
    EVIDENCE—IF APPLICABLE ......................................................................47

PLAINTIFFS' PROPOSED INSTRUCTION NO. 32.-A.  CORPORATE
    PARTY INVOLVED ......................................................................................48

DEFENDANTS' PROPOSED INSTRUCTION NO. 32.-B.  CORPORATE
    PARTY INVOLVED ......................................................................................51

**B.**  **SUBSTANTIVE LAW** ........................................................................................52

PLAINTIFFS' PROPOSED INSTRUCTION NO. 33.-A.  OVERVIEW OF
    THE ANTITRUST LAWS AND CLAIMS .........................................................52

DEFENDANTS' PROPOSED INSTRUCTION NO. 33-B.  OVERVIEW OF
    THE ANTITRUST LAWS AND CLAIMS .........................................................54

DEFENDANTS' PROPOSED INSTRUCTION NO. 34.  MULTIPLE CLAIMS
    AND MULTIPLE PARTIES ...........................................................................56

PLAINTIFFS' PROPOSED INSTRUCTION NO. 35.-A.  COUNT ONE:
    MONOPOLIZATION – ELEMENTS .................................................................59

DEFENDANTS' PROPOSED INSTRUCTION NO. 35-B.  COUNT ONE:
    MONOPOLIZATION – ELEMENTS .................................................................60

PROPOSED INSTRUCTION NO. 36.  COUNT ONE:  MONOPOLIZATION –
    FIRST ELEMENT –  RELEVANT MARKET ....................................................62

PLAINTIFFS' PROPOSED INSTRUCTION NO. 37.-A.  EXISTENCE OF
MONOPOLY POWER ............................................................................65

DEFENDANTS' PROPOSED INSTRUCTION NO. 37-B.  COUNT ONE:
MONOPOLIZATION – SECOND ELEMENT -- MONOPOLY POWER ...........67

PLAINTIFFS' PROPOSED INSTRUCTION NO. 38.  INTENT TO OBTAIN
OR MAINTAIN MONOPOLY POWER .............................................................72

PLAINTIFFS' PROPOSED INSTRUCTION NO. 39.-A.
ANTICOMPETITIVE CONDUCT DEFINED ......................................................73

DEFENDANTS' PROPOSED INSTRUCTION NO. 39-B.  COUNT ONE:
MONOPOLIZATION – THIRD ELEMENT – OVERVIEW OF
ANTICOMPETITIVE CONDUCT ........................................................................75

PLAINTIFFS' PROPOSED INSTRUCTION NO. 40.-A.
ANTICOMPETITIVE CONDUCT – SPECIFIC ACTS ........................................79

DEFENDANTS' PROPOSED INSTRUCTION NO. 40-B.  COUNT ONE:
MONOPOLIZATION – THIRD ELEMENT – SPECIFIC
ANTICOMPETITIVE ACTS ................................................................................81

PLAINTIFFS' PROPOSED INSTRUCTION NO. 41.  ANTICOMPETITIVE
CONDUCT – EXCLUSIVE DEALING ...............................................................87

PLAINTIFFS' PROPOSED INSTRUCTION NO. 42.  RULE OF REASON –
BALANCING THE COMPETITIVE EFFECTS ...................................................90

PLAINTIFFS' PROPOSED INSTRUCTION NO. 43.-A.  COUNT ONE:
MONOPOLIZATION – FOURTH ELEMENT – INJURY ...................................92

DEFENDANTS' PROPOSED INSTRUCTION NO. 43.-B.  COUNT ONE:
MONOPOLIZATION – FOURTH ELEMENT – INJURY AND
CAUSATION ........................................................................................................94

DEFENDANTS' PROPOSED INSTRUCTION NO. 44.  COUNT ONE:
MONOPOLIZATION – NAMED PLAINTIFF INJURY ......................................96

DEFENDANTS' PROPOSED INSTRUCTION NO. 45.  COUNT ONE:
MONOPOLIZATION – INJURY TO ABSENT CLASS MEMBERS..................98

PLAINTIFFS' PROPOSED INSTRUCTION NO. 46.-A.  CLAIM OF
EXCLUSIVE DEALING .......................................................................................99

DEFENDANTS' PROPOSED INSTRUCTION NO. 46-B.  COUNT TWO:
EXCLUSIVE DEALING – ELEMENTS .............................................................101

PLAINTIFFS' PROPOSED INSTRUCTION NO. 47.-A.  EXCLUSIVE
DEALING – DEFINITION .................................................................................103

DEFENDANTS' PROPOSED INSTRUCTION NO. 47-B.  COUNT TWO:
EXCLUSIVE DEALING – FIRST ELEMENT – EXISTENCE OF
EXCLUSIVE DEALING CONTRACTS ............................................................104

PLAINTIFFS' PROPOSED INSTRUCTION NO. 48.-A.  PROOF OF
    COMPETITIVE HARM ......................................................................106

DEFENDANTS' PROPOSED INSTRUCTION NO. 48-B.  COUNT TWO:
    EXCLUSIVE DEALING – SECOND ELEMENT – SUBSTANTIAL
    HARM TO COMPETITION ...............................................................108

PLAINTIFFS' PROPOSED INSTRUCTION NO. 49.-A.  RULE OF REASON
    – BALANCING THE COMPETITIVE EFFECTS ...............................112

DEFENDANTS' PROPOSED INSTRUCTION NO. 49-B.  COUNT TWO:
    EXCLUSIVE DEALING –  BALANCING HARM AGAINST
    COMPETITIVE BENEFITS................................................................113

DEFENDANTS' PROPOSED INSTRUCTION NO. 50.  COUNT TWO:
    EXCLUSIVE DEALING – THIRD ELEMENT – SUBSTANTIAL
    MARKET POWER ..............................................................................115

PLAINTIFFS' PROPOSED INSTRUCTION NO. 51.-A.  COUNT TWO:
    EXCLUSIVE DEALING – INJURY.....................................................116

DEFENDANTS' PROPOSED INSTRUCTION NO. 51-B.  COUNT TWO:
    EXCLUSIVE DEALING – FOURTH ELEMENT – INJURY AND
    CAUSATION.......................................................................................117

DEFENDANTS' PROPOSED INSTRUCTION NO. 52.  COUNT TWO:
    EXCLUSIVE DEALING – NAMED PLAINTIFF INJURY ...............118

DEFENDANTS' PROPOSED INSTRUCTION NO. 53.  COUNT TWO:
    EXCLUSIVE DEALING – INJURY TO ABSENT CLASS MEMBERS...........119

C.  DAMAGES.................................................................................................120

PLAINTIFFS' PROPOSED INSTRUCTION NO. 54.-A.  ANTITRUST
    DAMAGES GENERALLY ................................................................120

DEFENDANTS' PROPOSED INSTRUCTION NO. 54-B.  CONSIDER
    DAMAGES ONLY IF NECESSARY .................................................121

PLAINTIFFS' PROPOSED INSTRUCTION NO. 55.-A.  CALCULATION OF
    DAMAGES - GENERALLY................................................................123

DEFENDANTS' PROPOSED INSTRUCTION NO. 55-B.  ANTITRUST
    DAMAGES – PURPOSE, CAUSATION, AND DISAGGREGATION ..............125

DEFENDANTS' PROPOSED INSTRUCTION NO. 56. SPECULATION NOT
    PERMITTED ......................................................................................127

PLAINTIFFS' PROPOSED INSTRUCTION NO. 57.-A.  CALCULATION OF
    ANTITRUST DAMAGES...................................................................129

DEFENDANTS' PROPOSED INSTRUCTION NO. 57-B.  CALCULATION
    OF DAMAGES ..................................................................................131

PLAINTIFFS' PROPOSED INSTRUCTION NO. 58.-A.  CLASS DAMAGES ........134

DEFENDANTS' PROPOSED INSTRUCTION NO. 58-B. MULTIPLE CLAIMS AND MULTIPLE PARTIES ............................................................135

DEFENDANTS' PROPOSED INSTRUCTION NO. 59. NOMINAL DAMAGES ...........................................................................................137

DEFENDANTS' PROPOSED INSTRUCTION NO. 60. TREBLING OF DAMAGES ...........................................................................................139

DEFENDANTS' PROPOSED INSTRUCTION NO. 61. MITIGATION..................140

DEFENDANTS' PROPOSED INSTRUCTION NO. 62. STATUTE OF LIMITATIONS AND CONTRACTUAL LIMITATIONS ...................................141

**D. CLOSING INSTRUCTIONS** ........................................................................142

DEFENDANTS' PROPOSED INSTRUCTION NO. 63. JUROR OATH & SYMPATHY ...................................................................................................142

PLAINTIFFS' PROPOSED INSTRUCTION NO. 64.-A. DUTY TO DELIBERATE ..............................................................................................143

DEFENDANTS' PROPOSED INSTRUCTION NO. 64-B. DUTY TO DELIBERATE/UNANIMOUS VERDICT ...........................................................144

PROPOSED INSTRUCTION NO. 65. SELECTION OF FOREPERSON.................146

PLAINTIFFS' PROPOSED INSTRUCTION NO. 66.-A. GENERAL VERDICT........................................................................................................147

DEFENDANTS' PROPOSED INSTRUCTION NO. 66-B. SPECIAL VERDICT........................................................................................................148

PROPOSED INSTRUCTION NO. 67. RETURN OF VERDICT..............................149

PROPOSED INSTRUCTION NO. 68. VERDICT FORMS – JURY'S RESPONSIBILITY .........................................................................................150

PROPOSED INSTRUCTION NO. 69. COMMUNICATIONS WITH THE COURT ...........................................................................................................151

PROPOSED INSTRUCTION NO. 70. CONCLUDING REMARKS .......................152

# I.     PRELIMINARY INSTRUCTIONS

PROPOSED INSTRUCTION NO. 1.

PRELIMINARY INSTRUCTIONS[1]

Members of the jury, this case is now officially on trial.  And now that you have been sworn, I want to give you some instructions about your duties as jurors.  At the end of the trial, I'll give you more detailed instructions, and those instructions will control your deliberations in this case.

You are the sole judges of the facts.  You will decide what the facts are from the evidence that will be presented in this courtroom, and then apply those facts to the law as I give it to you.  The evidence will consist of the testimony of witnesses, including testimony in the form of a deposition,  documents, and other things received as exhibits, and any stipulations of fact on which the lawyers agree.  [IF APPLICABLE:  The parties have entered into an agreement in which the following facts have been agreed to:  [read stipulation].  You must take these facts as true for purposes of this case.]

Now, there are two kinds of evidence:  Direct evidence and circumstantial evidence.  Direct evidence is testimony by a witness about what that witness saw or heard or did. Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.  Circumstantial evidence is indirect evidence.  That is, it is proof of one or more facts from which you can find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it

---

[1]     The parties jointly propose preliminary instructions modeled on those that this Court delivered in *Capitol Records, Inc. v. MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP) (S.D.N.Y. 2014), Dkt. No. 572.  Substantive deviations from this Court's instructions in *Capitol Records* are underlined, and objections and responses, where applicable, are inserted in reference to highlighted text.

rained during the night.  The wet sidewalk is circumstantial evidence that it rained the night

before.  However, other evidence, such as a garden hose turned on, may explain the water on the

sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence,

you must consider all the evidence in the light of reason, experience, and common sense.  You

may consider both direct and circumstantial evidence in deciding this case.  The law permits you

to give equal weight to both or to neither.

There is no formula to evaluate testimony or exhibits.  At this time, suffice it to

say that each of you brings with you to this courtroom all of the experience and background of

your lives.  Do not leave your common sense outside the courtroom.  The same types of tests that

you apply in your everyday dealings are the tests that you apply in deciding how much weight, if

any, to give to the evidence in this case.

Now, the law does not require that you accept all of the evidence admitted at trial.

In determining what evidence you accept, you must make your own evaluation of the testimony

from each of the witnesses and exhibits that are received in evidence.

Now I will give you a very brief summary of the claims and defenses in this case.

The plaintiffs in this case ("Plaintiffs") are a class of consumer packaged goods

manufacturers, or "CPGs."  CPGs are companies like Dial and Heinz that manufacture products

that are sold in retail stores, like grocery stores.  The defendants in this case ("Defendants") are

News Corporation, News America Inc., News America Marketing In-Store Services L.L.C. and

News America Marketing FSI L.L.C.  One or more of the Defendants sells promotions inside

certain retail stores, such as coupons distributed through a coupon machine attached to the shelf,

signs attached to the shelf, or a decal on an aisle floor.

Plaintiffs allege that Defendants have unlawfully monopolized an alleged market for third party in-store promotions. Plaintiffs allege that Defendants have engaged in, and continue to engage in, anticompetitive conduct that excludes rivals and harms competition in the alleged market. Plaintiffs allege that Defendants' conduct is illegal under the United States antitrust laws. Plaintiffs further allege that Defendants' conduct has allowed Defendants to overcharge CPGs for in-store promotions.

Defendants deny Plaintiffs' allegations. Defendants assert that they have not engaged and do not engage in anticompetitive conduct; rather, Defendants assert that their conduct was and is lawful and pro-competitive. Defendants deny that they have monopolized any market. Defendants also deny that third party in-store promotions is a relevant market; they say the market includes many other competing products. Defendants further assert that no one has been overcharged for in-store promotions.

As I've previously mentioned, there are four Defendants on trial before you. Each one of those Defendants is entitled to an independent determination of its liability or lack thereof, and at the end of trial, you will be asked to make conclusions based on a preponderance of the evidence as to the defendants' liability.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the highlighted language above that Defendants propose. The instruction is confusing as it fails to explain that all four Defendants are News Corp. entities, that they are all represented by the same counsel, and are presenting a joint defense at trial. The charge is also repetitive, as the jury will have already been informed that there are four Defendants on trial.]**

**[DEFENDANTS' RESPONSE: Defendants submit that, as this Court decided in its opinion on the *in limine* motions, due process requires each Defendant to have a separate determination of liability. (*See* Dkt. No. 520 at pp. 3–4.).]**

Now, what does a preponderance of the evidence mean? In a civil case, the party with the burden of proof on any given issue has the burden of proving every disputed element of

its claim by a preponderance of the evidence. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider all the relevant evidence presented by both sides.

If you conclude that the party bearing the burden of proof has failed to establish its claim by a preponderance of the evidence, you must decide against that party on the issue you are considering. If you find that the credible evidence on a given issue is evenly divided between the two parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having the burden of proof. Simple equality of evidence does not establish a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

**[DEFENDANTS' OBJECTION: Defendants object to the highlighted language above as entirely redundant with the preceding paragraph, which fully explained the meaning of "a preponderance of the evidence." There is no need to reiterate that standard once again just a few sentences later. There is no need to deviate from this Court's instructions in *Capitol Records*.]**

**[PLAINTIFFS' RESPONSE: Having explained the significance of evidence of equal weight, it is of import to explain the significance of evidence in which the scales tip, however slightly, in favor of one party.]**

Now, let me explain briefly how this trial will proceed. First, the Plaintiffs' attorney will make an opening statement, which is simply an outline to help you understand the

evidence as it is presented.  Then the Defendants' attorney will make an opening statement.

Opening statements are neither evidence nor argument.

After opening statements, the Plaintiffs will present their witnesses, and counsel

for the Defendants may cross-examine them.  Following the Plaintiffs' case, the Defendants may

present a case.  Counsel for the Plaintiffs will have the opportunity to cross-examine any

witnesses testifying for the Defendants.

After the presentation of evidence is completed, the trial attorneys will deliver

their closing arguments to summarize and interpret the evidence.  Following closing arguments, I

will instruct you on the law.  Then, you will retire to deliberate on your verdict, which must be

unanimous and must be based on the evidence presented at trial.  Now, you must not take

anything I say or do during the trial as indicating what your verdict should be.  This includes

instances in which I may ask a witness questions.  Please do not assume from any of my

questions that I have any opinion about the subject matter of my questions or about any answers

a witness gives.  In that same vein, don't be influenced if I take notes.  What I write down may

have nothing to do with this trial or with what you are concerned with at the trial.

At times I may sustain or overrule objections to questions that are asked.  If I

overrule an objection, the question may be answered or the exhibit received into evidence.  If I

sustain the objection, the question cannot be answered and the exhibit cannot be received into

evidence; or, if the witness has answered, I will instruct you to disregard that answer.  In

reaching your verdict, you may not draw any inference from an unanswered question.  Nor may

you consider any testimony that I ordered you to disregard or that is stricken.  The law requires

that your decision be based solely on the evidence before you.  Anything I direct you to disregard

is being excluded because it is not legally admissible as evidence.

From time to time it may be necessary for me to talk to the lawyers out of your hearing.  The purpose of these conferences is to decide how certain matters are to be treated under the rules of evidence.  The lawyers and I will do what we can to limit the number and length of these conferences.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case, or issue, or of what your verdict should be.

The questions and objections of the attorneys are not evidence.  Nor are the statements and arguments of the attorneys during any part of the trial.  Further, anything you may see or hear when court is not in session, even if what you see or hear is said or done by one of the parties or by one of the witnesses, it is not evidence.  The only competent evidence is evidence received when court is in session and all the parties and jurors are present.

I want to inform you about a certain type of witness, called a 30(b)(6) witness, who commonly testifies in cases such as this one involving corporate parties.  A Rule 30(b)(6) witness is a person chosen by the company to speak on its behalf.  This type of witness must be knowledgeable to speak on specifically identified topics and is required to give complete and knowledgeable answers for the company.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the highlighted language above that defendants propose.  The instruction is confusing, unnecessary as part of the preliminary instructions, and places undue emphasis on the role of 30(b)(6) witnesses vis-à-vis other types of witnesses at trial.]**

**[DEFENDANTS' RESPONSE:  Defendants believe the instruction is warranted.  This trial involves several 30(b)(6) witnesses, jurors are unlikely to know what they are, and this limited information up front about such witnesses will be helpful.]**

I also want to caution you about certain principles governing your conduct as jurors in this case.  First, do not talk to each other about this case or about anyone who has

anything to do with the case until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or with anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell them that you are a juror in a civil case, but please do not tell them anything else about it until after you have been discharged by me.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone should try to talk to you, please report it to me immediately through my deputy and do not discuss it with any other juror.

Do not do any research or any investigation about the case on your own. Don't read any news reports about the case. Don't go on the Internet and see what you can learn to inform yourself about this matter. I know many of you—probably all of you—have cell phones, BlackBerrys and you use all the tools of technology with the Internet. You may not use those tools to communicate electronically with anyone about this case. That includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, BlackBerry, iPhone, text messaging, Twitter, through any blog or website, any internet chat room, or by way of any other social networking sites, including Facebook, Myspace, LinkedIn, and YouTube. All you need to know will be presented here in open court by the very capable counsel who represent the parties. And it's a matter of fundamental fairness to the parties. It's what makes a trial by jury different from everything else.

Now, finally, I permit jurors to take notes, but you don't have to take notes. Notes are just an aid to your own recollection. The court reporters in this case are outstanding

and record everything that's said in the courtroom. Any portion of the testimony can be read back to you here in open court during your deliberations. So, if you do take notes, be aware that any note-taking may distract you from something important that's happening right up here on the witness stand. Don't be influenced by the fact that another juror has taken notes. Frequently, there is a tendency to attach too much importance to what a person writes down. <u>Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case.</u>

From this point forward until the time when you retire to deliberate, it is your duty not to discuss the case and not to remain in the presence of other persons who may be discussing the case. In that regard, please understand that the parties, counsel, and the witnesses in this case have been instructed to have no contact with any of you, so they will turn away rather than make contact. When they turn away, they're simply following my instructions.

Now, members of the jury, this concludes my preliminary instructions to you. From time to time, we will discuss what is happening so that you understand the process of this trial as it's unfolding. In a few minutes, we're going to begin with the initial stage of this case, which, as I said to you, are opening statements. We're going to begin with the Plaintiffs' opening statement.

## II.  PRE-DELIBERATION INSTRUCTIONS

### A.  GENERAL INSTRUCTIONS

PROPOSED INSTRUCTION NO. 2.

JUROR ATTENTIVENESS[2]

Ladies and gentlemen, before you begin your deliberations, I am going to instruct you on the law.  You must pay close attention, and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

---

[2]  Adapted from 4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instruction 71-1 (2015).

<u>PROPOSED INSTRUCTION NO. 3.</u>

<u>ROLE OF THE COURT</u>[3]

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be— it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

---

[3]    4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instruction 71-2 (2015).

<u>PROPOSED INSTRUCTION NO. 4.</u>

<u>ROLE OF THE JURY</u>[4]

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said—or what I may say in these instructions—about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be on the claims and defenses in this case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the

---

[4]     Adapted from 4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instructions 71-3 and 71-6 (2015).

verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

<u>PROPOSED INSTRUCTION NO. 5.</u>

<u>JURY TO DISREGARD COURT'S VIEW</u>[5]

I have not intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the exclusive sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from guesswork about the nature or effect of any discussion between court and counsel held out of your hearing or sight.

---

[5] Adapted from 4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instruction 71-5 (2015).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 6.</u>

<u>REPRIMAND OF COUNSEL FOR MISCONDUCT – IF APPLICABLE</u>[6]

During the course of the trial, I have had to admonish or reprimand the attorneys because I did not believe what they were doing was proper. You should draw no inference against them or their clients. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks, and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to all of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 6 as unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 6 should be given only to the extent applicable to the case.]**

---

[6]     4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instruction 71-7 (2015).

DEFENDANTS' PROPOSED INSTRUCTION NO. 7.

PUBLICITY—IF APPLICABLE[7]

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions. You must completely disregard any report which you have read in the press or on the Internet, seen on television, or heard on the radio. Indeed, it would be unfair to consider such reports, as they are not evidence and the parties have no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 7 as unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 7 should be given only to the extent applicable to the case.]**

---

[7] 4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instruction 71-14 (2015).

PROPOSED INSTRUCTION NO. 8.

BURDEN OF PROOF[8]

This is a civil case and, as such, the plaintiffs have the burden of proving the material allegations of their complaint by a preponderance of the evidence.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right— then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence—it must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

If after considering all of the evidence you are satisfied that the plaintiffs have carried their burden on each essential point as to which they have the burden of proof, then you

---

[8]        Adapted from 4-73 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 73.01, Instructions 73-1 and 73-2 (2015).

must find for the plaintiffs on their claims.  If after such consideration you find the evidence of both parties to be in balance or equally probable on any of the essential points, then the plaintiffs have failed to sustain their burden and you must find for the defendants.

DEFENDANTS' PROPOSED INSTRUCTION NO. 9.

WHAT IS AND IS NOT EVIDENCE[9]

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

---

[9]     4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.01, Instruction 74-1 (2015).

To constitute evidence which may be considered by you, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 9 on the ground that it is repetitive of instructions sufficiently provided at Instruction No. 1 and Defendants' offer no legal basis for the proposition that this instruction should be provided more than once.  To the extent the Court intends to provide this instruction again, the areas highlighted above should be omitted in the interest of time as superfluous.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed on what is and is not evidence, not just in the preliminary instructions after the jury is seated, but also immediately prior to deliberations.  It is a standard and sound practice to do so.  This instruction is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 10.</u>

<u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>[10]

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

---

[10] 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.01, Instruction 74-2 (2015).

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 10 on the ground that it is repetitive of instructions sufficiently provided at Instruction No. 1 and Defendants' offer no legal basis for the proposition that this instruction should be provided more than once.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed on direct and circumstantial evidence, not just in the preliminary instructions after the jury is seated, but also immediately prior to deliberations. It is a standard and sound practice to do so. This instruction is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

INFERENCES[11]

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Plaintiffs ask you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

The mere existence of an inference against the defendants does not relieve the plaintiffs of the burden of establishing their case by a preponderance of the evidence. If the plaintiffs obtain a verdict, you must believe from the credible evidence that they have sustained

---

[11]    Adapted from 4-75 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 75.01, Instructions 75-1 and 75-2 (2015).

the burden cast upon them.  If  the plaintiffs have failed, then your verdict must be for the defendants.  If you should find that all of the evidence is evenly balanced, then the plaintiffs have failed to sustain the burden of proof and your verdict should be for the defendants.

If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiffs by the standard I have articulated, then they have met their burden of proof.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 11 on the ground that it is repetitive of instructions sufficiently provided at Instruction No. 1 and Defendants' offer no legal basis for the proposition that this instruction should be provided more than once.  Plaintiffs further object to the language highlighted above to the extent it omits any reference to the Defendants' burden of establishing their defenses by a preponderance of the evidence.  As noted in the commentary section for this instruction in Sand, this instruction is only necessary when the jury appears confused about inferences and "[c]are must be taken to adapt the recommended charge so that 'defendant' is substituted for 'plaintiff' and vice versa" when necessary to adapt to the facts of a case.]**

**[DEFENDANTS' RESPONSE:  Defendants respond that jurors should be instructed on inferences, not just in the preliminary instructions, but also immediately prior to deliberations.  This instruction is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York. The highlighted language is taken directly from Sand's, without omitting any text.  Defendants have no objection to a similar instruction in their burden to prove their affirmative defenses.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 12.</u>

<u>NOTE TAKING</u>[12]

During the trial, I permitted the taking of notes by those of you who wished to do so. At that time, I pointed out that while I permit the taking of notes, the court reporters take down everything that is said in the courtroom and will read back to you during your deliberations any portion of the transcript that you may ask for.

I also advised you to be careful because taking notes presents the further problem that doing so may divert your attention from some very important testimony given while you are taking notes.

As to those jurors who did take notes during the trial, I point out to you and your fellow jurors that notes are simply an aid to memory for the particular juror who takes notes. Notes should not be substituted for your memory. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

Remember, notes are not evidence. Therefore, I instruct you that your notes are only a tool to aid in your individual memory, and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Further, those jurors who did not take notes should rely on their independent recollection of the evidence and should not be influenced by the fact that another juror has taken notes.

---

[12]     Adapted from the Court's instructions in *Capitol Records, Inc.* v. *MP3Tunes. LLC*, No. 07 Civ. 9931 (WHP), Dkt. No. 596 (Mar. 17, 2014 Tr. at 2602:7–2603:5); 3 Fed. Jury Prac. & Instr. § 103:02 (6th ed.).

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 12 on the ground that it is repetitive of instructions sufficiently provided at Instruction No. 1 and Defendants' offer no legal basis for the proposition that this instruction should be provided more than once in this case.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed on note taking, not just in the preliminary instructions, but also immediately prior to deliberations.  This instruction and the preliminary instruction listed above are adapted from this Court's instructions in *Capitol Records, Inc.* v. *MP3Tunes. LLC*, No. 07 Civ. 9931 (WHP) (S.D.N.Y. 2014).]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 13.</u>

<u>JUDICIAL NOTICE—IF APPLICABLE</u>[13]

I have taken judicial notice of certain facts which are not subject to reasonable dispute.  I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true.  You are required to accept these facts as true in reaching your verdict.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 13 as unnecessary.]**

**[DEFENDANTS' RESPONSE:  Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 13 should be given only to the extent applicable to the case.]**

---

[13]     4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.02, Instruction 74-3 (2015).

DEFENDANTS' PROPOSED INSTRUCTION NO. 14.

STIPULATIONS—IF APPLICABLE[14]

During this trial you have heard [stipulations of facts] [stipulations of testimony] [stipulations of both fact and testimony].

A stipulation of facts is an agreement among the parties that a certain fact is true. You must regard such agreed facts as true.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect, if any, to be given that testimony.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 14 on the ground that it is repetitive of instructions sufficiently provided at Instruction No. 1 and Defendants' offer no legal basis for the proposition that this instruction should be provided more than once.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed on stipulations, not just in the preliminary instructions, but also immediately prior to deliberations. This instruction is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

---

[14]      4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.02, Instructions 74-4 and 74-5 (2015).

## WITNESS CREDIBILITY[15]

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witness's testimony.

How do you determine where the truth lies? You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did the witness appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was the witness's demeanor – that is, his or her carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack thereof, his or her intelligence, the reasonableness an probability of his or her testimony and

---

[15]    Adapted from 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 76.01, Instruction 76-1 (2015)

its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given and all of the other evidence in this case.  Always remember that you should use your common sense, your good judgment and your own life experience.

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 16.</u>

<u>WITNESS BIAS</u>[16]

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 16 on the ground that it is sufficiently discussed at Instruction No. 15 and, thus, unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed separately on witness bias. This standalone instruction on witness bias is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

---

[16]     4-76 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 76.01, Instruction 76-2 (2015).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 17.</u>

<u>WITNESS INTEREST IN OUTCOME</u>[17]

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 17 on the ground that it is sufficiently discussed at Instruction No. 15 and, thus, unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed separately on a witness's interest in the outcome of the case. This standalone instruction on witness interest in outcome is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

---

[17]      4-76 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 76.01, Instruction 76-3 (2015).

## DISCREPANCIES IN TESTIMONY—IF APPLICABLE[18]

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself or herself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 18 on the ground that it is sufficiently discussed at Instruction Nos. 15 and 19 and is, thus, unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that jurors should be instructed separately on discrepancies in testimony, if applicable to the case. This standalone instruction on discrepancies in testimony is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York.]**

---

[18]      4-76 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 76.01, Instruction 76-4 (2015).

<u>PROPOSED INSTRUCTION NO. 19.</u>

<u>IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS</u>[19]

You have heard evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

---

[19] 4-76 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 76.01, Instruction 76-5 (2015).

EXPERT WITNESSES[20]

You have heard testimony from a number of expert witnesses presented by both sides who have expressed their opinions about matters that are in issue. A witness is allowed to express his or her opinion on those matters about which he or she has special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witnesses' testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept this witness's testimony merely because he or she is an expert. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts and their testimony relates to a question of fact; so, it is your job to resolve the disagreement.

The way you resolve the conflict between experts is the same way you decide other fact questions and the same way you decide whether to believe an ordinary witness. In addition, since they gave expert opinions, you should consider the soundness of each expert's opinions, the reasons for the opinion and his or her motive, if any, for testifying.

---

[20]     4-76 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instructions 76-9, 76-10 (2015).

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the expert witness. The determination of the facts in this case rests solely with you.

<u>PROPOSED INSTRUCTION NO. 21.</u>

<u>30(b)(6) WITNESSES</u>[21]

In this trial, you have heard that there were "Rule 30(b)(6)" witnesses for a corporate party to this case. Where a party is a corporation, as are all the plaintiffs and defendants in this case, the other party can take the deposition of the organization or company itself. Because a corporation can only speak or do things through its representatives, the party being deposed is required to designate a person (or persons) to testify on its behalf.

A Rule 30(b)(6) witness is a person that the company has chosen to designate to speak on behalf of the company. This type of witness must be knowledgeable to speak on specifically identified topics and is required to give complete and knowledgeable answers on the company's behalf. The corporate party is bound to the answers given within the scope of those specifically identified topics; answers not within the scope of those topics must be treated as the answers of the individual deponent.

---

[21] *See NAACP* v. *A.A. Arms, Inc.*, No. 99 CV 3999(JBW), 2003 WL 2004688, at *1 (E.D.N.Y. Apr. 30, 2003); *Falchenberg* v. *N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008), *aff'd*, 338 F. App'x 11 (2d Cir. 2009).

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 22.</u>

<u>NUMBER OF WITNESSES</u>[22]

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction No. 22 in its entirety as covered adequately above in Defendants' Proposed Instruction No. 8 on the "Burden of Proof" ("A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents"). Defendants' Proposed Instruction No. 8 is from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York. In contrast, Plaintiffs' Proposed Instruction No. 22 is from O'Malley's, which is not based on the law of this Circuit.]**

**[PLAINTIFFS' RESPONSE: This instruction is routinely provided to juries. Defendants fail to state a legal basis for its omission.]**

---

[22]     3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* § 104.54 (6th ed. 2014).

UNCALLED WITNESS NOT EQUALLY AVAILABLE—IF APPLICABLE[23]

During this trial, you heard evidence about a witness who was not called to testify. Counsel for the [party] have argued that this witness could have given material testimony in this case, and that the [opposing party] were in the best position to produce this witness.

If you find that this witness could have been called as a witness by the [opposing party], and that the [opposing party] was in the best position to produce this witness, and that this witness would have given important new testimony, then you are permitted, but not required, to infer that the testimony of this witness would have been unfavorable to the [opposing party].

In deciding whether to draw this inference, you should consider whether this witness's testimony would merely have repeated other testimony and evidence already before you. You may also consider whether the [opposing party] had a reason for not calling this witness that was explained to your satisfaction.

Any inference you decide to draw should be based on all of the facts and circumstances in this case.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 23 as unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 23 should be given only to the extent applicable to the case.]**

---

[23]     Adapted from 4-75 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 75.01, Instruction 75-3 (2015).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 24.</u>

<u>UNCALLED WITNESS EQUALLY AVAILABLE—IF APPLICABLE</u>[24]

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.

Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified had they been called. Their absence should not affect your judgment in any way.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 24 as unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants note that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, Defendants' Proposed Instruction No. 24 should be given only to the extent applicable to the case.]**

---

[24] Adapted from 4-75 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 75.01, Instruction 75-4 (2015).

DEFENDANTS' PROPOSED INSTRUCTION NO. 25.

WITNESS PREPARATION – IF APPLICABLE[25]

You've heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witness appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inference you draw from such preparation are matters completely within your discretion.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 25 as unnecessary in this case.]**

**[DEFENDANTS' RESPONSE: Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, Defendants' Proposed Instruction No. 24 should be given only to the extent applicable to the case. Furthermore, this instruction is adapted from this Court's instructions prior to deliberations in *Capitol Records, Inc.* v. *MP3Tunes. LLC*, No. 07 Civ. 9931 (WHP) (S.D.N.Y. 2014).]**

---

[25]     Adapted from the Court's instructions in *Capitol Records, Inc.* v. *MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP), Dkt. No. 596 (Mar. 17, 2014 at Tr. 2606:14–2607:3).

PROPOSED INSTRUCTION NO. 26.

CERTAIN SUMMARIES AND CHARTS ADMITTED AS EVIDENCE[26]

The parties have presented exhibits in the form of charts and summaries.  Those exhibits are numbered [   ].  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

---

[26]     Adapted from 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.06, Instruction 74-11 (2015).

PROPOSED INSTRUCTION NO. 27.

OTHER SUMMARIES AND CHARTS NOT ADMITTED AS EVIDENCE[27]

Throughout the trial, you have seen summaries and charts that were not admitted as evidence. The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

---

[27] 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.06, Instruction 74-12 (2015).

## DEPOSITIONS AS EVIDENCE[28]

During the trial, certain testimony has been read to you by way of deposition or a video excerpt of such a deposition has been shown. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

---

[28] Adapted from 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.07, Instruction 74-14 (2015); 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* § 105.02 (6th ed. 2014).

DEFENDANTS' PROPOSED INSTRUCTION NO. 29.

INTERROGATORIES—IF APPLICABLE[29]

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

One cautionary word on this subject: while you may consider the interrogatory answer as evidence against the party who gave the answer, you may not consider the answer against any other party, nor may you consider the answer as evidence against the party who posed the interrogatory question. You may only consider the interrogatory answer as evidence against the party who gave the answer.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 29 as confusing to the jury and inapplicable to this case.]**

---

[29]     4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.07, Instruction 74-13 (2015).

[DEFENDANTS' RESPONSE:  Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 29 should be given only to the extent applicable to the case.]

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 30.</u>

<u>REQUESTS FOR ADMISSION—IF APPLICABLE</u>[30]

You have heard evidence in the form of certain "requests for admission" submitted by the parties. Requests for admission are written statements of fact submitted by one party prior to trial to the opposing party. The opposing party has a certain amount of time in which to respond to the requests, knowing that the failure to respond within that time will be deemed equivalent to admitting the truth of the statements contained in the requests.

Since the [party] failed to respond to the requests I have presented to you, you must assume the facts contained therein to be true. Therefore, you are not permitted to disregard or disbelieve the contents of these requests, even in light of any other evidence presented. The requests admitted in evidence are binding and conclusive on the [party] for the purposes of this trial.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the inclusion of Defendants' Proposed Instruction No. 30 as confusing to the jury and inapplicable to this case.]**

**[DEFENDANTS' RESPONSE: Defendants respond that, as indicated by the "If Applicable" annotation in the title of the proposed instruction, they agree that Defendants' Proposed Instruction No. 30 should be given only to the extent applicable to the case.]**

---

[30]  Adapted from 4-74 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 74.08, Instruction 74-15 (2015).

DEFENDANTS' PROPOSED INSTRUCTION NO. 31.

INTENT EVIDENCE—IF APPLICABLE[31]

The plaintiffs have offered evidence that they claim shows the defendants' intent to engage in anticompetitive conduct. Evidence of intent can aid you in determining whether conduct at issue is fairly characterized as exclusionary or anticompetitive. But if intent evidence does not shed light on the effect of specific conduct on competition, it is not relevant. That is because the antitrust laws are concerned with regulating anticompetitive conduct, not intentions. Evidence of a defendant's intent to do something unlawful, standing alone, cannot have any effect on competition. Intent evidence can be relevant only if there is anticompetitive conduct and anticompetitive effects that follow from that intent. Put another way, unless you find that objective evidence proves that the defendants engaged in conduct with an anticompetitive effect, it is irrelevant that the defendants intended to harm competitors.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 31 in its entirety. As this Court already determined, intent evidence is not irrelevant. (Dkt. No. 420 at 16 to 17). The cases Defendants cite do not support that proposition and this instruction, by suggesting otherwise, will confuse and mislead the jury. The jury at this point has neither heard substantive charges nor been instructed on the legal definition of the term "anticompetitive conduct."]**

**[DEFENDANTS' OBJECTION/RESPONSE: Defendants object to the admission of evidence of intent that is unconnected to anticompetitive conduct or effects during the class period. This is the standard this Court recognized in its ruling on summary judgment. If that evidence is admitted over Defendants' objection, the instruction noted above should be provided so that the jurors can be informed of the permissible uses of that evidence.]**

---

[31]    Adapted from *Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602–03 (1985); *K.M.B. Warehouse Distribs., Inc.* v. *Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995); *Viacom Int'l Inc.* v. *Tele-Commc'ns, Inc.*, No. 93 Civ. 5568 (LAP), 1994 WL 561377, at *5 (S.D.N.Y. Oct. 12, 1994) ("Whether TCI's participation in the Paramount bid is probative of TCI's intent to monopolize the cable television industry is not relevant, because it did not cause antitrust injury."); *Fishman* v. *Estate of Wirtz*, 807 F.2d 520, 542 (7th Cir. 1986) ("[I]f conduct is not objectively anticompetitive, the fact that it was motivated by hostility to competitors . . . is irrelevant." (internal quotation marks omitted)).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 32.-A.

CORPORATE PARTY INVOLVED[32]

        The fact that corporations are involved as the parties in this case must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company. With respect to a parent company, a parent corporation may be held liable with a subsidiary for the acts of a subsidiary company, where the parent company controls, directs, or encourages the subsidiary's conduct or the policies of the subsidiary.

**[DEFENDANTS' OBJECTION: Defendants object to the sentences of the instruction highlighted above as misstating applicable law. Plaintiffs cite *Reading International* for support, but they have taken the relevant language out of context. The quote they have cited from *Reading* concerns liability under Section 8 of the Clayton Act, and relates to the specific situation where the plaintiff is a competitor. *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 324 (S.D.N.Y. 2003) (*In the context of establishing liability under section 8 of the Clayton Act*, a distinguished judge of this Court has held that a**

---

[32]      Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* §§ 103.12, 103:31 (6th ed. 2014); 4-72 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 72.01, Instruction 72-1 (2015) (commentary) ("the notion of separate corporate existence will not be recognized where a corporation is organized or controlled"); *see Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004) ("When the parent controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act."); *see also Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 771-72 ("[T]here can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor. . . . [T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. . . . Antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 324-25 (S.D.N.Y. 2003) ("a plaintiff's 'competition with a subsidiary may be properly deemed to a parent corporation where the parent closely controls or dictates the policies of its subsidiary.'" (citations omitted)).

plaintiff's "competition with a subsidiary may be properly deemed to a parent corporation where the parent closely controls or dictates the policies of its subsidiary." (emphasis added)).

Plaintiffs also mistakenly rely on *Copperweld*, which is not about a parent corporation's liability for a subsidiary but is instead about the distinction between unilateral and concerted conduct for the purpose of determining whether there is a requisite "plurality of actors imperative for a § 1 conspiracy." *Copperweld Corp.* v. *Indep. Tube Corp.*, 467 U.S. 752, 769 (1984).

Finally, Plaintiffs cull one district court case, *Clear Channel*, from the District of Colorado for the proposition that "When the parent controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act." This is contrary to precedent of the Second Circuit and other courts in this district. S*ee, e.g., Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1458-61 (2d Cir. 1995) (even where (i) a parent corporation had control over its subsidiary's major expenditures, (ii) the parent corporation had a "dominating presence" on the subsidiary's board of directors, and (iii) the companies' advertising literature described the relationship between the two companies, there was no vicarious liability absent "undue domination or control" of the subsidiary by the parent and absent any element of injustice or unfairness in treating the corporation's separately); *Lowen* v. *Tower Asset Mgmt., Inc.*, 653 F. Supp. 1542, 1552 (S.D.N.Y. 1987) (considering factors such as "degree of injustice" and "fraudulent intent of the incorporators" in veil-piercing decision under federal law); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (declining to pierce the corporate veil because there was no evidence that the parent corporation "misused the separate identities of the entities" or used the subsidiaries "to perpetrate a fraud"). Likewise, district courts from circuits across the country have required a higher standard be met in order to impose liability upon a parent company for the actions of a subsidiary. *See, e.g., Regional Multiple Listing Serv. of Minn., Inc.* v. *Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1044-45 (D. Minn. 2014) (parent corporations liable for anticompetitive conduct only where the parent "actually engaged in anti-competitive conduct and [did not merely serve] as parent to its wholly-owned subsidiary"); *In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (a parent's authority over "'operational and budgeting decisions'" of the subsidiary constitutes "ordinary, indirect management" of a subsidiary and does not constitute direct involvement in anticompetitive conduct); *Black* v. *JP Morgan Chase & Co.*, 2011 WL 4102802, at *31-32 (W.D. Pa. Aug. 10, 2011) (more evidence required than merely that parent corporation gave "assent and approval to the subsidiary's conduct" or that the parent company "'merely acquiesced' in their subsidiaries' conduct"). This Court should reject Plaintiffs' poorly reasoned approach.]

[PLAINTIFFS' RESPONSE: The point highlighted above has been followed by numerous courts, including the Southern District of New York. The finding of corporate parent liability in the context of the antitrust cases Plaintiffs cite is distinct from a finding of liability through alter ego or veil piercing, which Defendants' cases refer to. *See, e.g., Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc*., 311 F. Supp. 2d 1048,

1069-74 (D. Colo. 2004) (analyzing direct liability of a parent company that controls, directs, or encourages the subsidiary's anticompetitive conduct as a separate basis for liability from alter ego liability).]

DEFENDANTS' PROPOSED INSTRUCTION NO. 32.-B.

CORPORATE PARTY INVOLVED[33]

The fact that the parties in this case are corporations does not mean that any party is entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 32-B to the extent it omits the next instruction in Sand concerning a corporation's responsibility for the acts and statements of its employees made within the scope of their employment. 4-72 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 72.01, Instruction 72-2 (2015). It further omits language concerning a parent company's shared liability with a subsidiary it controls, as noted in the commentary section in Sand. 4-72 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 72.01, Instruction 72-1 (2015) (commentary) ("the notion of separate corporate existence will not be recognized where a corporation is organized or controlled"). Plaintiffs respectfully propose the instruction provided at No. 32-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that Defendants' Proposed Instruction No. 32-B is taken from Sand's, which is based on Second Circuit precedent and used extensively within the Southern District of New York. Defendants' Proposed Instruction No. 32-B does not omit any language from Sand's Instruction 72-1. If Plaintiffs wish to propose an addendum of further passages from Sand's, they are free to do so.]**

---

[33] Adapted from 4-72 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 72.01, Instruction 72-1 (2015).

## B.    SUBSTANTIVE LAW

### PLAINTIFFS' PROPOSED INSTRUCTION NO. 33.-A.

### OVERVIEW OF THE ANTITRUST LAWS AND CLAIMS[34]

Plaintiffs assert that the Defendants violated the antitrust laws of the United States. The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace. The theory of these antitrust laws is that open competition will result in the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress for purchasers. Thus, the laws are intended to prevent exclusionary or anticompetitive conduct that serves to raise prices above competitive levels, restrict production, exclude competition or interfere with or control the market to the detriment of purchasers. The laws are also designed to prevent undue concentrations of economic power when such concentrations are achieved through conduct that is designed to stifle competition or exclude competitors. To secure for the public the advantages which follow from free competition, the law restricts the manner in which competitors may acquire and use economic power, and forbids certain conduct or practices which have the purpose or tendency of impeding or destroying competition. A monopolist is thus not free to take certain actions that a company in a competitive market, which does not have monopoly power, may take, because there is no market constraint on a monopolist's behavior. Accordingly, the use of exclusive dealing contracts and

---

[34]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at A-2, 2005 Edition (2005) (Sherman Act – General); Jury Instructions at 13, *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, No. 79-z-1012 (D. Colo.); *see United States v. Dentsply Int'l*, 399 F.3d 181, 187 (3d Cir. 2005) ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist."); *LePage's Inc. v. 3M*, 324 F.3d 141, 151-52 (3d Cir. 2003) ("[A] monopolist is not free to take certain actions that a company in a competitive [] market may take, because there is no market constraint on a monopolist's behavior."); *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 275 (2d Cir. 1979) (Requiring exclusive terms in a contract "is illegal when taken by a monopolist because it tends to destroy competition although in the hands of a smaller market participant it might be considered harmless, or even 'honestly industrial.'").

other practices which would be acceptable when used by a competitor not possessing monopoly power are not acceptable and are unlawful when used by a monopolist to acquire or maintain its monopoly.

Plaintiffs have brought essentially two antitrust claims against the Defendants that arise under federal law. Plaintiffs first claim that the Defendants willfully acquired and maintained a monopoly in the market for third-party in-store promotions by engaging in a wide array of anticompetitive conduct, including through the use of long-term, exclusive, and staggered contracts with retailers, and other predatory conduct aimed at the Defendants' potential or actual competitors in violation of Section 2 of the Sherman Act. Plaintiffs also claim that the Defendants' agreements with retailers constituted unlawful restraints of trade in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act.

As a result of the Defendants' unlawful conduct, Plaintiffs claim that the Defendants were able to charge Plaintiffs unlawfully high prices during the damages period.

I will now instruct you on the substantive law on each of these claims.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' proposal which, aside from two sentences, is not based on the cited model. It also injects advocacy in what should be a brief, neutral statement of the case and of applicable law.]**

**[PLAINTIFFS' RESPONSE: Plaintiffs respond that the charge provided at Instruction No. 33-A accurately provides an overview of antitrust law. In light of the evidence the parties intend to present at trial and the central role of Plaintiffs' exclusive dealing claim, the jury charge appropriately states that a monopolist may not engage in the same activities as a non-monopolist under the antitrust laws.]**

## OVERVIEW OF THE ANTITRUST LAWS AND CLAIMS

The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace. The antitrust laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[35]

The Plaintiffs are a class of consumer packaged goods companies, which you have heard referred to at this trial as "CPGs." They have sued the Defendants, News Corporation, News America Inc., News America Marketing FSI L.L.C., and News America Marketing In-Store Services L.L.C., under federal antitrust laws.

The Plaintiffs accuse the Defendants of violating the antitrust laws in two ways. First, the Plaintiffs claim that the Defendants willfully acquired and maintained a monopoly in what the Plaintiffs call the market for third-party in-store promotions through the Defendants' alleged use of long-term, exclusive, and staggered contracts with retailers, and other predatory conduct aimed at potential or actual competitors. Second, Plaintiffs allege that the Defendants entered into agreements with retailers that unlawfully restrained trade. Those claims are set forth in two counts, which I will describe to you in greater detail. The Plaintiffs claim that, as a result of the alleged misconduct, they were overcharged for in-store promotions from April 26, 2009 through today, except for Dial and H.J Heinz, which claim to have been overcharged since April 5, 2008.

The Defendants deny these allegations. They contend that nearly all of their contracts with retailers were available to competitors during the relevant time period and that no

---

[35]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases A-2 (2005).

one was excluded from competing for them or from purchasing in-store promotions from competitors. The Defendants submit that the advertising market is fiercely competitive, pointing out that they have lost retailers to competitors and that their prices have fallen over time. In the Defendants' view, product manufacturers have many advertising choices and do not have to rely solely on in-store advertising to reach their customers. The Defendants attribute their success in this business to the quality of their products, superior customer services, lower prices, high installation compliance rates, and other efficiencies in their business model, as opposed to anti-competitive practices.

As the jury, it is your job to determine whether the defendants have, in fact, violated the federal antitrust laws in the manner that the plaintiffs allege and, if you find that the defendants have done so, to determine whether the plaintiffs have suffered a financial injury and are entitled to damages as a result.[36]

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 33-B. The charge is misleading in that it fails to instruct the jury on the key point that a monopolist's conduct with respect to exclusive dealing is treated differently under the antitrust laws, from that of a non-monopolist. Plaintiffs respectfully propose the instruction provided at No. 33-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction is a fair and accurate statement of this case and applicable law, and further note that Plaintiffs have not identified a substantive basis for their objection.]**

**[STATE LAW CLAIMS: If the state law claims are not dismissed from this action, the parties will propose instructions that address those claims.]**

---

[36]     Adapted from 3A Fed. Jury Prac. & Instr. § 150:1 (6th ed.).

DEFENDANTS' PROPOSED INSTRUCTION NO. 34.

MULTIPLE CLAIMS AND MULTIPLE PARTIES[37]

This case involves multiple claims, multiple plaintiffs, and multiple defendants. Your duty as jurors is to give separate consideration to each claim, each plaintiff, and each defendant in this case.

The Plaintiffs have brought two counts, commonly referred to as claims, against the Defendants. One of those counts allege monopolization, and the other count alleges exclusive dealing. Both counts arise under federal law. You must consider each of those counts separately and not allow your decision on whether one count has been proven to influence your decision about the other counts.

There are also four Defendants in this case. Each Defendant is entitled to a fair consideration of the evidence and an independent determination of whether the Plaintiffs have proved their case against that particular Defendant. Keep in mind that not all of the evidence you heard related to or was admissible against each separate Defendant. Accordingly, if you find that one of the Defendants is liable, it does not automatically follow that any of the other Defendants is also liable.

Likewise, there are eight named Plaintiffs in this case. Each of them bears a separate burden to prove their case with respect to each of the counts and each of the Defendants. Even if you find that one of the named Plaintiffs has proved its case against one or more of the Defendants, that should not influence your decision as to the other named Plaintiffs. The

---

[37] Adapted from Seventh Circuit Model Jury Instructions (Civil), Instruction 1.25 (2010); 3 Fed. Jury Prac. & Instr. §§ 103:10, 103:14 (6th ed.); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008) ("The ability to calculate the aggregate amount of damages . . . does not absolve plaintiffs from the duty to prove each [class member] was harmed by the defendants' practice." (internal quotation marks and citation omitted)).

adequacy of proof as to each of the named Plaintiffs must be considered separately when you consider the claims brought by named Plaintiffs in their individual capacities.

Finally, there are the over [600] members of the plaintiff class.  You cannot find liability for that class unless you are satisfied that at least one of the named Plaintiffs has proved each element of the count you are considering by a preponderance of the evidence, that one or more of the named Plaintiffs was injured, that the class members also suffered the same type of injury from the same conduct, and that all or substantially all the class members were actually harmed by the conduct alleged in that count.  I will provide more detailed instructions on this point later in my instructions.

**[PLAINTIFFS OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 34 in its entirety on the ground that it is repetitive of the descriptions of the parties and claims provided at Instruction No. 1, Plaintiffs' Proposed Instruction No. 33-A, and Defendants' Proposed Instruction No. 33-B.  It is also repetitive of the extensive charges provided below concerning injury and damages.**

**With respect to the language highlighted above, Plaintiffs further object on the ground that Defendants have provided no legal basis for the proposition that each plaintiff in a class action must prove each element of a claim against the Defendants.  The charge is unsupported by applicable law and would destroy the purpose of bringing this lawsuit on a class basis, which permits the class to present common evidence in support of its claims.  The charge is confusing and misleading since the jury is not instructed on what a named vs. unnamed plaintiff is and suggests that each class member, i.e., all [600] plaintiffs, must prove each element of each claim.**

**To the extent the Court permits a charge concerning the Defendants' liability, the following instruction should be included:**

> **In antitrust cases, when a parent company controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent company may be held directly liable as a single enterprise with the subsidiary.  Therefore, to the extent you find that any of the Defendants are separate and distinct entities from Defendant News Corp., News Corp. is equally liable under the antitrust laws if you determine that it knew of and controlled the policies and activities of its subsidiaries.[38]]**

---

[38] *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns., Inc.*, 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004) ("When the parent controls, directs, or encourages the subsidiary's

**[DEFENDANTS' RESPONSE: Defendants respond that Plaintiffs have sued Defendants in their individual capacity, as well as class representatives, and therefore each Plaintiff carries a separate burden of proving each of the required elements for itself.]**

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' proposed additional highlighted language because it incorrectly states applicable law on corporate liability.  As Defendants stated in their objection to Plaintiffs' Proposed Instruction No. 34, Plaintiffs have not identified any binding authority that, when taken in proper context, supports their proposed standard for the liability of a parent company for actions of its subsidiary. The overwhelming weight of authority imposes a much higher standard for disregarding the corporate form.]**

---

anticompetitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act."); *see also Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 771-72 ("[T]here can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor. . . .  [T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. . . .  Antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 324-25 (S.D.N.Y. 2003) ("a plaintiff's 'competition with a subsidiary may be properly deemed to a parent corporation where the parent closely controls or dictates the policies of its subsidiary.'" (citations omitted)).

COUNT ONE:  MONOPOLIZATION – ELEMENTS [39]

Plaintiffs' first federal cause of action is a claim of unlawful monopolization under Section 2 of the Sherman Act.  Plaintiffs contend that the Defendants willfully acquired or maintained a monopoly in the market for third-party in-store promotions by engaging in anticompetitive conduct that was intended to and did suppress competition in that market and allowed the Defendants to charge Plaintiffs and other CPGs unlawful monopoly pricing.

In order to prevail on this claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, that the market for the sale of third-party in-store promotions in the United States is the relevant market;

**Second**, that the Defendants possessed monopoly power in that market;

**Third**, that the Defendants willfully acquired or maintained that monopoly power in that market by engaging in anticompetitive conduct; and

**Fourth**, that Plaintiffs suffered antitrust injuries in their business or property as a result of the Defendants' anticompetitive conduct.

If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence, then you must find for Plaintiffs and against the Defendants on this claim.  I will now explain each of these elements to you.

**[DEFENDANTS' OBJECTION:  Defendants object to Plaintiffs' Proposed Instruction 35-A as failing to distinguish between Defendants or Plaintiffs and clumps them together. Additional language in Defendants' Proposed Instruction No. 35-B tailors these elements to the individual and class claims against multiple Defendants.**

**[PLAINTIFFS' RESPONSE:  The instruction above is taken directly from the ABA.]**

---

[39]     Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at C-2 to C-3, 2005 Edition (2005) (Monopolization – General).

DEFENDANTS' PROPOSED INSTRUCTION NO. 35-B.

COUNT ONE: MONOPOLIZATION – ELEMENTS[40]

Plaintiffs' first federal cause of action is a claim of unlawful monopolization under Section 2 of the Sherman Act. Plaintiffs contend that the Defendants willfully acquired or maintained a monopoly in the market for third-party in-store promotions by engaging in anticompetitive conduct that was intended to and did suppress competition in that market and allowed the Defendants to charge Plaintiffs and other CPGs unlawful monopoly pricing.

In order to prevail on this claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, that the market for the sale of third-party in-store promotions in the United States is the relevant market;

**Second**, that the Defendant you are considering possessed monopoly power in that market;

**Third**, that the Defendant you are considering willfully acquired or maintained that monopoly power in that market by engaging in anticompetitive conduct, as opposed to through superior product, business acumen, or historical accident;[41] and

**Fourth**, that the Plaintiff you are considering was injured in its business or property as a result of one or more of the Defendants' actions.

If you find that a named Plaintiff has failed to prove any of these elements as to a particular Defendant, then you must find for that Defendant and against that Plaintiff, in its

---

[40]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at C-2 to C-3, 2005 Edition (2005) (Monopolization – General).

[41]    *United States* v. *Grinnell Corp.*, 384 U.S. 563, 570–71 (1966) (a finding of monopoly under Section 2 requires "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident").

individual capacity, on the monopolization claim.  If you find that a Plaintiff  has proved each of these elements by a preponderance of the evidence as to a particular Defendant, then you must find for that Plaintiff in its individual capacity and against that particular Defendant on this monopolization claim.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the sections highlighted above on the ground that it departs significantly from the model charge provided by the ABA on the elements of a monopolization claim.  Defendants provide no legal basis for the proposition that each plaintiff in a class action must prove each element of a claim against the Defendants.  The charge is unsupported by applicable law and is confusing and misleading since it suggests that each class member, i.e., all [600] plaintiffs, must prove each element of each claim.  Plaintiffs respectfully propose the instruction provided at No. 35-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the highlighted sections are necessary because they clarify how the jury is to appropriately apply the law in this action that is brought on behalf of the Plaintiffs individually and as class representatives against multiple Defendants.]**

<u>PROPOSED INSTRUCTION NO. 36.</u>

<u>COUNT ONE: MONOPOLIZATION – FIRST ELEMENT – RELEVANT MARKET</u>[42]

        In order to establish a claim of unlawful monopolization, Plaintiffs must first prove by a preponderance of the evidence the existence of a relevant market, which is made up of two aspects, that is, a relevant product market and a relevant geographic market. You need only concern yourself with the first aspect for purposes of this trial. A determination of the relevant market is a common issue for both of Plaintiffs' antitrust claims, and my instructions on the relevant market apply to each of Plaintiffs' claims.

        The basic idea of a relevant product market is that the products within it are reasonable substitutes from a buyer's point of view. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This does not mean that products must be identical to be in the same relevant market. It means that, as a matter of practical fact and the actual behavior of buyers, the products must be reasonable substitutes for the buyer's needs. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products would be in the same relevant product market.[43]

**[PLAINTIFFS' OBJECTION: Plaintiffs object to the language highlighted above on the ground that it oversimplifies and misstates the relevant analysis involved in finding a relevant product market.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the highlighted language, which is taken from the ABA model instructions, provides an important illustrative example to help the jury understand the concept of a relevant market.]**

---

[42]    Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instruction 80-5 (2015).

[43]    ABA Model Jury Instructions in Civil Antitrust Cases C-7 (2005).

One way you may be able to tell whether products are reasonable substitutes for each other is considering whether changes in the price of one product have fairly direct and substantial effects upon the prices or sales of the other product.  If so, the products are in the same market.  Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that a substantial number of consumers would switch, then you may conclude that the products are in the same product market.[44]  You may also consider how people in the industry and the public at large view the products; whether the products have the same or similar characteristics or uses; and whether they are distributed and sold by the same kinds of distributors or dealers.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the language highlighted above on the ground that it is confusing to the jury and redundant of the preceding sentences.]**

**[DEFENDANTS RESPONSE:  Defendants respond that the above highlighted language is taken from the ABA model instructions. These instructions are not redundant of preceding sentences and provide important guidance to help the jury understand the concept of a relevant market.]**

In sum, to determine the relevant product market, you must decide which products compete with each other.  This is a practical determination.  Products do not have to be identical to be in the same relevant market, but they must be substantially similar in the respects I have mentioned to compete meaningfully with each other.

Again, the Plaintiffs bear the burden of proving a relevant market to you.  They describe the relevant market as "the market for third-party in-store promotions that are placed in retail stores such as supermarkets" in the United States.  By "third party," Plaintiffs refer to

---

[44]     ABA Model Jury Instructions in Civil Antitrust Cases C-7 (2005).

independent companies that act as middlemen between retailers and CPGs. Excluded from that definition are promotions installed by retailers themselves in their retail stores advertising CPG products, and promotions installed by CPG companies or their brokers or agents in the retail stores, as well as promotions like coupons that are provided to customers at checkout.

The Defendants disagree, arguing that the Plaintiffs have failed to prove the existence of a valid relevant market. The Defendants contend, among other things, that the Plaintiffs' market definition is too narrow because it excludes forms of in-store and out-of-store promotions that compete with those sold by the Defendants, including, most prominently, promotions placed by the retailers or CPGs themselves. It also excludes other forms of advertising, including radio, television, print ads, coupon inserts into newspapers, and direct mail coupons.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the language highlighted above on the ground that it is one-sided, an improper comment on the evidence, and unnecessary.]**

**[DEFENDANTS' RESPONSE: Defendants respectfully propose the addition of the highlighted text, which will aid the jury in understanding the relevant markets proposed by the parties.]**

Plaintiffs must prove by a preponderance of the evidence that the market for the sale of third-party in-store promotions in the United States is the relevant market.

PLAINTIFFS' PROPOSED INSTRUCTION NO. 37.-A.

EXISTENCE OF MONOPOLY POWER[45]

If you find that Plaintiffs have proven the existence of a relevant market, then you must determine whether the Defendants had monopoly power in that market. Monopoly power is the power to control prices or to exclude competition in the relevant market.

To establish this element of possession of monopoly power, Plaintiffs need not prove that prices were actually raised above competitive levels or that competition actually was excluded. Plaintiffs must prove only that the Defendants had the power to raise prices or exclude competition.

You can infer the existence of monopoly power from the Defendants' predominant share of the market and the size of that share is a primary factor in determining whether monopoly power exists. A share of the market above 70% is usually strong evidence of monopoly power.

Another factor is the number and size of the Defendants' competitors. If these are few, small, or weak, so that they do not offer substantial competition to the Defendants in the relevant market, this may tend to indicate that the Defendants have monopoly power. If, on the other hand, there are numerous, large, and vigorous competitors in that market, this may be evidence that the Defendants do not have monopoly power. Further, increasing competition may

---

[45]     Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instructions 80-4, 80-7 (2015); ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at C-16 to C-19, 2005 Edition (2005) (Existence of Monopoly Power – Indirect Proof); *see McWane, Inc. v. FTC*, 783 F.3d 814, 830 (11th Cir. 2015) ("Courts regularly ask whether the firm has a predominant market share" to determine monopoly power. (citation omitted)); *U.S. v. Microsoft*, 253 F.3d 34, 51 (D.C. Cir. 2001) ("monopoly power may be inferred from a firm's possession of a dominant share of a relevant market that is protected by entry barriers"); *Dial Corp. v. News Corp.*, 13-cv-06802-WHP (S.D.N.Y. Jan. 15, 2016), Dkt. 420 at 15 ("A share above 70% is usually strong evidence of monopoly power." (citation omitted)).

suggest the absence of monopoly power, while decreasing competition may suggest that monopoly power exists.

Finally, you may also consider whether there are barriers to entry in the relevant market facing the Defendants' competitors. Barriers to entry make it difficult for new competitors to enter or expand in the relevant market in a meaningful and timely way. Evidence of low or no entry barriers may be evidence that the Defendants do not have monopoly power, regardless of the Defendants' market share, because new competitors could enter or expand easily if the Defendants attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that the Defendants have monopoly power.

**[DEFENDANTS' OBJECTION: Defendants object to this proposed instruction for failing to thoroughly explain considerations of market characteristics necessary to determine whether any of the Defendants possessed monopoly power in the relevant market.]**

**[PLAINTIFFS' RESPONSE: The charge sufficiently instructs the jury to consider the market characteristics relevant to this case, including the market share, the number and size of competitors, the depth of competition, and the existence of barriers in the relevant market.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 37-B.</u>

<u>COUNT ONE:  MONOPOLIZATION – SECOND ELEMENT -- MONOPOLY POWER</u>

The second element the Plaintiffs must prove by a preponderance of the evidence in order to prevail on any of their claims is that the Defendant you are considering had monopoly power, sometimes referred to as "substantial market power," in the relevant market.[46]

Monopoly power is the power to dominate or control a market.  This means the power to control prices or to exclude competition in the relevant market.[47]  It is the power to force a purchaser to do something the purchaser would not do in a competitive market.[48]  More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.[49]

The power to control prices is simply the power of a company to establish appreciably higher prices for its goods than those charged by competitors for equivalent goods without suffering a substantial loss of business to competitors.  Thus, if a company that has raised prices eventually has to lower its prices to the level of prices charged by its competitors, it may not have monopoly power in the sense of power to control prices.[50]

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from that market or by preventing new competition from entering that market.  In other words, the power to exclude competition is the power to place major barriers in the way of other companies trying to remain in or enter the particular area

---

[46]     *See Tops Markets, Inc.* v. *Quality Markets, Inc.*, 142 F.3d 90, 97–98 (2d Cir. 1998) ("Monopoly power, also referred to as market power, is 'the power to control prices or exclude competition.'" (citation omitted)).

[47]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-4 (2015).

[48]     *Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992).

[49]     ABA Model Jury Instructions in Civil Antitrust Cases C-4 ( 2005).

[50]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-22 (2015).

of trade and compete for customers. It may be shown by evidence of a company's reducing or restricting the share of the market held by competitors by means other than the normal process of competition.[51]

To establish the possession of monopoly power, the Plaintiffs need not prove that prices were actually raised or that competition actually was excluded. The Plaintiffs must prove only that the Defendant you are considering had the power to raise prices or exclude competition.[52] In this case, the power to control prices relates not only to the ability to control prices charged to CPGs but also to the ability to control prices paid for retailers' shelf space.

To conclude that the Defendant you are considering had monopoly power, you need not find that that Defendant could sell at any price it desired or that it faced no competition whatsoever. A company may face some competition in the relevant market and still have monopoly power. However, if you find that the Defendant you are considering could not control prices or exclude competition, then you must conclude that that Defendant did not have monopoly power.[53]

Market Share. One factor from which the existence of monopoly power may be found is a company's share of the relevant market. For example, where a company has less than a 50% share of a particular market, its market share alone does not permit you to find that it had monopoly power. (However, a market share of less than 50% does not preclude a finding of monopoly power if there is other evidence indicating that the defendant possessed monopoly power.) But if a company has more than 65% of a market, you may find that it had monopoly

---

[51]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-22 (2015).
[52]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-4 (2015).
[53]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-4 (2015).

power; and a market share of 85% or higher is strong evidence of the existence of monopoly power.[54]

      <u>Barriers to Entry</u>.  You may also consider whether there are barriers to entry into the relevant market.  Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).[55]  When determining whether an entry barrier exists, you should consider the frequency with which competitors are able to compete for business in the relevant market.  Losing a free and fair competition is not a barrier to entry that is of concern to the antitrust laws.

      Evidence of low or no entry barriers may be evidence that a company does not have monopoly power, regardless of that company's market share, because new competitors could enter easily if that company attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that the company has monopoly power.[56]

      <u>Strength of Competitors</u>.  You may also consider whether a company's competitors are capable of effectively competing.  In other words, you should consider whether the financial strength, market shares, and number of competitors act as a check on a company's ability to price its products.  If a company's competitors are vigorous or have large or increasing market shares, this may be evidence that the company lacks monopoly power.  On the other

---

[54] 4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 80.01, Instruction 80-6 (2015).
[55] ABA Model Jury Instructions in Civil Antitrust Cases C-16 (2005).
[56] ABA Model Jury Instructions in Civil Antitrust Cases C-16 (2005).

hand, if you determine that a company's competitors are weak or have small or declining market shares, this may support an inference that the company has monopoly power.[57]

      Negotiating Power.  You may also consider the sophistication and strength of buyers and other market participants.  If you decide that buyers and/or other counterparties in the relevant market are sophisticated businesses with power in negotiating contracts, that factor may offset any monopoly power a company might otherwise have.  If a plaintiff cannot show that a defendant had the power to force buyers and/or other counterparties to enter into contracts they did not want, this would be an indication of a defendant's lack of market power.

      Profit Margins. The ability to earn high profit margins or a high rate of return does not necessarily mean that a defendant has monopoly power.  Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing.  However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power.  By contrast, evidence that a defendant would lose a substantial amount of sales if it raised prices substantially, or that a defendant's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that a defendant does not have monopoly power.[58]

      If you find that Plaintiffs have proved by a preponderance of the evidence that one or more of the Defendants had monopoly power in the relevant market, then you should continue to evaluate the remainder of Plaintiffs' claims as to that Defendant or Defendants alone.  If, however, you find that Plaintiffs have failed to prove by a preponderance of the evidence that

---

[57] ABA Model Jury Instructions in Civil Antitrust Cases C-16 (2005).
[58] ABA Model Jury Instructions in Civil Antitrust Cases C-23 (2005).

any of the Defendants had monopoly power in the relevant market, then you must find in favor

of Defendants on all of Plaintiffs' claims.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 37-B on the ground that it contains factors inapplicable to this case.  Plaintiffs respectfully propose the instruction provided at No. 37-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction is a fair an accurate statement of law that is well-supported by the cited authority and will aid jurors in their determination of whether any of the Defendants had monopoly power in the relevant market.]**

PLAINTIFFS' PROPOSED INSTRUCTION NO. 38.

INTENT TO OBTAIN OR MAINTAIN MONOPOLY POWER[59]

If you find that Plaintiffs have proven the existence of a relevant market and that the Defendants possessed monopoly power in that market, then you must determine whether Plaintiffs have proved, by a preponderance of the evidence, that the Defendants knowingly acquired or maintained its monopoly power by means other than competition on the merits. To prove unlawful monopolization, Plaintiffs must prove that the Defendants engaged in anticompetitive conduct either with the intent to dominate the relevant market, or knowing that such conduct would probably secure or maintain the Defendants' monopoly power.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction No. 38. Defendants consider an instruction on intent to be unnecessary and not supported by applicable law. If one is supplied, however, it should not be presented as a free-standing instruction unlinked to an element and stripped of context, as in Plaintiffs' proposal. It should also include cautionary language that evidence of intent must not be viewed as a substitute for evidence of anti-competitive conduct.]**

**[PLAINTIFFS' RESPONSE: The above instruction is taken directly from Sand and comports with both parties' instructions on the elements of this claim, which require the Defendants to have acted willfully.]**

---

[59]     Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instruction 80-11 (2015).

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 39.-A.</u>

<u>ANTICOMPETITIVE CONDUCT DEFINED</u>[60]

Anticompetitive acts are acts that have the effect of preventing or excluding competition or frustrating or hurting the efforts of other firms to compete for customers within the relevant market. It is conduct that does not benefit consumers by allowing better pricing or making a better product or service available, or in other ways, but instead has the effect of hurting competition. To be anticompetitive, it is not necessary that such conduct be unlawful in and of itself, so long as it has the effect of achieving or maintaining the Defendants' monopoly power. However, even a company that has lawfully acquired monopoly power may not use that power to maintain or tighten its hold on the market, to foreclose competition, to gain a competitive advantage, or to destroy a competitor. Examples of anticompetitive conduct include predatory practices that advance a defendant's competitive position, not by improving its market performance or pricing, but by injuring actual or potential competitors by driving them out of the market. Another example of anticompetitive conduct is when a defendant sets out to increase barriers to entry which suppress or exclude competition. Monopoly power may be acquired or maintained through the erection of barriers that prevent competitors' entry into the market.

In evaluating this claim, you may consider events occurring prior to the damages period. Thus, it is not necessary for the anticompetitive acts to have occurred during the relevant damages period to sustain a claim of monopolization.

---

[60] Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instruction 80-12 and comment to 80-12 (2015); *see United States v. Dentsply Int'l*, 399 F.3d 181, 196 (3d Cir. 2005) ("While [a court] may assume that [defendant] won its preeminent position by fair competition, that fact does not permit maintenance of its monopoly by unfair practices."); *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 296 (2d Cir. 1979) ("The taint of an impure origin does not dissipate after four years if a monopolist continues to extract excessive prices because of it."); *Dial Corp. v. News Corp.*, 13-cv-06802-WHP (S.D.N.Y. Jan. 15, 2016), Dkt. 420 at 18 ("anticompetitive conduct before the limitations period may be material to a showing that Plaintiffs were injured during the damages period").

It is important to remember that not all behavior that injures competition is anticompetitive. Every business has the right to increase its success by using legitimate good business practices, such as increasing efficiency or offering a superior product. A monopoly achieved or maintained as a result of such legitimate good business practices is not unlawful.

If a business does poorly because it is faced with legitimate, vigorous competition, this is not unlawful. However, if the harm to competitors and competition is caused by something other than the Defendants' success in competing on the merits of its products or operations – in other words, if the harm is caused mainly by the Defendants' efforts to injure or block competition – then you may find that the Defendants' conduct was anticompetitive.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction 39-A for failing to provide jurors with a thorough, fair, and accurate statement of applicable law.]**

**[PLAINTIFFS' RESPONSE: The language in the above instruction is taken directly either from Sand and/or this Court's decision, Dkt. No. 420 at 18.]**

COUNT ONE: MONOPOLIZATION – THIRD ELEMENT – OVERVIEW OF
ANTICOMPETITIVE CONDUCT

The third element that the Plaintiffs must prove by a preponderance of the

evidence is that the Defendant you are considering willfully acquired or maintained monopoly

power in the relevant market through anticompetitive conduct, as opposed to through superior

product, business acumen, or historical accident.[61]

Mere possession of monopoly power, if lawfully acquired, does not violate the

antitrust laws.  A monopolist may compete aggressively without violating the antitrust laws, and

a monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's

conduct becomes unlawful only where it involves anticompetitive conduct.[62]

Anticompetitive conduct is conduct that has the effect of preventing or excluding

competition or frustrating or hurting the efforts of other firms to compete for customers within

the relevant market.  It is conduct that does not benefit consumers by making a better product or

service available, or in other ways, but instead has the effect of hurting competition.  To be

anticompetitive, it is not necessary that such conduct be unlawful in and of itself, so long as it

has the effect of achieving (or maintaining) monopoly power.[63]

However, it is important to remember that not all behavior that injures

competitors is "anticompetitive."  Firms do not violate the antitrust laws by meeting customers'

---

[61]     ABA Model Jury Instructions in Civil Antitrust Cases C-26 (2005); *United States* v. *Grinnell Corp.*, 384 U.S. 563, 570–71 (1966) (a finding of monopoly under Section 2 requires "the willful acquisition  or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident").

[62]     *Verizon Commc'ns Inc.* v. *Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 407 (2004) ("[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*.").

[63]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-12 (2015).

demand.  Every business has the right to increase its success by using legitimate good business practices, such as increasing efficiency or offering a superior product.  A monopoly achieved (or maintained) as a result of such legitimate good business practices is not unlawful.[64]

It can sometimes be difficult to determine whether an act is a good business practice or an anticompetitive action.  Some conduct may both help customers and hurt competitors.  If this seems to be the case to you, you must ask yourselves whether the conduct hurts competitors precisely because it appeals to consumers.  That is, you must ask yourselves whether the harm to competitors was caused by customers' preference for a defendant's products.  If it was, then the conduct involved is not anticompetitive because the goal of the antitrust laws is to protect competition itself rather than any particular competitor's right to succeed.[65]

So, if a business does poorly because it is faced with legitimate, vigorous competition, this is not unlawful.  However, if the harm to competitors is caused by something other than a defendant's success in competing on the merits of its products and operations—in other words, if the harm is caused mainly by a defendant's deliberate efforts to injure or block competition—then you may find that the conduct was anticompetitive.[66]  Keep in mind that harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.[67]

---

[64]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-12 (2015).
[65]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-12 (2015).
[66]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-12 (2015).
[67]     ABA Model Jury Instructions in Civil Antitrust Cases C-26 (2005).

In order to prove that a defendant achieved (or maintained) its monopoly through anticompetitive conduct, a plaintiff does not have to show that the monopoly was gained (or maintained) solely by anticompetitive conduct. A plaintiff may meet its burden by proving, by a preponderance of the evidence, that the anticompetitive conduct played a significant or substantial role in obtaining (or maintaining) the monopoly.[68]

In other words, an isolated or trivial anticompetitive episode will not make a defendant liable for monopolization if any monopoly power that a defendant possessed was otherwise gained, retained and used in a "good business" fashion. On the other hand, a plaintiff is not required to prove every one of its specific allegations of anticompetitive behavior. Once again, you have a problem which requires your exercise of judgment and a thorough and sensitive weighing of the evidence. In the end, you must decide whether the Plaintiffs have carried their burden of proving not merely an isolated or occasional anticompetitive act, but that the Defendant you are considering engaged in a substantial or significant amount of anticompetitive conduct.[69]

Keep in mind that a company may not be found to have willfully acquired (or maintained) monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of natural advantages, such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or simply because the market is so limited that it is impossible to meet the cost of production except by a plant large enough to supply the whole demand. The acts or practices that result in monopoly power must represent

---

[68]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-13 (2015).
[69]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-13 (2015).

something more than the conduct of business that is part of the normal competitive process.[70]

They must represent conduct that has made it very difficult or impossible for competitors to

compete and that was taken for no legitimate business reason.[71]

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 39-B in its entirety.  The instruction does not comport with that set out in Sand.  It further fails to inform the jury that lawfully acquired monopoly power violates the antitrust laws if that power is used to maintain the monopolist's hold on the market or to gain a competitive advantage in the market.  The instruction fails to inform the jury that events occurring prior to the damages period may be considered, as so held by this Court.  Plaintiffs respectfully propose the instruction provided at No. 39-A instead.]**

**[DEFENDANTS' RESPONSE:  Defendants respond that controlling case law provides that mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws.  Contrary to Plaintiffs' suggestion, the instruction does not suggest that the jury's consideration of conduct is limited to the conduct occurring in the damages period.  Defendants also point out that their instruction is fully supported by the cited authority.]**

---

[70]     4-80 Leonard B. Sand, Modern Federal Jury Instructions – Civil ¶ 80.01,  Instruction 80-15 (2015).

[71]     ABA Model Jury Instructions in Civil Antitrust Cases C-26 (2005).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 40.-A.

ANTICOMPETITIVE CONDUCT – SPECIFIC ACTS[72]

In this case, Plaintiffs claim that the Defendants gained and repeatedly abused its

dominant position in the relevant market by frustrating actual and potential rivals by, among

other things:

- Hacking into competitors' computers to acquire sensitive sales information;

- Defacing competitors' advertisements in stores and using the photos of these damaged advertisements in sales pitches to CPGs and retailers;

- Spreading false information about its competitors to CPGs and retailers;

- Locking up key retailers through long term, exclusive contracts, thereby preventing competitors from reaching a critical mass;

- Renewing retailer contracts before their termination dates;

- Staggering the end dates of key retailer contracts; and

- Offering predatory bids or oversized cash guarantees to retailers.

In assessing whether the Defendants engaged in anticompetitive conduct, you

should consider the overall combined effect of the Defendants' actions. Thus, you may not limit

your consideration to one instance of alleged anticompetitive conduct, without considering the

overall combined effect of all of the Defendants' anticompetitive actions, including evidence of

their intent.

---

[72] *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (Intent evidence is "relevant to the question whether the challenged conduct is fairly characterized as exclusionary or anticompetitive" and "no monopolist monopolizes unconscious of what he is doing."); *New York ex rel. Schneiderman v. Actavis*, 787 F.3d 638, 653-54 (2d Cir. 2015) (considering the "overall effect" of conduct to determine whether it is anticompetitive; *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) ("courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation"); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) ("Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct.").

**[DEFENDANTS' OBJECTION:  Defendants object to this instruction for failing to adequately inform jurors of controlling legal standards for the specific enumerated acts.]**

**[PLAINTIFFS' RESPONSE:  The controlling legal standard for the enumerated acts is sufficiently discussed in the instructions immediately preceding and following this one: Plaintiffs' Proposed Instruction Nos. 39-A and 41.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 40-B.</u>

<u>COUNT ONE:  MONOPOLIZATION – THIRD ELEMENT – SPECIFIC
ANTICOMPETITIVE ACTS</u>[73]

The Plaintiffs accuse the Defendants of engaging in four different forms of
anticompetitive conduct.

**Alleged Exclusive Dealing.**  The Plaintiffs contend that the Defendants entered
into exclusive dealing arrangements with retailers that unreasonably restrained trade.  This
allegation also forms the basis for a separate claim in this case, and I will instruct you on the
exclusive-dealing claim in just a moment.  All that I need to say now is that you many find the
alleged contracting practices to be anticompetitive conduct for the purposes of Count One only if
you also find that those practices constitute exclusive dealing as alleged in Count Two.[74]

**Overpayments to Retailers.**  The Plaintiffs also contend that the Defendants
overpaid retailers for access to their stores.  This is an allegation of "predatory bidding," which
means paying a price for an input that causes costs to exceed revenue and drives competition
from the market with a dangerous probability that, once competition has been substantially
lessened or eliminated, the predatory bidder will make up lost profits by raising prices on
consumers or decreasing its payments to suppliers.  In order to prevail on a predatory bidding
claim, a plaintiff must prove that the bid in question caused the cost of the relevant product or
service to rise above the revenues generated from that product or service.  A plaintiff must also

---

[73]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases C-26, C-47, C-50,
C-55, C-58 (2005).

[74]     *See* ABA Model Jury Instructions in Civil Antitrust Cases C-26 (2005) ("monopolist's
conduct only becomes unlawful where it involves anticompetitive acts.")

prove that there was a dangerous probability that the defendant would later recoup their losses on the predatory bids.[75]

To determine whether the bids at issue here exceeded revenue, you must consider whether those bids caused the costs associated with placing in-store promotions to rise above the revenues generated from placing those promotions. The law does not prohibit a firm from offering high bids that are profitable to it, even if the firm expects that all of its competitors will be unable to match its high bids, and that eventually they will go out of business. Offering high, but profitable, bids is a legitimate practice, and it is one of the beneficial results of the competitive process.[76] Increasing bids to win inputs away from other firms in the market, standing by itself, is indicative of healthy competition and should not be confused with "predatory" bidding. That is why a bid is predatory only if it raises a firm's costs above the corresponding revenue. In addition, a bid is not predatory if the seller believed, at the time the bid was made, its revenues would exceed both the bid and the other relevant costs. If you find either that the bid did not cause the relevant costs to rise above revenue or that the bid was not expected to have that effect, you may not find that the defendants engaged in predatory bidding.[77]

Even if you find that a bid was expected to be unprofitable, there is no predatory bidding without a dangerous probability of recoupment. To prove a dangerous probability of recoupment, a plaintiff must meet a two-prong test. First, the plaintiff must demonstrate that the unprofitable bidding scheme was capable of driving the defendant's competitors, or at least the

---

[75]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases C-47 (2005); *Weyerhaeuser Co.* v. *Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 325 (2007) ("[O]nly higher bidding that leads to below-cost pricing in the relevant output market will suffice as a basis for liability for predatory bidding.").

[76]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases C-55 (2005).

[77]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases C-58 (2005).

object of the predatory bidding, from the relevant market.  Second, the plaintiff must prove that, after eliminating competition in the relevant market, the defendant then could either raise prices or lower their bids long enough to recoup lost profits, including the time value of money, without drawing new competitors to the market.  To analyze whether it was likely that a defendant could recoup lost profits for a sustained period of time, you must consider a number of factors about the market, including the number of competitors, whether entry is easy, whether firms in the market have excess capacity or could quickly create or purchase new capacity to absorb the market share of their rivals, whether firms not in the market could shift assets to the market, and whether substitute products might be available to defeat a price increase.  If you find that there was not a dangerous probability that a defendant would recover the profits lost from offering high bids through future prices above competitive levels or bids lower than competitive levels, you may not find that a bid was predatory.[78]

**Disparagement and Unauthorized Website Access.**  Next, the Plaintiffs contend that the Defendants made false statements about competitors to potential customers and improperly gained access to a website operated by a competitor.  The plaintiffs have a high burden to meet in attempting to prove that these alleged statements and misconduct harmed competition in a relevant market.

---

[78]    Adapted from ABA Model Jury Instructions in Civil Antitrust Cases C-50 (2005); *Brooke Group Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."); *id.* at 224–25 (1993) ("It is axiomatic that the antitrust laws were passed for the protection of *competition*, not *competitors*. . . . [W]e held in the Sherman Act § 2 context that it was not enough to inquire whether the defendant has engaged in 'unfair' or 'predatory' tactics; rather, we insisted that the plaintiff prove a dangerous probability that the defendant would monopolize a particular market." (internal quotation marks and citations omitted)).

Ordinarily, the disparagement of a rival is not anticompetitive conduct. The law

presumes that disparagement has no significant impact on competition, which means for our

purposes that the conduct is generally harmless.[79] Thus, even if you find that the Defendants

falsely disparaged their competitors' products, and even if you find that the Defendants acted

unfairly or unethically, the law presumes that the Defendants' conduct was not anticompetitive.[80]

To overcome the presumption that disparagement is not anticompetitive, the

Plaintiffs must prove that the challenged statements were:

(1) clearly false;

(2) clearly material;

(3) clearly likely to induce reasonable reliance;

(4) made without knowledge of the subject matter;

(5) continued for prolonged periods, and

(6) not readily susceptible of neutralization or other offset by rivals.[81]

If the Plaintiffs are unable to establish each of these six factors, then you should conclude that

the disparagement had no significant impact on competition. If, however, you find that the

Plaintiffs have carried their burden on each of these six factors, you may then consider whether

the disparagement was anticompetitive. For Defendants' alleged false statements to be

---

[79] *See Berkey Photo, Inc.* v. *Eastman Kodak Co.*, 603 F.2d 263, 288 n.41 (2d Cir. 1979) (recognizing "a presumption that the effect on competition of [disparagement] was *de minimis*.").
[80] *See S.W.B. New England, Inc.* v. *R.A.B. Food Grp., LLC.*, No. 06 Civ. 15357, 2008 WL 540091, at *6 (S.D.N.Y. Feb. 27, 2008) ("Employing tactics that undermine one's competitors—even unfairly—does not violate the antitrust laws.") (Lynch, J.).
[81] *Nat'l Ass'n of Pharm. Mfrs., Inc.* v. *Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988); *Reed Const. Data Inc.* v. *McGraw Hill Cos.*, 49 F. Supp. 3d 385, 420 (S.D.N.Y. 2014).

anticompetitive, you must find that they caused significant and enduring harm to competition in the relevant market.[82]

The same is true with respect to the allegation that someone improperly accessed a computer of another ISP provider. The issue for you to decide, if you determine that this conduct occurred, is not whether it was unfair or unethical, but whether it caused significant and enduring harm to competition in the relevant market.[83]

---

[82] *Am. Prof'l Testing Serv., Inc.* v. *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997) ("While the disparagement of a rival or compromising a rival's employee may be unethical and even impair the opportunities of a rival, its harmful effects on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act."); *Rambus Inc.* v. *FTC*, 522 F.3d 456, 464 (D.C. Cir. 2008) ("Deceptive conduct-like any other kind-must have an anticompetitive effect in order to form the basis of a monopolization claim."); *Xerox Corp.* v. *Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 382 (S.D.N.Y. 2007) (Holwell, J.) ("Mere allegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent. They are essentially allegations of injury to a competitor, and thus insufficient to constitute an antitrust injury without allegations of injury to competition in general." (citation and internal quotation marks omitted)); *Arista Records LLC* v. *Lime Grp. LLC*, 532 F. Supp. 2d 556, 574 (S.D.N.Y. 2007) (Lynch, J.) ("Lime Wire also contends that counter-defendants engaged in various unfair business practices, including hacking and exploring files of Lime Wire users, and falsely claiming that Lime Wire 'promotes child pornography' and is a 'pirate' and 'smut peddler.' . . . These allegations, however, fundamentally involve injuries to Lime Wire itself, not to competition generally. . . . Although Lime Wire may be able to assert state tort law claims against counter-defendants for such conduct, it lacks standing to challenge this conduct under the federal antitrust laws."); *Volvo N. Am. Corp.* v. *Men's Int'l Prof'l Tennis Council*, 687 F. Supp. 800, 807 (S.D.N.Y. 1988) (no facts sufficient to support antitrust violation, even assuming as true allegations of defendants' deliberate dissemination of false and misleading corporate sponsorship information to press and to tennis tournament organizers); *Stearns Airport Equip. Co.* v. *FMC Corp.*, 170 F.3d 518, 524 (5th Cir. 1999) ("[A]rguments made by FMC to its potential customers may have been wrong, misleading or debatable [but] they are all arguments on the merits, indicative of competition on the merits."); *see also Sanderson* v. *Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005) (false statements about competing products in advertising "just set the stage for competition in a different venue: the advertising market").

[83] *TPTCC NY, Inc.* v. *Radiation Therapy Servs., Inc.*, 784 F. Supp. 2d 485, 498–99 (S.D.N.Y.), *aff'd in relevant part*, 453 F. App'x 105 (2d Cir. 2011) (plaintiffs failed to allege Sherman Act claim by pleading facts of misappropriation of plaintiffs' ideas, plans, and partners, because none of the alleged misconduct "plausibly relates to an injury sustained by consumers—in terms of prices, quality of services, or output—rather than injury to a particular competitor").

**Deals with Competitors.** The Plaintiffs allege that the Defendants' business deals with its competitors constitute anticompetitive conduct. For that to be so, the Plaintiffs would have to show that those business deals made it very difficult or impossible for competitors to compete and were taken for no legitimate business reason.

Finally, if you were to find that none of the alleged misconduct was anticompetitive in isolation, you should reach the same conclusion about the alleged misconduct in its totality. Conduct that is not anticompetitive in its own right does not become anticompetitive through proximity to other conduct that is not anticompetitive. That is why, under the antitrust laws, alleged instances of misconduct that are not independently anticompetitive are not cumulatively anticompetitive either.[84]

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 40-B in its entirety. The charge improperly includes one-sided comments on the evidence. The jury should be instructed on the exclusive dealing allegations as part of the Section Two claim as well as the Section One claim. Additionally, the price-cost test is not dispositive in this case. Finally, the jury must consider the overall effect of the anticompetitive acts, and must not consider them in isolation. Plaintiffs respectfully propose the instruction provided at No. 40-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this proposed instruction is a fair and accurate statement of law, as indicated by citations to relevant authority in the margins. Plaintiffs are free to supplement these instructions that provide "balance," but the jury should not be without guidance on these difficult questions.]**

---

[84]     *City of Groton* v. *Conn. Light & Power Co.*, 662 F.2d 921, 928–29 (2d Cir. 1981) ("[W]e reject the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of section 1 or section 2 of the Sherman Act."); *Eatoni Ergonomics, Inc.* v. *Research in Motion Corp.*, 486 F. App'x 186, 191 (2d Cir. 2012), *aff'g* 826 F. Supp. 2d 705 (S.D.N.Y. 2011) (Pauley, J.) (where "alleged instances of misconduct are not independently anticompetitive, . . . they are not cumulatively anticompetitive either"); *Pac. Bell Tel. Co.* v. *Linkline Commc'ns, Inc.*, 555 U.S. 438, 455 (2009) (no basis to impose antitrust liability for the challenged vertically integrated price scheme, which was the product of two independently lawful and non-predatory price schemes); *Morgan* v. *Ponder*, 892 F. 2d 1355, 1359 (8th Cir. 1989); *A Poultry Farms, Inc v. Rose Acre Farms, Inc*, 881 F.2d 1396, 1401 (7th Cir. 1989) (Easterbrook, J.).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 41.

ANTICOMPETITIVE CONDUCT – EXCLUSIVE DEALING[85]

---

[85]  *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (Intent evidence is "relevant to the question whether the challenged conduct is fairly characterized as exclusionary or anticompetitive" and "no monopolist monopolizes unconscious of what he is doing."); *McWane, Inc. v. FTC*, 783 F3d 814, 832-40 (11th Cir. 2015) (providing standard for evaluating exclusive dealing contract in the context of a monopolization claim); *id.* at 832 ("exclusive dealing arrangements are not per se unlawful, but they can run afoul of the antitrust laws when used by a dominant firm to maintain its monopoly" and monopolist may use a "set of strategically planned exclusive-dealing contracts [to] slow the rival's expansion by requiring it to develop alternative outlets for its product, or rely . . . on inferior or more expensive outlets" (citations omitted)); *id.* at 837 ("courts have found that a lesser degree of foreclosure [of 40%] is required when the defendant is a monopolist"); *id.* at 839 (monopolist's conduct need not be the sole cause of anticompetitive effect, only that it "reasonably appear[ed] to be a significant contribution to maintaining [its] monopoly power" (quotations and citation omitted; alteration in original)); *id.* at 840 ("[e]vidence of intent is highly probative" in evaluating monopoly claim (quotations and citation omitted; alteration in original)); *ZF Meritor LLC, et al. v. Eaton Corp.*, 696 F.3d 254, 270-71 (3d Cir. 2012) ("The primary antitrust concern with exclusive dealing arrangements is that they may be used by a monopolist to strengthen its position, which may ultimately harm competition"; hence, "[e]xclusive dealing arrangements are of special concern when imposed by a monopolist."); *id.* at 271 (listing factors courts consider to evaluate Section Two exclusive dealing claim, including market power, foreclosure, and duration of contract); *id.* at 284-85 ("A hard look at the nature of the market in which the parties compete is equally important," including whether barriers to entry exist. (citation omitted)); *United States v. Dentsply Int'l*, 399 F.3d 181, 187, 191-96 (3d Cir. 2005) (discussing standard for evaluating exclusive dealing contract in the context of a monopolization claim); *id.* at 187 ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist."); *id.* at 193 (focusing on reality of market, such that defendant, as a "long-entrenched" dealer "with its ties to the laboratories [made] it impracticable for" others to enter the market); *id.* at 194-95 (limiting choices for consumers and tying up key distribution points constitute anti-competitive effects); *LePage's Inc. v. 3M*, 324 F.3d 141, 151-52, 159-62 (3d Cir. 2003) (discussing standard for evaluating exclusive dealing contract in the context of a monopolization claim); *id.* at 159 ("When a monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary . . . conduct, its success in that goal is not only injurious to the potential competitor but also to competition in general."); *id.* at 162 ("courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation"); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) ("Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct."); *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 275 (2d Cir. 1979) (Requiring exclusive terms in a contract "is illegal when taken by a monopolist because it tends to destroy competition although in the hands of a smaller market participant it might be considered harmless, or even 'honestly industrial.'").

With respect to Plaintiffs' claim that the Defendants' use of long term, exclusive contracts constituted anticompetitive conduct, it is important to note that exclusive contracts are not illegal in and of themselves. In fact, when a market is competitive, the competition for the exclusive contract may be a vital form of competition that can induce companies to provide price reductions or improved services to buyers, to the ultimate benefit of consumers. But when used by a monopolist, exclusive contracts can be an improper means of maintaining a monopoly. A set of strategically planned exclusive dealing contracts can be harmful to competition when used by a monopolist to slow a competitor's expansion or prevent a competitor's entry into the relevant market by requiring the competitor to develop alternative outlets for its product or to rely on inferior or more expensive outlets. It is also unlawful for a monopolist to use exclusive contracts to cut competitors off from key, large volume customers which can harm competition by delaying or foreclosing the ability of competitors to enter and grow in the market.

In order to demonstrate that the Defendants' use of exclusive contracts was anticompetitive, Plaintiffs must prove that the contracts had an anticompetitive effect on competition, and not just a particular competitor. In assessing whether the Defendants' exclusive contracts with retailers harmed competition, you may consider the degree to which the Defendants' competitors were excluded from the market. Even where a monopolist's use of exclusive contracts forecloses less than 40 percent of the relevant market, you may find that the monopolist has engaged in anticompetitive conduct.

You may also consider the duration of the exclusive dealing contracts in determining whether the contracts are anticompetitive. Long-term contracts are more likely to foreclose competition than short-term contracts. You may also consider evidence of the Defendants' intent in order to understand the likely effect of its conduct and evaluate whether

such conduct was anticompetitive.  Finally, you may consider the nature of the market in which the Defendants compete, because a defendant with monopoly power in the market invariably has the power to exclude rivals through the use of exclusive dealing contracts, whereas a company without monopoly power may not.  Such conduct is illegal when taken by a monopolist because it tends to destroy competition, although in the hands of a smaller market participant it might be considered harmless.

Once again, in evaluating whether Plaintiffs have proved that the Defendants' actions harmed competition, you must consider the combined overall effect of all of the Defendants' alleged conduct.  You may not limit your consideration to one instance of alleged anticompetitive conduct, without considering the overall combined effect of all of the Defendants' actions.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiff's Proposed Instruction No. 41 in its entirety as unnecessary and  duplicative, given the forthcoming instructions on exclusively dealing arrangements under Count Two, as well as inadequately supported by controlling law within the Second Circuit.  A cross-reference to the instructions for Count Two is sufficient.]**

**[PLAINTIFFS' RESPONSE:  Defendants offer no legal basis for omitting the above charge.  The charge is highly relevant and supported by law.]**

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 42.</u>

<u>RULE OF REASON – BALANCING THE COMPETITIVE EFFECTS</u>[86]

If the elements of monopoly power and harm to competition through

anticompetitive acts are established, the burden shifts to the Defendants to offer procompetitive

justifications for its anticompetitive acts.  Any procompetitive justification must be a form of

competition on the merits because it involves, for example, conduct that increased efficiency or

benefitted competition.  Maintaining a monopoly or furthering an economic interest are not the

types of valid business reasons that will excuse anticompetitive conduct.

If you find that the Defendants presented sufficient evidence of a procompetitive

business justification for its conduct, Plaintiffs may rebut that showing by demonstrating that the

justification was not the reason for the Defendants' conduct or that the justification does not on

balance have procompetitive benefits.  The justification, therefore, may not be pretextual, such as

where the alleged benefits of the anticompetitive acts flowed primarily from its tendency to

hinder or eliminate competition, rather than from its procompetitive purpose.  Your task is to

balance any aspects of that anticompetitive conduct that were helpful to competition against any

aspects that were harmful to it, and to determine whether any legitimate business justifications

---

[86]       Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at A-10 to A-12, 2005 Edition (2005) (Rule of Reason – Evidence of Competitive Benefits; Balancing the Competitive Effects); *see* Jury Instruction No. 28, *Hynix Semiconductor Inc. et al. v. Rambus Inc.*, Nos. C–00–20905 RMW, C–05–00334 RMW, C–06–00244 RMW (N.D.  Cal.), Dkt. 1254; Transcript of Trial at 6891-92 (Jury Instructions), *Image Technical Servs., Inc. et al. v. Eastman Kodak Co.*, No. C-87-1686 AWT (N.D. Cal.), Dkt. 555; *see also McWane, Inc. v. FTC*, 783 F3d 814, 840-41 (11th Cir. 2015) (noting that the "rule of reason" approach to monopolization cases has been cited with approval; balancing procompetitive benefits against anticompetitive effects on Section Two claim); *ZF Meritor LLC, et al. v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012) (exclusive dealing claim brought under Section Two "is judged under the rule of reason"); *LePage's Inc. v. 3M*, 324 F.3d 141, 163-64 (3d Cir. 2003) (same and holding that "a defendant's assertion that it acted in furtherance of its economic interests does not constitute the type of business justification that is an acceptable defense to a § 2 monopolization . . . .  Maintaining a monopoly is not the type of valid business reason that will excuse exclusionary conduct.").

for the anticompetitive acts substantially outweigh the harm to competition.  In making this

determination, you may consider whether less restrictive means were available to the Defendants

to obtain the alleged procompetitive benefit of its conduct and whether those other means would

have been less harmful to competition.

        If you find that the cumulative effect of the Defendants' conduct was to harm

competition or if you reject the Defendants' procompetitive justifications as reasonable, then you

must find that Plaintiffs have established this element, and you must determine whether Plaintiffs

have proven the final element of this claim, that is, that they suffered injury in their business as a

result of the Defendants' monopoly power and anticompetitive conduct.  I will explain the

element of injury after instructing you on Plaintiffs' remaining claims for relief.

**[DEFENDANTS' OBJECTION:  Defendants object to Plaintiffs' Proposed Instruction No. 42.  An instruction on rule-of-reason balancing in a monopoly claim is unsupported by applicable law.  *See Solent Freight Servs., Ltd. Inc.* v. *Alberty*, 914 F. Supp. 2d 312, 323 (E.D.N.Y. 2012) (distinguishing a Section Two monopoly claim from a rule of reason claim).  Plaintiffs cite no authority within the Second Circuit for this instruction, and they improperly import the rule-of-reason test from model instructions for Section 1 claims, failing to identify any model instructions which apply a rule-of-reason test to Section 2 monopolization claims.]**

**[PLAINTIFFS' RESPONSE:  As noted by the numerous cases cited by Plaintiffs, an exclusive dealing claim brought under Section Two of the Sherman Act is properly and regularly analyzed under the rule of reason.  The single case Defendants rely on concerns a Rule 12(b)(6) motion, in which an exclusive dealing claim was not alleged.]**

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 43.-A.</u>

<u>COUNT ONE:  MONOPOLIZATION – FOURTH ELEMENT – INJURY</u>[87]

If you find that the Defendants have violated the antitrust laws by acquiring

and/or maintaining a monopoly, then you must decide if Plaintiffs are entitled to recover

damages from the Defendants.

Plaintiffs are entitled to recover damages for an injury to their business or

property if they can establish, by a preponderance of the evidence, three elements of injury and

causation:

**First,** that Plaintiffs were in fact injured as a result of the Defendants' violation of

the antitrust laws;

**Second,** that the Defendants' illegal conduct was a material cause of Plaintiffs'

injury; and

**Third,** that Plaintiffs' injury is an injury of the type that the antitrust laws were

intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."

For Plaintiffs to establish that they are entitled to recover damages, they must prove that they

were injured as a result of the Defendants' violation of the antitrust laws.  Proving the fact of

damage does not require Plaintiffs to prove the dollar value of their injuries.  It requires only that

Plaintiffs prove that they were in fact injured by the Defendants' antitrust violation in some

degree.

---

[87]     ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-2 to
F-4, F-11, 2005 Edition (2005) (Injury and Causation; Effect of Instruction as to Damages); *see
In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury
charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA
(D. Or.), Dkt. No. 445 at 14 to 15 (same); *see also* Instruction No. 11, *Retractable Techs. Inc. v.
Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Instruction No.
37, *ZF Meritor LLC, et al. v. Eaton Corp.*, No. 06-623-SLR (D. Del.), Dkt. 214.

Second, Plaintiffs must offer evidence that establishes as a matter of fact and with a fair degree of certainty that the Defendants' illegal conduct was a material cause of Plaintiffs' injuries. This means that Plaintiffs must prove that some damage occurred to them as a result of the Defendants' alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that the Defendants' antitrust violation was the sole cause of their injuries; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs have proven that the alleged antitrust violation was likely to be a material cause of their injuries.

Finally, Plaintiffs must establish that their injuries are the type of injuries that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries.

If Plaintiffs can establish that they were in fact injured by the Defendants' conduct, that the Defendants' conduct was a material cause of their injury, and that Plaintiffs' injury was the type that the antitrust laws were intended to prevent, then you should find that Plaintiffs have met their burden of proof on this element as to both of their claims.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction No. 43-A for failing to provide guidance on how these concepts apply to a multi-plaintiff, multi-defendant class action case. Defendants' Proposed Instruction 43-B provides the necessary guidance.]**

**[PLAINTIFFS' RESPONSE: The above charge is taken directly from the ABA. It also mirrors jury charges provided in other antitrust class action cases, as noted by the citation.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 43.-B.</u>

<u>COUNT ONE: MONOPOLIZATION – FOURTH ELEMENT – INJURY AND CAUSATION</u>[88]

The final element you must consider, separately for each Plaintiff, is whether a Plaintiff has proved that it suffered an injury to its business or property that was directly caused by the alleged anticompetitive conduct.  To do this, a Plaintiff must prove each of the following:

**First**, that the Plaintiff you are considering was in fact injured as a result of the alleged violation of the antitrust laws committed by one or more of the Defendants;

**Second**, that the alleged illegal conduct was a material cause of that Plaintiff's injury; and

**Third**, that the Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

The first requirement is sometimes referred to as "injury in fact" or "fact of damage."  It requires that the Plaintiff you are considering prove that it was in fact injured by the alleged antitrust violation.  Proving the fact of damage does not require the Plaintiff to prove the dollar value of their injury.  Injury and damages are different concepts.  For now, all we are concerned with is whether the Plaintiff you are considering was, in fact, injured.  The amount of damages, if any, that should be awarded is to an injured Plaintiff must be addressed separately.

Each Plaintiff must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that the alleged illegal conduct committed by one or more of the Defendants was a material cause of that Plaintiff's injury.  This means that each of the Plaintiffs must have proved that some damage occurred to it as a result of the alleged antitrust violation, and not some other cause.  Each Plaintiff is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need the Plaintiffs eliminate all other possible

---

[88]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases F-2 (2005).

causes of injury. It is enough if the Plaintiffs have proved that the alleged antitrust violation was

a material cause of their injury. However, if you find that the Plaintiffs' injury was caused

primarily by something other than the alleged antitrust violation, then you must find that the

Plaintiffs have failed to prove that they are entitled to recover damages from any of the

Defendants.

Finally, the Plaintiffs must establish that their injury is the type of injury that the

antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If the

Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction

in competition, or acts that would otherwise harm consumers, then the Plaintiffs' injuries are

antitrust injuries. On the other hand, if the Plaintiffs' injuries were caused by heightened

competition, the competitive process itself, or by acts that would benefit most consumers, then

the Plaintiffs' injuries are not antitrust injuries and the Plaintiffs may not recover damages for

those injuries under the antitrust laws.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 43-B in its entirety to the extent it instructs that each member of the plaintiff class must prove injury. Defendants have provided no legal basis for the proposition that each plaintiff in a class action must provide individualized proof of injury. The charge is confusing and misleading since the jury is not instructed on what a named vs. unnamed plaintiff is and the instruction suggests that each class member, i.e., all [600] plaintiffs, must present individualized proof of injury in order to prevail on this claim. Plaintiffs respectfully propose the instruction provided at No. 43-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]**

COUNT ONE: MONOPOLIZATION – NAMED PLAINTIFF INJURY[89]

In order for you to find for the class in this case, you must first find that the monopolization claims of the Plaintiffs are typical of the claims of the other class members. In order to make such a finding, you must first conclude that the Plaintiffs have proved, by a preponderance of the evidence, that any of the Plaintiffs have suffered injury to their business and property as a result of conduct by one or more of the Defendants which violates the antitrust laws.

If you find that the Plaintiffs have not proven, by a preponderance of the evidence, that they suffered injury as a result of conduct by one or more of the Defendants, then you must find that the named Plaintiffs cannot recover for themselves and also cannot represent the other members of the class. If you find that none of the Plaintiffs has suffered injury to its business or property as a result of conduct by one or more of the Defendants, you must return a verdict for that or those Defendant.

If, however, you find that any of the Plaintiffs did suffer injury as a result of conduct by any or all of the Defendants, then you must consider whether the class members also suffered the same type of injury from the same conduct. The concept of injury here is distinct from the measure of damages, if any, that you may deem appropriate. All Plaintiffs must prove is that the named Plaintiffs were injured and that the injury they suffered is representative of injury suffered by other members of the class. If a Plaintiff has not proved those facts by a

---

[89]    Adapted from the instruction provided in *In re Scrap Metal Antitrust Litigation*, No. 02-CV-0844 (N.D. Ohio Feb. 8, 2006); *Cordes & Co. Fin. Servs.* v. *A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 (2d Cir. 2007) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (alterations, internal quotations, and citations omitted)); *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'") (internal quotation marks and citation omitted)).

preponderance of the evidence, then you must find that this Plaintiff cannot represent other members of the class, and you must return a verdict for the Defendants. If you find that the Plaintiffs have proved these things as to any Plaintiff, however, you should proceed to consider whether or not some measure of damages should be awarded to the class.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 44 in its entirety. This Court has already determined that typicality is met. Moreover, the Defendants have provided no legal basis for the proposition that each plaintiff in a class action must provide individualized proof of injury in order for the class to prevail. The charge is confusing and misleading since the jury is not instructed on what a named vs. unnamed plaintiff is and the instruction suggests that the failure of one plaintiff to prove the fact of injury should automatically result in a verdict in favor of the defendants. This instruction is not given in other antitrust class action lawsuits. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA (D. Or.), Dkt. No. 445 at 14 to 15 (same). Plaintiffs respectfully propose the instruction provided at No. 43-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). Furthermore, the Court's prior determination that typicality is met is subject to change; the Court's class certification order may be altered or amended before final judgment. Fed. R. Civ. P. 23(c)(1)(C). And Plaintiffs have the burden to prove what this Court previously ruled was capable of being proved.]**

DEFENDANTS' PROPOSED INSTRUCTION NO. 45.

COUNT ONE: MONOPOLIZATION – INJURY TO ABSENT CLASS MEMBERS[90]

To establish injury to the class as a whole by a given Defendant, the Plaintiffs

must prove that all or substantially all class members were injured by that Defendant's

anticompetitive conduct.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 45 in its entirety. The Defendants have provided no legal basis for the proposition that each plaintiff in a class action must provide individualized proof of injury in order for the class to prevail. The charge is confusing and misleading since the jury is not instructed on what a named plaintiffs vs. absent class members is and the instruction suggests that the failure of one plaintiff to prove the fact of injury may result in a verdict in favor of the defendants. This instruction is not given in other antitrust class action lawsuits; instead, an instruction similar to No. 43-A is given to explain class injury. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA (D. Or.), Dkt. No. 445 at 14 to 15 (same). Plaintiffs respectfully propose the instruction provided at No. 43-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the instruction accurately reflects the Plaintiffs' burden of proving injury to the class. Plaintiffs propose no instruction that adequately describes to the jury what Plaintiffs must prove to establish class injury.]**

---

[90]     *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *45 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

## CLAIM OF EXCLUSIVE DEALING[91]

Plaintiffs' second claim for relief alleges that the Defendants' practice of entering into exclusive dealing contracts with retailers unreasonably restrained trade in the relevant market in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act. A restraint of trade is illegal only if it is found to be unreasonable, meaning that the anticompetitive consequences of a particular action outweigh its legitimate business purposes.

To establish that an exclusive dealing contract unreasonably restrained trade, Plaintiffs must prove the following elements by a preponderance of the evidence:

**First**, that the Defendants entered into at least one contract with a retailer that constituted an exclusive dealing contract;

**Second,** that the exclusive dealing contract unreasonably restrained trade by causing an actual adverse effect on competition in the relevant market; and

**Third,** that Plaintiffs suffered antitrust injuries as a result of the Defendants' exclusive dealing contract.

In determining whether a relevant market exists for purposes of the second element, you should rely on my previous instructions to you about what constitutes a relevant market. (*See* Instruction No. 36). I will now instruct you on the remaining elements for this claim.

---

[91]     Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at A-3, A-4, 2005 Edition (2005) (Sherman Act Section 1; Rule of Reason – Overview); *see CDC Techs., Inc. v. IDEXX Labs., Inc.*, 186 F.3d 74, 80 (2d Cir. 1999) ("plaintiff must demonstrate that the practice it challenges has had 'an *actual* adverse effect on competition as a whole in the relevant market'" (citation omitted; emphasis in original)).

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction 46-A for a misleading definition of the first element of what an exclusive dealing agreement is, and for further omitting the required element that Plaintiffs must prove Defendants had substantial market power in the relevant market, as provided in ABA Model Instruction B-120. This instruction is entirely inconsistent with *K.M.B. Warehouse*, in which the Second Circuit held that a plaintiff was required to prove market power as an element of the claim.]**

**[PLAINTIFFS' RESPONSE: The above charge is taken directly from the ABA and Second Circuit caselaw. Contrary to Defendants' assertion, market power is a relevant, but not necessary, element in this jurisdiction for a Section One claim. *K.M.B. Warehouse Distribs., Inc. v. KMB/CT, Inc.*, 61 F.3d 123, 129 (2d Cir. 1995) (noting that while "[s]ome courts require that a plaintiff always show the defendant's market power in order to state a § 1 claim," "[t]his court has not made a showing of market power a prerequisite for recovery in all § 1 cases").]**

## DEFENDANTS' PROPOSED INSTRUCTION NO. 46-B.

## COUNT TWO: EXCLUSIVE DEALING – ELEMENTS[92]

Count Two of Plaintiffs' claims alleges that the Defendants' practice of entering into exclusive dealing contracts with retailers unreasonably restrained trade in the relevant market in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act. In order to prove Count Two, the federal exclusive dealing claim, each Plaintiff must establish by a preponderance of the evidence each one of the following four elements:

**First**, that there was one or more exclusive dealing agreement between a Defendant and a retailer or retailers that totally or in substantial part foreclosed CPGs from purchasing in-store promotions from providers other than one of the Defendants;

**Second**, that these agreements unreasonably restrained trade by causing a substantial adverse effect on competition in a relevant market;

**Third,** that the defendants had substantial market power in that relevant market; and

**Fourth,** that the plaintiffs suffered injury in their business or property that was directly caused by harm to competition resulting from the defendants' agreements with retailers.

If you find that any of the Plaintiffs have failed to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against that or those Plaintiffs on the exclusive dealing claim. If you find that one or more of the Plaintiffs have

---

[92] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases B-118, B-120 (2005). In Count Two, the plaintiffs assert exclusive dealing claims under Sections One and Two of the Sherman Act and Section Three of the Clayton Act. Because there are no factual issues to be decided under Section Three of the Clayton Act that are different from the factual issues to be decided under Sections One and Two of the Sherman Act, there is no need for separate instructions regarding the Clayton Act. *See Andrea Theatres, Inc.* v. *Theatre Confections, Inc.*, 787 F.2d 59, 65 (2d Cir. 1986); *St. Francis Med. Ctr.* v. *C.R. Bard, Inc.*, 657 F. Supp. 2d 1069, 1104 (E.D. Mo. 2009).

proved each of these elements by a preponderance of the evidence as to a particular defendant, then you must find for that Plaintiff and the absent class members, and against that particular Defendant, on the exclusive dealing claim.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 46-B on the ground that it departs from the model charge provided by the ABA on the elements of an exclusive dealing claim and is not supported by applicable law. Defendants provide no legal basis for the proposition that each plaintiff in a class action must prove each element of a claim against the Defendants. The charge is confusing and misleading since it suggests that each class member, i.e., all [600] plaintiffs, must prove each element of each claim. Moreover, market power is not a <u>necessary</u> element in this jurisdiction for a Section One claim; it may become relevant if an adverse effect on competition cannot be shown. *K.M.B. Warehouse Distribs., Inc. v. KMB/CT, Inc.*, 61 F.3d 123, 129 (2d Cir. 1995) (While "[s]ome courts require that a plaintiff always show the defendant's market power in order to state a § 1 claim," "[t]his court has not made a showing of market power a prerequisite for recovery in all § 1 cases."). Defendants' inclusion of this element as a necessary element of the claim is misleading to the jury and unsupported by applicable law. Plaintiffs respectfully propose the instruction provided at No. 46-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). With respect to the inclusion of market power as a necessary element of a Section One claim, Plaintiffs' Objection cites *K.M.B. Warehouse* for the proposition that market power is not a necessary element of a Section One claim. But the Second Circuit in *K.M.B. Warehouse* actually held the opposite – requiring plaintiffs to prove market power as an element of the claim. *See K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995) ("However, 'where the plaintiff is unable to demonstrate such actual effects'—as KMB is unable to do here—'it must at least establish that defendants possess the requisite market power' and thus the capacity to inhibit competition market-wide."). Defendants do not concede that Plaintiffs have proven or will prove an actual adverse effect on competition.]**

## EXCLUSIVE DEALING – DEFINITION[93]

Exclusive dealing contracts require a buyer to purchase products or services for a period of time exclusively from one supplier. The parties do not dispute that the Defendants' contracts with retailers provided it with the exclusive right to place third-party in-store promotions on behalf of CPGs in the retailers' stores, and that these contracts constitute exclusive dealing contracts. This element is, therefore, established.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction No. 47-A, because it incorrectly assumes that the first element of Plaintiffs' exclusive dealing claim is undisputed. On the contrary, Defendants intend to introduce evidence at trial demonstrating that the agreements at issue in this case were and are not exclusive dealing agreements within the meaning of the antitrust laws.]**

**[PLAINTIFFS' RESPONSE:  The definition set forth above is taken directly from the ABA.  Defendants do not dispute that their contracts with retailers contained "'exclusivity' provisions."  Dkt. No. 514 ¶ 4 (Proposed Amended Joint Pretrial Order).]**

---

[93]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at B-120, 2005 Edition (2005) (Exclusive Dealing – Definition and Elements).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 47-B.</u>

<u>COUNT TWO: EXCLUSIVE DEALING – FIRST ELEMENT – EXISTENCE OF EXCLUSIVE DEALING CONTRACTS</u> [94]

The first element that the Plaintiffs must prove by a preponderance of the evidence is that there was one or more exclusive dealing agreement between a Defendant and a retailer that totally or in substantial part foreclosed CPGs from purchasing in-store promotions from providers other than one of the Defendants.

The Plaintiffs maintain that the Defendants' contracts with retailers totally or in substantial part foreclosed the Defendants' competitors from being able to place in-store promotions for CPGs inside those retailers because the contracts gave the Defendants the exclusive right to place third-party in-store promotions in the retailers' stores.

The Defendants maintain that the contracts with retailers did not totally or in substantial part foreclose CPGs from purchasing in-store promotions from providers other than one of the Defendants, because various retailers did not enter into exclusive contracts, certain contracts with retailers could be terminated at will, and CPGs could contract directly with retailers to obtain the same in-store promotions notwithstanding the contracts with retailers covering the same categories of promotions.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 47-B in its entirety. There is no dispute that the Defendants' contracts with retailers provided them with the exclusive right to place third-party in-store promotions on behalf of CPGs in the retailers' stores, and that these contracts constitute exclusive dealing contracts. Defendants do not dispute that their contracts with retailers contained "'exclusivity' provisions." Dkt. No. 514 ¶ 4 (Proposed Amended Joint Pretrial Order). Plaintiffs respectfully propose the instruction provided at No. 47-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the first element of Plaintiffs' exclusive dealing claim remains disputed. Defendants intend to introduce evidence at trial demonstrating that the agreements at issue did not totally or in substantial part foreclose**

---

[94]    Adapted from ABA Model Jury Instructions in Civil Antitrust Cases B-120, B-123 (2005).

**CPGs from purchasing in-store promotions from providers other than one of the Defendants. They did not cause any CPG to "purchase products or services for a period of time exclusively from" any of the Defendants.]**

PROOF OF COMPETITIVE HARM[95]

An exclusive dealing agreement is illegal under Section 1 of the Sherman Act and Section 3 of the Clayton Act when it forecloses competition in a substantial share of the market so as to adversely affect competition in the relevant market. Contracts that foreclose competition in a substantial share of the market allow a dominant company to prevent potential rivals from ever reaching the critical level necessary to pose a real threat to that company's business, thereby raising entry barriers. In assessing this claim, you must weigh all of the circumstances in deciding whether the Defendants' exclusive dealing contracts imposed an unreasonable restraint on competition.

In deciding this issue, you should consider the percentage of the relevant market closed off by, or tied up because of, the Defendants' exclusive dealing contracts. Exclusive dealing contracts that foreclose at least 30 to 40 percent of the market can support a claim of unlawful exclusive dealing in restraint of trade.

---

[95]     Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at A-7 to A-8; B-124-26, 2005 Edition (2005) (Rule of Reason – Proof of Competitive Harm; Exclusive Dealing – Rule of Reason); *see* Instruction No. 9.2, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Instruction No. 36, *ZF Meritor LLC, et al. v. Eaton Corp.*, No. 06-623-SLR (D. Del.), Dkt. 214; Instruction No. 20, 21, *Masimo Corp. v. Tyco Health Care Corp.*, Case No. CV 02-4770 MRP (AJWs) (C.D. Cal.), Dkt. 470; *see also Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992) (Monopoly power under Section 2 requires "something greater" than market power under Section 1.); *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 329 (1961) (listing factors to consider); *ZF Meritor LLC, et al. v. Eaton Corp.*, 696 F.3d 254, 271-72, 284-85 (3d Cir. 2012) (listing factors and noting that "[e]xclusive dealing arrangements are of special concern when imposed by a monopolist"); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004) ("For exclusive dealing, foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent."); *Dial Corp. v. News Corp.*, 13-cv-06802-WHP (S.D.N.Y. Jan. 15, 2016), Dkt. 420 at 9-10 (discussing standard for exclusive dealing claim); *Am. Express Travel Related Servs. Co. v. Visa U.S.A.*, No. 04 Civ. 8967 (BSJ), 2005 WL 1515399, at *2-3, *6-7 (S.D.N.Y. June 23, 2005) (same).

Other considerations are also relevant in determining whether the Defendants' use of exclusive dealing contracts adversely affected competition in the relevant market. These factors include the structure of the relevant market, the probable effect of the exclusive dealing contracts on competition in the relevant market, the relative strength of the Defendants and its competitors in the market, the number of competitors that exist in the market and the ease with which they enter the market, and the duration and terminability of the contracts. As I instructed earlier, you should keep in mind that exclusive dealing arrangements are of special concern when imposed by a monopolist.

Importantly, in considering all of these factors, you should evaluate whether the practical effect of the exclusive dealing contracts was to significantly limit the opportunities for competitors to enter or remain in the market.

Finally, you should consider whether the Defendants possess "market power" in the relevant market. Market power has been defined as the ability to raise prices significantly above those that would be charged in a competitive market. It is similar to, but less than, monopoly power, which is an element of the unlawful monopolization claim. An important factor in determining whether the Defendants possessed market power is their market share; that is, its percentage of the products or services sold in the relevant market by all competitors. If the Defendants possessed market power, then it is more likely that its practice of entering into exclusive dealing contracts caused substantial harm to competition in the relevant market.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction 48-A for failing to provide jurors with a thorough, fair, and accurate statement of applicable law.]**

**[PLAINTIFFS' RESPONSE: The instruction set forth above are taken from the ABA and applicable law.]**

DEFENDANTS' PROPOSED INSTRUCTION NO. 48-B.

COUNT TWO: EXCLUSIVE DEALING – SECOND ELEMENT – SUBSTANTIAL HARM TO COMPETITION

If you find that there was one or more exclusive dealing agreement between a Defendant and a retailer that totally or in substantial part foreclosed CPGs from purchasing in-store promotions from providers other than one of the Defendants, then you must decide whether those agreements unreasonably restrained trade by causing a substantial adverse effect on competition in a relevant market.

I remind you that the Plaintiffs claim that the relevant market is the market for the sale of third-party in-store promotions in the United States, and if you find that the Plaintiffs failed to prove that that is the relevant market, you should find for the Defendants and against the Plaintiffs on this exclusive dealing claim and not proceed to consider this claim any further. In this instruction, I discuss a market for third-party in-store promotions not because I believe that it is the relevant market (that is for you to decide), but because this instruction applies only if you believe that the Plaintiffs have proved by a preponderance of the evidence that it is the relevant market.

The market for third-party in-store promotions, if one exists, is what is sometimes referred to as a two-sided market. Third-party ISP providers are essentially middlemen who enter into contracts both with retailers (to gain the right of access to their stores to place ISPs there on behalf of CPGs) and with CPGs (to place ISPs in the stores on behalf of the CPGs). Where the defendant functions as a distributor or reseller and there are other alternatives for competing sellers to market their products to end users, an exclusive dealing agreement does not necessarily foreclose competitors' access to the market and thus not substantially harm competition.

As you consider this element, keep in mind that retailers, third-party ISP providers, and CPGs all participate in the market for the sale of third-party in-store promotions as buyers, sellers, or both. The retailers and CPGs are both consumers of the services provided by third-party ISP providers.

A restraint of trade is illegal only if it is found to be unreasonable. For this reason, exclusive dealing arrangements, whatever form they may take, are analyzed under the rule of reason to determine if they result in a substantial and unreasonable harm to competition in a relevant market.[96] Exclusive dealing arrangements may have potential procompetitive effects that benefit consumers—here the CPGs and the retailers—that need to be weighed against the potential anticompetitive effects of foreclosing competition. Indeed, such arrangements may be substantially procompetitive by ensuring stable markets and encouraging long term, mutually advantageous business relationships.[97] Moreover, where there is competition to obtain the exclusive contract, exclusive agreements do not harm competition because the competitors have a strong incentive continually to improve the services and prices they offer in order to secure the exclusive positions.[98]

A harmful effect on competition refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality. How do you determine whether this has occurred? If you found any of the

---

[96] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases A-6, A-10, A-12 (2005).

[97] *CDC Techs., Inc.* v. *IDEXX Labs., Inc.*, 7 F. Supp. 2d 119, 121 (D. Conn. 1998), *aff'd*, 186 F.3d 74 (2d Cir. 1999) (Under Section 3 of the Clayton Act, exclusive dealing agreements "that are narrow in scope pose no threat of adverse economic consequences, and indeed, 'may be substantially procompetitive by ensuring stable markets and encouraging long term, mutually advantageous business relationships.'" (internal citation omitted)).

[98] *Spinelli* v. *Nat'l Football League*, 96 F. Supp. 3d 81, 117 (S.D.N.Y. 2015) ("It also is well established that exclusive agreements do not harm competition when there is competition to obtain the exclusive contract.").

contracts to be exclusive, you should consider (i) the nature and history of the use of exclusive agreements in this industry; (ii) whether other participants in the market have independent reasons for preferring such agreements or are coerced into accepting them; (iii) whether competitors offer substantially similar agreements; (iv) the extent of competition among competing suppliers for those agreements; (v) the Defendants' position in the marketplace; (vi) the competitive alternatives to the Defendants' products or services; and (vii) the effect of the agreements on the ability of new firms to enter the market and on price and other competition in the market.[99] Although it may be relevant to the inquiry, harm that occurs merely to the individual business of a competitor is not sufficient, by itself, to demonstrate harm to competition generally.

In determining the extent to which the challenged agreements foreclose competition on the merits, it is relevant to consider the percentage of the market foreclosed and the length of the foreclosure. Where the exclusive dealing contracts foreclose less than 20% of the market, this is an indicator that the harm from the foreclosure of competition is not substantial because there are alternatives available. If the level of market foreclosure is less than 30 or 40%, it is unlikely to be substantial. Similarly, the shorter the duration of the contract, the less likely it is to harm competition. The longer the contract's duration, the more likely that the harm to competition will be greater, unless it is clear that there was vigorous competition on the merits to win the longer contract or the buyer as a practical matter can terminate the agreement on short notice without cause and without significant penalty. In such a case, the stated length of the exclusive contract is not the period in which it has a competitive effect.[100]

---

[99]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases A-6 (2005).
[100]    *Sterling Merch., Inc.* v. *Nestle, S.A.*, 656 F.3d 112, 123–24 (1st Cir. 2011) (affirming summary judgment for defendant, and stating that "'foreclosure levels are unlikely to be of

In considering all of these facts, you should determine whether the exclusive dealing contracts adversely affected the price paid by buyers, output, or the quality of products offered in the relevant market. Where a restraint does not adversely affect price, output, or product quality, it is unlikely to substantially harm competition.[101]

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 48-B in its entirety. The instruction contains improper comments regarding the evidence and market definition (highlighted above), and suggests a conclusion of fact with respect to defendants: "Where the defendant functions as a distributor or reseller and there are other alternatives for competing sellers to market their products to end users, an exclusive dealing agreement does not necessarily foreclose competitors' access to the market and thus not substantially harm competition." The charge also parrots expert opinion evidence. Plaintiffs respectfully propose the instruction provided at No. 48-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction is a fair and accurate statement of controlling law. The highlighted instruction regarding end users provides guidance to the jury about how to apply this element to a two-sided market, such as the one at issue here. The jury should be provided guidance on this matter.]**

---

concern where they are less than 30 or 40 percent,' and while high numbers do not guarantee success for an antitrust claim, 'low numbers make dismissal easy'" (quoting *Stop & Shop Supermarket Co.* v. *Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004))); *B & H Medical, L.L.C.* v. *ABP Admin., Inc.*, 526 F.3d 257, 266 (6th Cir. 2008) ("Courts routinely observe that foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent." (internal quotation marks omitted)); *Midwest Agency Servs., Inc.* v. *JP Morgan Chase Bank, N.A.*, No. CIVA2:09-165-DCR, 2010 WL 935450, at *6 (E.D. Ky. Mar. 11, 2010) ("As a matter of law, courts have concluded that foreclosure levels of less than 30 or 40 percent are not a substantial share."); *Tampa Elec.* v. *Nashville Coal Company*, 365 U.S. 320, 328 (1961) ("competition foreclosed by the contract must be found to constitute a substantial share of the relevant market" under Section 3 of Clayton Act); *Balaklaw* v. *Lovell*, 14 F.3d 793, 799 (2d Cir. 1994).

[101] ABA Model Jury Instructions in Civil Antitrust Cases B-123 (2005).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 49.-A.

RULE OF REASON – BALANCING THE COMPETITIVE EFFECTS[102]

      If you find that the Defendants' exclusive dealing contracts adversely affected competition in the relevant market, the burden shifts to the Defendants to offer procompetitive justifications for its conduct. You should rely on my previous instruction in determining whether any legitimate business justifications for the exclusive dealing contracts substantially outweigh the harm to competition. (*See* Instruction No. 42). If you find that the cumulative effect of the Defendants' conduct was to adversely harm competition, then you must find that Plaintiffs have met this element, and you must consider whether Plaintiffs have proven the final element of this claim, that the Plaintiffs suffered injury as a result of the Defendants' use of exclusive dealing contracts.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction 49-A for failing to provide jurors with a thorough, fair, and accurate statement of applicable law.]**

**[PLAINTIFFS' RESPONSE: As indicated above, the relevant law is discussed at length at No. 42].**

---

[102]     Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at A-10 to A-12, 2005 Edition (2005) (Rule of Reason – Evidence of Competitive Benefits; Balancing the Competitive Effects).

DEFENDANTS' PROPOSED INSTRUCTION NO. 49-B.

COUNT TWO: EXCLUSIVE DEALING –  BALANCING HARM AGAINST COMPETITIVE BENEFITS[103]

If you find that the Plaintiffs have proved that the contracts with retailers resulted in substantial harm to competition in a relevant market, then you next must determine whether those contracts also benefitted competition in other ways.  Defendants submit that the challenged agreements benefitted both CPGs and retailers in a number of ways.  According to Defendants, the contracts with retailers benefitted CPGs  by giving them access to a large network of retailers (thus allowing CPGs to engage in "one-stop" shopping);  lowering prices to CPGs; and substantially reducing the chance that the CPG's ISP would be undercut by adjacent advertising of one of CPG's competitors. Defendants also submit that the agreements likewise benefitted retailers by providing administrative efficiencies, reducing the clutter that can occur when multiple providers are utilized and giving their retail stores a consistent "look and feel."

If you find that the exclusive contracts did result in competitive benefits, then you also must consider whether those contracts were reasonably necessary to achieve the benefits.  If the Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

If you find that the contracts were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.  If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable.

---

[103]     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases A-10, A-12.

In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. And, as I instructed you earlier, if you find that these agreements are reasonable, then they do not constitute anticompetitive conduct for the purposes of the federal monopolization claim.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 49-B in its entirety. The language highlighted above is an improper comment on the evidence. Plaintiffs respectfully propose the instruction provided at Nos. 42 and 49-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction is a fair and accurate statement of controlling law taken nearly verbatim from the referenced models. It is appropriate to provide a brief synopsis of the Defendants' positions with respect to the pro-competitive benefits just as it is appropriate to provide a brief synopsis of Plaintiffs' allegations in support of their claims of anti-competitive conduct.]**

The third element that the Plaintiffs must prove by a preponderance of the evidence is that the Defendants had substantial market power in the relevant market. I have already instructed you on the concept of monopoly power. Those same instructions apply here to determine whether Defendants possessed substantial market power.[105]

**[PLAINTIFFS' OBJECTION: Contrary to Defendants' assertion, market power is not a necessary element in this jurisdiction for a Section One claim; it may become relevant if an adverse effect on competition cannot be shown.  *K.M.B. Warehouse Distribs., Inc. v. KMB/CT, Inc.*, 61 F.3d 123, 129 (2d Cir. 1995) (noting that while "[s]ome courts require that a plaintiff always show the defendant's market power in order to state a § 1 claim," "[t]his court has not made a showing of market power a prerequisite for recovery in all § 1 cases").]**

**[DEFENDANTS' RESPONSE: Plaintiffs' Objection cites *K.M.B. Warehouse* for the proposition that market power is not a necessary element of a Section One claim.  But the Second Circuit in *K.M.B. Warehouse* actually held the opposite – requiring plaintiffs to prove market power as an element of the claim.  *See K.M.B. Warehouse Distributors, Inc.* v. *Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995) ("However, 'where the plaintiff is unable to demonstrate such actual effects'—as KMB is unable to do here—'it must at least establish that defendants possess the requisite market power' and thus the capacity to inhibit competition market-wide."). Defendants do not concede that Plaintiffs have proven or will prove an actual adverse effect on competition.]**

---

[104] ABA Model Jury Instructions in Civil Antitrust Cases B-120 (2005).

[105] *Tops Markets, Inc.* v. *Quality Markets, Inc.*, 142 F.3d 90, 97–98 (2d Cir. 1998) ("Monopoly power, also referred to as market power, is 'the power to control prices or exclude competition.'" (citation omitted)).

COUNT TWO:  EXCLUSIVE DEALING – INJURY[106]

If you find that the Defendants have violated the antitrust laws by using exclusive dealing contracts that unreasonably restrained trade, then you must decide if Plaintiffs are entitled to recover damages from the Defendants.  You should rely on my previous instruction in determining whether Plaintiffs suffered injury as a result of the Defendants' use of exclusive dealing contracts.  (*See* Instruction No. 43-A).  Plaintiffs' claims of unlawful monopolization and exclusive dealing are independent claims and need not rise or fall together.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction No. 51-A for failing to provide guidance on how these concepts apply to a multi-plaintiff, multi-defendant class action case.  Defendants' Proposed Instruction 51-B provides the necessary guidance.]**

**[PLAINTIFFS' RESPONSE:  The charge stated above and at No. 43-A are taken directly from the ABA.  It also mirrors jury charges provided in other antitrust class action cases, as noted by the citations.]**

---

[106]     ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-2 to F-4, F-11, 2005 Edition (2005) (Injury and Causation; Effect of Instruction as to Damages); *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA (D. Or.), Dkt. No. 445 at 14 to 15 (same); *see also* Instruction No. 11, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Instruction No. 37, *ZF Meritor LLC, et al. v. Eaton Corp.*, No. 06-623-SLR (D. Del.), Dkt. 214; *see also United States v. Dentsply Int'l*, 399 F.3d 181, 197 (3d Cir. 2005) (finding of no liability for exclusive dealing claim under Section 1 of the Sherman Act does not preclude finding of liability for exclusive dealing claim under Section 2 of the Sherman Act).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 51-B.</u>

<u>COUNT TWO: EXCLUSIVE DEALING – FOURTH ELEMENT – INJURY AND
CAUSATION</u>

The final element you must consider, separately for each Plaintiff, is whether a

Plaintiff has proved that it suffered an injury to its business or property that was directly caused

by the alleged exclusive dealing agreements.  I have already instructed you on the concepts of

injury and causation.  Those instructions apply here.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction Nos.
43-B and 51-B in their entirety to the extent they instruct that each member of the plaintiff
class must prove injury.  Defendants have provided no legal basis for the proposition that
each plaintiff in a class action must provide individualized proof of injury.  The charge is
confusing and misleading since the jury is not instructed on what a named vs. unnamed
plaintiff is and this instruction suggests that each class member, i.e., all [600] plaintiffs,
must present individualized proof of injury in order to prevail on this claim.  Plaintiffs
respectfully propose the instructions provided at Nos. 43-A and 51-A instead.]**

**[DEFENDANTS' RESPONSE:  Defendants respond that an instruction that each named
Plaintiff must prove each of the required elements for itself is appropriate in this case
where the named Plaintiffs bring claims in their individual capacities (in addition to their
capacities as class representatives).]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 52.</u>

<u>COUNT TWO: EXCLUSIVE DEALING – NAMED PLAINTIFF INJURY</u>

In order for you to find for the class in this case, you must first find that the exclusive dealing claims of the Plaintiffs are typical of the claims of the other class members. I have already instructed you on the named Plaintiffs' burden to prove that they suffered injury as a result of conduct by one or more Defendants, and that class members also suffered the same type of injury from the same conduct. Those instructions apply here.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 52 (and No. 44) in their entirety. This Court has already determined that typicality is met. Moreover, the Defendants have provided no legal basis for the proposition that each plaintiff in a class action must provide individualized proof of injury in order for the class to prevail. The charge is confusing and misleading since the jury is not instructed on what a named vs. unnamed plaintiff is and this instruction suggests that the failure of one plaintiff to prove the fact of injury should automatically result in a verdict in favor of the defendants. This instruction is not given in other antitrust class action lawsuits. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA (D. Or.), Dkt. No. 445 at 14 to 15 (same). Plaintiffs respectfully propose the instructions provided at Nos. 43-A and 51-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). Furthermore, the Court's prior determination that typicality is met is subject to change; the Court's class certification order may be altered or amended before final judgment. Fed. R. Civ. P. 23(c)(1)(C). And Plaintiffs have the burden to prove what this Court previously ruled was capable of being proved.]**

COUNT TWO: EXCLUSIVE DEALING – INJURY TO ABSENT CLASS MEMBERS[107]

        To establish injury to the class as a whole by a given Defendant, the Plaintiffs

must prove that all or substantially all class members were injured by that Defendant's exclusive

dealing agreements.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 53 (and No. 45) in their entirety.  The Defendants have provided no legal basis for the proposition that each plaintiff in a class action must provide individualized proof of injury in order for the class to prevail.  The charge is confusing and misleading since the jury is not instructed on what a named plaintiffs vs. absent class members is and this instruction suggests that the failure of one plaintiff to prove the fact of injury may result in a verdict in favor of the defendants.  This instruction is not given in other antitrust class action lawsuits; instead, an  instruction similar to No. 43-A is given to explain class injury.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-1827 (N.D. Cal.), Dkt. No. 6028 at 22-24 (jury charges in antitrust class action lawsuit); *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 04-583-PA (D. Or.), Dkt. No. 445 at 14 to 15 (same).  Plaintiffs respectfully propose the instructions provided at Nos. 43-A and 51-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the instruction accurately reflects the Plaintiffs' burden of proving injury to the class.  Plaintiffs propose no instruction that adequately describes to the jury what Plaintiffs must prove to establish class injury.]**

---

[107]    *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *45 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

## C.    DAMAGES

### ANTITRUST DAMAGES GENERALLY[108]

I will now instruct you on damages, which is a common issue for both of Plaintiffs' claims.  You should not interpret the fact that I am giving you instructions about Plaintiffs' damages as an indication that I believe Plaintiffs should or should not prevail in this case.  It is your task to first decide whether the Defendants are liable.  I am instructing you on damages only so you will have guidance in the event you decide that the Defendants are liable and Plaintiffs are entitled to recover money from the Defendants.

If you find that the Defendants have violated the antitrust laws by acquiring and/or maintaining a monopoly and/or using exclusive dealing contracts that either protected their monopoly or unreasonably restrained trade, then you must decide if Plaintiffs are entitled to recover damages from the Defendants for each violation that you find.  Plaintiffs' claims of unlawful monopolization and exclusive dealing are independent claims and need not rise or fall together.

**[DEFENDANTS' OBJECTION:  Defendants object to Plaintiffs' Proposed Instruction No. 54-A for its failure to adequately distinguish the Defendants as separate entities which are entitled to separate consideration of liability and damages.  Such an instruction is contrary to the Court's opinion deciding the *in limine* motions. (*See* Dkt. No. 520 at pp. 3–4.)]**

**[PLAINTIFFS' RESPONSE:  The above charge is taken from the ABA and provides a general overview of damages, including the effect of such a charge to the jury.]**

---

[108]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-2 to F-4, F-11, 2005 Edition (2005) (Injury and Causation; Effect of Instruction as to Damages); *see* Instruction No. 11, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Instruction No. 37, *ZF Meritor LLC, et al. v. Eaton Corp.*, No. 06-623-SLR (D. Del.), Dkt. 214; *see also United States v. Dentsply Int'l*, 399 F.3d 181, 197 (3d Cir. 2005) (finding of no liability for exclusive dealing claim under Section 1 of the Sherman Act does not preclude finding of liability for exclusive dealing claim under Section 2 of the Sherman Act).

## CONSIDER DAMAGES ONLY IF NECESSARY[109]

If the Plaintiff you are considering has proved by a preponderance of the evidence that the Defendant you are considering has violated the antitrust laws under Counts One or Two, then you must determine the damages to which that Plaintiff is entitled. However, you should not infer that any Plaintiff is entitled to recover any damages merely because I am instructing you on the elements of damages. The fact that I am giving you instructions concerning the issue of damages does not mean that I believe the any Plaintiff should, or should not, prevail in this case. It is exclusively your function to decide upon liability—that is, whether one or more of the Defendants has injured one or more of the Plaintiffs by committing the unlawful conduct alleged in Counts One or Two. I am instructing you on damages now only so that you will have guidance should you decide that one or more of the Plaintiffs is entitled to receive them.

If, for any reason, you reach a verdict for any Defendant on the issue of liability, you should not consider the issue of damages for that Defendant, and you may disregard the damages instructions that I am about to give. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of the Plaintiff you are considering based on a preponderance of the evidence in accordance with the other instructions I have given you. You should consider calculating damages only if you first find that one or more of the Defendants violated the antitrust laws and that this violation caused injury to one or more of the Plaintiffs, and your damages must arise only from the conduct you found to have violated those laws.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 54-B to the extent it instructs that each member of the plaintiff class must prove**

---

[109]     Adapted from 4-77 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 77.01, Instruction 77-1 (2015); ABA Model Jury Instructions in Civil Antitrust Cases F-11 (2005).

individualized damages.  This is contrary to the charge on class damages provided by the ABA.  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-26, 2005 Edition (2005) (Damages for Purchasers – Class Damages).  There is no legal basis for this instruction.  Plaintiffs respectfully propose the instruction provided at No. 54-A instead].

[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 55.-A.</u>

<u>CALCULATION OF DAMAGES - GENERALLY</u>[110]

If you find that the Defendants are liable for any of Plaintiffs' antitrust claims, then you must determine an amount that is fair compensation for all of Plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole – that is, to compensate a plaintiff for the damage that it has suffered.

The law does not require Plaintiffs to prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. Nor is it necessary that Plaintiffs separate the Defendants' lawful actions from their alleged unlawful actions for purposes of calculating damages where doing so may be unnecessary, if not impossible. It is also not necessary to attribute separate damages to each anticompetitive act. It is sufficient to demonstrate damages as a whole based on all of the Defendants' anticompetitive acts.

So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. In evaluating each claim, you are permitted to make a just and reasonable estimate of the damages. You may not, however, calculate damages based only on speculation or guesswork and you must remember that you can award Plaintiffs damages only for injuries caused by a violation of the antitrust laws.

---

[110]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-12, F-15 to F-16, 2005 Edition (2005) (Antitrust Damages – Introduction and Purpose; Speculation Not Permitted); *see* Instruction No. 11.1, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Jury Instructions at 12, *Novell v. Microsoft*, Case No. 2:04-cv-01045-JFM (D. Utah), Dkt. 388; *see also LePage's Inc. v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) (Defendant's "actions, taken as a whole, were found to violate § 2, thus making the disaggregation that [Defendant] speaks of to be unnecessary, if not impossible."); *Dial Corp. v. News Corp.*, 13-cv-06802-WHP (S.D.N.Y. Jan. 15, 2016), Dkt. 420 at 20 (same).

**[DEFENDANTS' OBJECTION:  Defendants object to Plaintiffs' Proposed Instruction 55-A as failing to instruct that each Plaintiff must prove with reasonable certainty its own damages in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]**

**[PLAINTIFFS' RESPONSE:  The above charge is taken from the ABA and provides a general overview of the basis of damages in antitrust cases.  As stated in the ABA at F-26 and as instructed below at Nos. 58-A and/or 58-B, to award damages in a class action lawsuit, the jury need not determine individualized damages for each class member.]**

DEFENDANTS' PROPOSED INSTRUCTION NO. 55-B.

ANTITRUST DAMAGES – PURPOSE, CAUSATION, AND DISAGGREGATION[111]

If you find that the Defendant you are considering violated the antitrust laws and that the violation caused injury to the Plaintiff you are considering, then you must determine the amount of damages, if any, arising from the conduct you found to be anticompetitive. The law provides that each injured Plaintiff should be fairly compensated for any injury to its business or property that was the direct and proximate result of the conduct that you have found to be unlawful. Plaintiffs are not entitled to recover for any injury that resulted from other causes.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter a defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.

The Plaintiff you are considering bears the burden of showing that the amount of damages it seeks was caused by the alleged antitrust violation—as opposed to any other factors. You may not award any Plaintiff damages for financial harm that was caused by factors other than the antitrust violations, if any, that you found to have been established by a preponderance of the evidence. If you find that a Plaintiff's financial harm was caused in part by the alleged antitrust violation and in part by other factors, then you may award damages only for the harm that was caused by the alleged antitrust violation.

Each Plaintiff bears the burden of proving its damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no

---

[111] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases F-12, F-18 (2005).

reasonable basis to apportion a Plaintiff's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that the Plaintiff you are considering has proved with reasonable certainty the amount of damage caused by the alleged antitrust violations, then you must award damages for that Plaintiff and against the Defendant or Defendants you found had committed the antitrust violation that caused the financial harm.

You are also not permitted to award to any Plaintiff an amount for attorney's fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 55-B in its entirety. It incorrectly instructs that each member of the plaintiff class must prove individualized damages. This is contrary to the charge on class damages provided by the ABA and is confusing and misleading. ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-26, 2005 Edition (2005) (Damages for Purchasers – Class Damages). Further, as this Court held, the jury need not disaggregate anticompetitive conduct from competitive conduct where doing so is not possible. It is also not proper to instruct the jury on attorney's fees, which is unrelated to damages. Plaintiffs respectfully propose the instruction provided at No. 55-A instead].**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). The language of this instruction tracks the language contained in the model instruction. The jury should be provided guidance on the need to disaggregate and to not include any non-compensatory costs in a damages award.]**

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by one or more of the Plaintiffs or the Plaintiff class. You must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. So long as there is a reasonable basis in the evidence for a damages award, a plaintiff should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.

The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. The Plaintiffs must prove the reasonableness of the assumptions upon which the damages calculation is based. If you find that the Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you must not award any damages to the Named Plaintiff or the class for which you find Plaintiffs have failed to carry their burden. If you find that a Plaintiff has provided a reasonable basis for determining

---

[112]     ABA Model Jury Instructions in Civil Antitrust Cases F-15 (2005); 4-77 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 77.01, Instruction 77-3 (2015).

damages, then you may award damages only for the conduct you found to have violated the

antitrust laws based on a just and reasonable estimate supported by the evidence.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 56 as repetitive of Plaintiffs' Proposed Instruction No. 55-A and Defendants' Proposed Instruction No. 55-B.  It incorrectly instructs that each member of the plaintiff class must prove individualized damages.  This is contrary to the charge on class damages provided by the ABA and is confusing and misleading.  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-26, 2005 Edition (2005) (Damages for Purchasers – Class Damages).  Further, as this Court held, the jury need not disaggregate anticompetitive conduct from competitive conduct where doing so is not possible; the language highlighted above suggests otherwise.  Plaintiffs respectfully propose the instruction provided at No. 55-A instead.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction is fully supported by the cited authority.  In addition, an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).  The instruction on disaggregation is appropriate and fully supported by applicable authority.]**

PLAINTIFFS' PROPOSED INSTRUCTION NO. 57.-A.

CALCULATION OF ANTITRUST DAMAGES[113]

In this case, Plaintiffs contend that they paid excessively high prices for ISPs to

the Defendants during the relevant damages period because the Defendants were charging

monopoly prices, that is, prices higher than they would have charged but for its monopolization

of the market. With respect to Plaintiffs Dial Corporation and H.J. Heinz Company only, the

damages period runs from April 5, 2008 through today. For all other plaintiffs, the damages

period runs from April 26, 2009 through today. If you find that the Defendants committed an

antitrust violation and that this violation caused antitrust injuries to Plaintiffs, then Plaintiffs are

entitled to recover, as damages, the amount of that overcharge – that is, the difference between

what Plaintiffs paid the Defendants for third-party in-store promotions during the damages

period, and the price you find, by a preponderance of the evidence, that the Plaintiffs would have

paid in a competitive market.

Plaintiffs rely on a benchmark model to calculate the amount Plaintiffs would

have paid in a competitive market by showing evidence of other comparable businesses that were

not affected by the antitrust violation and comparing their profit margins to those of the

Defendants. The businesses used by Plaintiffs do not need to be identical to the Defendants' –

this is particularly true in monopoly cases where competitive benchmark firms within the same

relevant market may simply not exist. If you find that the other businesses being compared to

the Defendants are a reliable guide to estimate competitive margins and the amount of

---

[113]    Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-28 to F-29, 2005 Edition (2005) (Damages); *see* Instruction No. 12, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-00016-LED-RSP (E.D. Tex.), Dkt. 567; Jury Instructions at 15-17, *Morelock Enters. v. Weyerhaeuser*, CV 04-583-PA (D. Or.), Dkt. 445.

overcharge, then you may consider the difference between the Defendants' profit margins and those of the other comparable businesses in calculating the damages in this case.

The benchmark model presented by the Plaintiffs as a method of calculating damages in this case is a permissible basis for you to use in computing damages, provided the evidence you heard during the trial, including the expert testimony, persuades you by a preponderance of the evidence, that Plaintiffs have satisfactorily proven their calculation of damages.

**[DEFENDANTS' OBJECTION:  Defendants object to Plaintiffs' Proposed Instruction 57-A as failing to instruct that each Plaintiff must prove with reasonable certainty its own damages in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]**

**[PLAINTIFFS' RESPONSE:  The above charge is taken from the ABA.  As stated in the ABA at F-26 and as instructed below at Nos. 58-A and/or 58-B, to award damages in a class action lawsuit, the jury need not determine individualized damages for each class member.]**

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 57-B.</u>

<u>CALCULATION OF DAMAGES</u>[114]

You have heard testimony from expert witnesses from both sides regarding the

amount of damages to which the Plaintiffs claim they are entitled and the proper amount of

damages. If you find that any of the pertinent underlying assumptions made by one of these

experts in preparing a damages report is not reasonable or is not proved by a preponderance of

the evidence, or if you find that one of these expert's conclusions depend on a comparison of

things which have not been proven to be comparable, then you should consider this in

determining the weight—if any—you will give to these assumptions and the effect they have on

Plaintiffs' damages claim.

Through their expert, the Plaintiffs attempted to prove their damages using a

"benchmark" (or "yardstick") method. Plaintiffs have proposed to calculate the alleged

overcharge they paid for in-store promotions by creating a profit-margin benchmark based on the

margins of other businesses that did not allegedly profit from antitrust violations. The Plaintiffs

---

[114]     Adapted from ABA Model Jury Instructions in Civ. Antitrust Cases F-27, F-46 (2005); *Eleven Line, Inc.* v. *N. Tex. State Soccer Ass'n, Inc.*, 213 F.3d 198, 208 (5th Cir. 2000) ("An antitrust plaintiff who uses a yardstick method of determining lost profit bears the burden to demonstrate the reasonable similarity of the business whose earning experience he would borrow."); *Lehrman* v. *Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) ("[The yardstick test] consists of a study of the profits of business operations that are closely comparable to the plaintiff's. Although allowances can be made for differences between the firms, the business used as a standard must be as nearly identical to the plaintiff's as possible."); *El Aguila Food Prods., Inc.* v. *Gruma Corp.*, 131 F. App'x 450, 453 (5th Cir. 2005) ("The district court found this model wholly unreliable insofar as it attributed all of the measured lost profits to the alleged antitrust injury and irrelevant insofar as it was not in any respect anchored to the specific agreements or marketing practices challenged by plaintiffs. . . . Moreover, by characterizing all variances between the trade association earnings data and plaintiffs' respective earnings as 'lost profits,' no allowance was made for losses caused by any other factor—including, for example, reductions in shelf space attributable to other dominant firms or new entrants into the relevant markets, the plaintiffs' own failure to compete for shelf space on the terms sought by retailers, and their lack of capacity or efficiency relative to other firms."); *id.* ("McCoin made no effort to demonstrate the reasonable similarity of the plaintiffs' firms and the businesses whose earnings data he relied on as a benchmark.").

bear the burden of demonstrating the reasonable similarity of these benchmark businesses to the business conducted by the Defendants.  Although allowances can be made for differences, the benchmark must be as nearly identical as possible to what is being predicted.  To be reliable, a benchmark calculation should allow for differences caused by factors other than the alleged antitrust injury.

If you find that the financial performance of these other businesses is a reliable guide to estimate monopoly profits and that monopoly profits are, in turn, a reliable way to determine how much the Plaintiffs were overcharged for in-store promotions, you may not consider this benchmark to be reliable.

You may find, however, that the profit margins of the other businesses proposed by the Plaintiffs as a yardstick are not representative of the profit margins that providers of in-store promotions would obtain in the absence of any antitrust violation.  The profit margins of those other business might be unrepresentative because they are impacted by different economic conditions, have better or worse management, face different levels of competition, or other factors having nothing to do with antitrust violations.  The other businesses do not have to be identical; they need only be sufficiently similar that conclusions may be drawn within the bounds of reasonableness.  However, if you find that the other businesses proposed by Plaintiffs as a yardstick are not representative, and that the alleged overcharge can be calculated only using speculation or guesswork, you may not award damages for lost profits based on this yardstick measure.

Plaintiffs have also argued for a profit-margin adjustment that subtracts any allegedly excess payments made to retailers.  This would result in a so-called "enhanced damages" calculation.  First, you should not accept Plaintiffs' "enhanced damages" if you find

that Plaintiffs failed to prove that those payments to retailers were anticompetitive as I have defined that concept for you.[115]   In that case, you must reject Plaintiffs' proposed "enhanced damages" calculation and not subtract any retailer commissions from total costs for purposes of determining profit margins.  If you find that the retailer payments were anticompetitive, and you decide that those payments should be excluded from profit margins during the damages period, then you must decide (i) the amount of such excess payments and (ii) whether there would have been a corresponding drop in revenue had those retailer payments not been made.  If you find revenue would have been lost absent the retailer payments, then you must determine how much revenue would have been lost and subtract that from the profit margin as well.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 57-B in its entirety.  Under applicable law and this Court's decisions, the businesses used by Plaintiffs in their model need not be identical to the Defendants' and this instruction suggests otherwise.  Further, the instruction is confusing and misleading because it refers to "lost profits," and its use of the term "enhanced damages" is unduly prejudicial to Plaintiffs.  Plaintiffs respectfully propose the instruction provided at No. 57-A instead.]**

**[DEFENDANTS' RESPONSE: This instruction does not tell the jury that "the language used by the Plaintiffs need not be identical to the Defendants'.  Rather, it specifically states that the business need only have "reasonable similarity" to be included in the benchmark.  The terms "lost profits" and "enhanced profits" are not unfairly prejudicial; to the contrary, they accurately describe the concepts that Plaintiffs are presenting.  If Plaintiffs have alternate language that they prefer, they are free to propose it.  The jury should be provided guidance on this matter.**

---

[115]     Defendants submit that the jury should be instructed that bidding is anticompetitive only if it is predatory, and that the instruction (Defendants' Proposed Instruction 40-B) should be incorporated by reference here.

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 58.-A.</u>

<u>CLASS DAMAGES</u>[116]

Plaintiffs seek to recover damages on behalf of a class of CPG purchasers. To award damage for this class, you need not determine the overcharge paid by each class member with precision. It is sufficient for you to determine the average overcharge paid by each class member or estimate the overcharge paid by each class member, as long as the average or estimate is based on evidence and reasonable inferences. Any damages recovered by the Plaintiffs in this action will be divided among the [600] class members.

**[DEFENDANTS' OBJECTION: Defendants object to Plaintiffs' Proposed Instruction 58-A for failing to provide jurors with a thorough, fair, and accurate statement of applicable law.]**

**[PLAINTIFFS' RESPONSE: The above instruction is taken directly from the ABA.]**

---

[116] Adapted from ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-26, 2005 Edition (2005) (Damages for Purchasers – Class Damages).

<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 58-B.</u>
<u>MULTIPLE CLAIMS AND MULTIPLE PARTIES</u>[117]

In awarding damages, if any, you will be asked what sum of money would fairly and reasonably compensate each Plaintiff for any injury sustained by that Plaintiff. Once a particular Plaintiff establishes that it is entitled to recover damages, the law permits that Plaintiff to recover only for those injuries it has sustained. Therefore, if you find that two or more of the Plaintiffs are entitled to recover damages, caution should be exercised to be sure that each Plaintiff is awarded only damages for injuries it sustained.

Likewise, you should not award compensatory damages more than once for the same injury. For example, if a Plaintiff were to prevail on two claims and establish a one dollar injury, you could not award it one dollar compensatory damages on each claim—an injured Plaintiff is entitled only to be made whole again, not to recover more than it lost. Of course, if different injuries are attributed to the separate claims, then you must compensate an injured Plaintiff fully for all of the injuries.

The same is true of the entire class of plaintiffs. The plaintiffs are seeking to recover damages on behalf of a class of purchasers that includes all U.S.-based consumer packaged goods companies, and excludes all retailers. First you must be sure that you are considering damages only for that class of purchasers and no others. Second, to award damages for the class, you need not determine the overcharge paid by each class member with precision. You may not, however, engage in guesswork or speculation. If damages can be ascertained only through guesswork or speculation, you may not award damages.

---

[117]    Adapted from ABA Model Jury Instructions in Civil Antitrust Cases F-49, F-26 (2005); 4-77 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 77.01, Instruction 77-2 (2015).

Finally, damages can be awarded only against the Defendant or Defendants whom you found violated the antitrust laws as alleged in Counts One or Count Two and thereby injured the Plaintiff or Plaintiffs you are considering.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 58-B in its entirety. The instruction against speculating is sufficiently discussed at Instruction Nos. 55-A, 55-B, and/or 56. There is no legal basis to instruct the jury that each member of the plaintiff class must prove its individual basis for damages. The charge is confusing and misleading. Plaintiffs respectfully propose the instruction provided at No. 58-A instead].**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). Furthermore, an instruction about the impermissibility of speculation, specific to instruction of class damages, is appropriate here.]**

## NOMINAL DAMAGES[118]

If you find, after considering all the evidence presented, that one or more of the defendants violated the rights under the antitrust laws of one or more of the plaintiffs, you may award that plaintiff nominal damages.

Nominal damages are awarded as recognition that a plaintiff's rights have been violated, even though that plaintiff suffered no physical, emotional, or financial damage. They are symbolic damages, awarded to signify that a wrong was done to the plaintiffs with respect to these claims. You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and compensatory damages to a plaintiff; either it was measurably injured, in which case you must award compensatory damages, or else it was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum, typically $1 per claim. Because nominal damages are symbolic, it is within your discretion whether to award them or not.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 59 in its entirety. The instruction does not conform with the language provided in Sand, Instruction 77-6, and suggests that the jury should award nominal damages upon finding that the defendants violated the antitrust laws. It is also confusing in its reference to individualized damages.]**

**[DEFENDANTS' RESPONSE: Defendants respond that the jury should be informed of its ability to award nominal damages. This proposed instruction deviates from the Sand's**

---

[118]      Adapted from the Court's instructions in *Capitol Records, Inc.* v. *MP3Tunes*, *LLC*, No. 07 Civ. 9931 (WHP), Dkt. No. 605 (Mar. 25, 2014 Tr. at 3309:24–3310:4); 4-77 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 77.01, Instruction 77-6 (2015).

**instruction only to add instructions this Court itself gave in *Capitol Records, Inc.* v. *MP3Tunes. LLC*, No. 07 Civ. 9931 (WHP) (S.D.N.Y. 2014).]**

TREBLING OF DAMAGES[119]

You may have heard or read that in antitrust cases such as this, damages are

trebled, or multiplied by three.  You are not to try to do this yourself.  This is the job of the court.

In calculating damages, if any, you are only to try to determine actual or single damages.

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 60 in its entirety.  It is improper and prejudicial to the Plaintiffs to inform the jury of the trebling provision.  The ABA comments to this instruction notes that authorities believe it is improper to inform the jury of this provision.]**

**[DEFENDANTS' RESPONSE: The purpose of this instruction is to ensure that there is no improper application of the trebling provision, and the language is taken directly from the ABA model instructions.]**

---

[119]     ABA Model Jury Instructions in Civil Antitrust Cases F-52 (2005).

DEFENDANTS' PROPOSED INSTRUCTION NO. 61.

## MITIGATION[120]

If a company is faced with the possibility that it may suffer injury as a result of the unlawful business conduct of another, it cannot sit back and do nothing while the damages mount up. A company must protect itself by acting reasonably and responsibly to minimize the amount of its damages. This is called the "mitigation" of damages.

The Defendants have the burden of proving to you, by a preponderance of the evidence, that one or more of the Plaintiffs did not mitigate its damages. If you find that any Plaintiff could have avoided some or all of its economic losses, and that the Plaintiff unreasonably failed to do so, then you cannot award that Plaintiff the damages it could have avoided.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 61 to the extent it suggests that Plaintiffs must prove individualized damages for each plaintiff in the class.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]**

---

[120]    4-79 Leonard B. Sand,  Modern Federal Jury Instructions – Civil,  ¶  79.02 (2015), Instruction 79-29.

DEFENDANTS' PROPOSED INSTRUCTION NO. 62.

STATUTE OF LIMITATIONS AND CONTRACTUAL LIMITATIONS[121]

The antitrust laws do not permit recovery of damages for any injuries sustained by Dial Corporation and H. J. Heinz Company prior to April 5, 2008. For all other Plaintiffs and class members, no recovery is permitted for any injuries sustained prior to April 26, 2009.

If you find that the Plaintiffs suffered injuries spanning both before and after those dates, then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after April 5, 2008 for Dial and Heinz, and after April 26, 2009 for all other Plaintiffs and class members. If you find that you cannot apportion the damages between the two periods, or that such apportionment can only be accomplished through guesswork or speculation, then you may not award damages at all.

You have also heard evidence that some of the contracts at issue here contain time limits on filing lawsuits like this one against. If you find that those contractual limitation provisions are valid and enforceable, you must deduct from damages any alleged overcharges that the class members paid during the time periods not within the limitations period.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 62 as confusing and misleading because it suggests that Plaintiffs must prove injury as to all plaintiffs individually. Further, with respect to the portion highlighted above, the instruction suggests that apportionment difficulties should result in no damages.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives). If Plaintiffs fail to carry their burden of proving damages for the class period, the jury should not be asked to guess the appropriate amount of damages. Plaintiffs can avoid any issue here by presenting proof of damages that correspond to the class period.]**

---

[121]     ABA Model Jury Instructions in Civil Antitrust Cases G-2 (2005).

## D.    CLOSING INSTRUCTIONS

### DEFENDANTS' PROPOSED INSTRUCTION NO. 63.

### JUROR OATH & SYMPATHY[122]

Now, let me turn to some concluding instructions. Your verdict must be based solely on the evidence or lack of evidence. In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

**[PLAINTIFFS' OBJECTION: Plaintiffs object to Defendants' Proposed Instruction No. 63 as inapplicable to this case. This is not a case in which counsel are making emotional pleas to the jury.]**

**[DEFENDANTS' RESPONSE: Defendants respond that this instruction discusses an important facet of each jurors' obligation to reach a just verdict based on the facts presented and applicable law.]**

---

[122]    4-71 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 71.01, Instructions 71-10 and 71-4 (2015).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 64.-A.

DUTY TO DELIBERATE[123]

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide this case for yourself, but only after an impartial consideration of the evidence in this case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**[DEFENDANTS' OJBECTION: Defendants object to Plaintiffs' Proposed Instruction No. 64-A as unnecessary and redundant.]**

**[PLAINTIFFS' RESPONSE: The instruction is lifted directly from O'Malley and sufficiently sets forth a juror's duty to deliberate.]**

---

[123]     3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* § 106.01 (6th ed. 2014).

DUTY TO DELIBERATE/UNANIMOUS VERDICT[124]

You will now return to decide the case.  In order to prevail in its individual capacity, each Plaintiff must sustain its burden of proof as I have explained to you with respect to each element of the count you are considering.  If you find that a named Plaintiff has succeeded, you should return a verdict in its favor on that claim. If you find that a Plaintiff has failed to sustain the burden on any element of the claim, you should return a verdict against that Plaintiff in its individual capacity.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

---

[124]     4-78 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 78.01, Instruction 78-3 (2015).

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to the language highlighted above as confusing and misleading because it states that each plaintiff must prove each element, notwithstanding the fact that this is a class action lawsuit.]**

**[DEFENDANTS' RESPONSE: Defendants respond that an instruction that each named Plaintiff must prove each of the required elements for itself is appropriate in this case where the named Plaintiffs bring claims in their individual capacities (in addition to their capacities as class representatives).]**

<u>PROPOSED INSTRUCTION NO. 65.</u>

<u>SELECTION OF FOREPERSON</u>[125]

When you retire, you should elect one member of the jury as your foreperson.

That person will preside over the deliberations and speak for you here in open court.

---

[125]     4-78 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 78.01, Instruction 78-5 (2015).

## GENERAL VERDICT[126]

A verdict form has been prepared for your convenience.

[Read verdict form].

You will take this form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree. You will then return with your verdict to the courtroom.

**[RESERVATION OF RIGHTS: The parties reserve the right to object to this instruction depending on the Court's decision as to what verdict form is appropriate.]**

---

[126] 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* § 106.04 (6th ed. 2014).

DEFENDANTS' PROPOSED INSTRUCTION NO. 66-B.

SPECIAL VERDICT[127]

      I have prepared a special verdict form for you to use in recording your decision.

The special verdict form is made up of questions concerning the important issues in this case.

These questions are to be answered "yes" or "no ."

      [read form]

      Your answers must be unanimous and must reflect the conscientious judgment of

each juror. You should answer every question (except where the verdict form indicates

otherwise).

**[PLAINTIFFS' OBJECTION:  Plaintiffs object to Defendants' Proposed Instruction No. 66-B in its entirety and object to the use of a special verdict form.]**

**[RESERVATION OF RIGHTS: The parties reserve the right to amend this instruction depending on the Court's decision as to what verdict form is appropriate.]**

---

[127]    4-78 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 78.01, Instruction 78-9 (2015).

<u>PROPOSED INSTRUCTION NO. 67.</u>

<u>RETURN OF VERDICT</u>[128]

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

---

[128]    4-78 Leonard B. Sand, Modern Federal Jury Instructions – Civil, ¶ 78.01, Instruction 78-6 (2015).

<u>PROPOSED INSTRUCTION NO. 68.</u>

<u>VERDICT FORMS – JURY'S RESPONSIBILITY</u>[129]

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

---

[129]    3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions - Civil* § 106.07 (6th ed. 2014).

<u>PROPOSED INSTRUCTION NO. 69.</u>

<u>COMMUNICATIONS WITH THE COURT</u>[130]

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the court – should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

---

[130]   4 L. Sand et al., *Modern Federal Jury Instructions – Civil*, Instruction 78-1 (2015).

<u>PROPOSED INSTRUCTION NO. 70.</u>

<u>CONCLUDING REMARKS</u>[131]

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. All of you must be present together to hear one another when you deliberate. If one or more of you are not present, all deliberations should cease until you are together around the jury table. That includes restroom breaks. Every juror should be heard. No one juror should control or monopolize the deliberations. Each of you must decide this case for yourself after consultation with your fellow jurors. Your final vote must reflect your conscientious belief as to how the issues should be decided.

---

[131] Adapted from the Court's instructions in *Capitol Records, Inc.* v. *MP3Tunes, LLC*, No. 07 Civ. 9931 (WHP), Dkt. No. 596 (Mar. 17, 2014 Tr. at 2642:16–2643:1).

The parties by their counsel respectfully submit the attached Proposed Joint Jury Instructions and respectfully reserve the right to add, subtract, or modify the same prior to the jury's commencement of its deliberations.

Dated: February 23, 2016

KRAMER LEVIN NAFTALIS &
FRANKEL LLP

By: _____ /S. S.

    Daniel B. Goldman, Esq.
    Dani R. James, Esq.
    Steven S. Sparling, Esq.
    1177 Avenue of the Americas
    New York, NY 10036
    (212) 715-9100
    dgoldman@kramerlevin.com
    djames@kramerlevin.com
    ssparling@kramerlevin.com

    Lewis T. LeClair
    John C. Briody
    MCKOOL SMITH, P.C.
    One Bryant Park, 47th Floor
    New York, NY 10036
    (212) 402-9400
    lleclair@mckoolsmith.com
    jbriody@mckoolsmith.com

    Steven F. Benz
    KELLOGG, HUBER, HANSEN, TODD,
    EVAN & FIGEL, P.L.L.C.
    1615 M Street, N.W., Suite 400
    Washington, D.C. 20036
    (202) 326-7900
    sbenz@khhte.com

PAUL WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____

    Kenneth A. Gallo, Esq.
    Jane B. O'Brien, Esq.
    2001 K Street, NW
    Washington, D.C. 20006-1047
    (202) 223-7300
    kgallo@paulweiss.com
    jobrien@paulweiss.com

    Geoffrey R. Chipega
    William B. Michael
    1285 Avenue of the Americas
    New York, NY 10019-6064
    (212) 373-3000
    gchipega@paulweiss.com
    wmichael@paulweiss.com

    *Counsel for Defendants*

James T. Southwick
Richard W. Hess
SUSMAN GODFREY LLP
1000 Louisiana
Houston, TX 77002
(713) 653-7811
jsouthwick@susmangodfrey.com
rhess@susmangodfrey.com

R. Stephen Berry
BERRY LAW PLLC
1717 Pennsylvania Ave. NW, Suite 450
Washington, DC 20006
(202) 296-3020
sberry@berrylawpllc.com

*Counsel for Plaintiffs*